BRIAN D. BOYLE (S.B. #126576)
bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
Telephone:    (202) 383-5300
Facsimile:     (202) 383-5414

CATALINA J. VERGARA (S.B. #223775)
cvergara@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA  90071-2899
Telephone:    (213) 430-6000
Facsimile:     (213) 430-6407

Attorneys for Defendant
FRANKLIN RESOURCES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>        Plaintiffs,<br><br>    v.<br><br>FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1–25,<br><br>        Defendants. | Case No. 4:16-cv-04265-CW<br><br>**DEFENDANT FRANKLIN RESOURCES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:    November 29, 2016<br>Time:                2:30 p.m.<br>Judge:              Hon. Claudia Wilken<br>Courtroom:       2, 4th Floor<br><br>Complaint Filed: July 28, 2016<br>Trial Date:         None set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND ISSUES TO BE DECIDED ......................................... 2

II.   STATEMENT OF RELEVANT FACTS ................................................................ 4

III.  LEGAL STANDARD ............................................................................................. 6

IV.   ARGUMENT .......................................................................................................... 8

    A.  Plaintiff's Affiliated Mutual Funds Claim Fails To Meet Applicable
        Pleading Standards. ....................................................................................... 8

        1.  The inclusion of affiliated funds in a broad menu of
            investment options does not support an inference that Plan
            fiduciaries breached their duty of loyalty........................................... 8

        2.  Management fees charged for affiliated funds do not support
            an inference that Plan fiduciaries breached their fiduciary
            duties. .............................................................................................. 10

            a.  Plaintiff's comparison to Vanguard Institutional Funds
                is misplaced. .......................................................................... 11

            b.  Mutual fund alternatives are not appropriate
                comparators for the affiliated mutual funds offered to
                Plan participants. ................................................................... 12

            c.  Plan fiduciaries need not offer the cheapest alternatives
                in order to satisfy their duties of loyalty and prudence......... 13

        3.  Plaintiff's allegations about the performance of certain funds
            during the putative class period do not support an inference
            that the Plan fiduciaries breached their duties................................. 15

    B.  Plaintiff's Stable Value Allegations Fail To State A Claim. ..................... 17

    C.  Plaintiff's Excessive Fees Claim Is Belied By The Allegations In The
        Complaint. ................................................................................................... 22

V.    CONCLUSION ................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## <u>CASES</u>

4

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
   464 F.3d 338 (2d Cir. 2006) ...................................................................................... 12

5

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   446 F.3d 728 (7th Cir. 2006) ...................................................................................... 7

6

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 6, 7, 9, 24

8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 6, 13

9

10

*Chao v. Merino*,
   452 F.3d 174 (2d Cir. 2006) ...................................................................................... 7

11

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
   920 F.2d 457 (7th Cir. 1990) ............................................................................ 16, 22

12

13

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
   No. 3:16-cv-1251 (D. Conn. filed July 26, 2016) ...................................................... 20

14

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 10,
   2007) ...................................................................................................................... 9

15

16

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ................................................................................. 6, 7, 22

17

18

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997) ................................................................................................ 22

19

*Glennie v. Abitibi-Price Corp.*,
   912 F. Supp. 993 (W.D. Mich. 1996) ........................................................................ 21

20

21

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ............................................................................passim

22

*Hecker v. Deere & Co.*,
   569 F.3d 708 (7th Cir. 2009) ........................................................................ 12, 14, 24

23

24

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) .................................................................................... 6

25

*In re Citigroup ERISA Litig.*,
   662 F.3d 128 (2d Cir. 2011) ...................................................................................... 15

26

27

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .................................................................................... 6

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996) ........................................................................ 21

4

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) .................................................................... 16

5

6

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ............................................................................................................. 10

7

8

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
513 F. App'x 78 (2d Cir. 2013) (Unpub. Disp.) .................................. 15, 16

9

*Lau v. Metro. Life Ins. Co.*,
No. 1:15-cv-09469 (S.D.N.Y. Dec. 3, 2015) ............................................ 20

10

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ......................................................... 12, 18, 19

11

12

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010) ....................................................................... 13

13

*Pegram v. Herdich*,
530 U.S. 211 (2000) ................................................................................... 7

14

15

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013) ................................................ 15, 16, 19, 21

16

17

*Stewart v. Nat'l Shopmen Pension Fund*,
795 F.2d 1079 (D.C. Cir. 1986) ................................................................ 22

18

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015) ................................................................................ 7

19

20

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds, Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015) ........................... passim

21

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.*,
422 U.S. 694 (1975) .................................................................................. 13

22

23

*White v. Chevron Corp.*,
No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............. passim

24

*White v. Chevron Corp.*,
No. 4:16-cv-00793-PJH (N.D. Cal. Feb. 17, 2016) .................................. 18

25

26

*Wittman v. N.Y. Life Ins. Co.*,
No. 1:15-cv-09596 (S.D.N.Y. Dec. 8, 2015) ........................................... 20

27

28

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Wood v. Prudential Ret. Ins. & Annuity Co.*,
   No. 3:15-cv-01785 (D. Conn. Dec. 3, 2015) ............................................ 20

*Young v. GM Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) (Unpub. Disp.) ...................................... 23

**<u>STATUTES</u>**

15 U.S.C. § 80a-16 ............................................................................................ 13

15 U.S.C. §§ 80a-1, *et seq.* ............................................................................. 13

15 U.S.C. §§ 80a-8, 24, 29 ............................................................................... 13

29 U.S.C. § 1104 ................................................................................................. 8

29 U.S.C. § 1104(a)(1)(A) ................................................................................. 7

29 U.S.C. § 1104(a)(1)(B) ............................................................................... 16

29 U.S.C. § 1106 ................................................................................................. 8

29 U.S.C. § 1108(b)(8) ....................................................................................... 8

29 U.S.C. § 1108(b)(5) ....................................................................................... 8

**<u>OTHER AUTHORITIES</u>**

72 Fed. Reg. 60,452 (Oct. 24, 2007) ......................................................... 19, 21

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974
   U.S.C.C.A.N. 5038 .......................................................................................... 8

Majority Staff of S. Special Comm. on Aging, 111th Cong., Target Date
   Retirement Funds: Lack of Clarity Among Structures and Fees Raises
   Concerns (Comm. Print 2009) ...................................................................... 12

Notice of Proposed Rulemaking, Participant Directed Individual Account
   Plans, 56 Fed. Reg. 10724 (Mar. 13, 1991) ................................................. 8

Prohibited Transaction Exemption ("PTE") 77-3, 42 Fed. Reg. 18734 (Apr.
   8, 1977) ............................................................................................................ 9

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6

**<u>REGULATIONS</u>**

29 C.F.R. § 2550.404a-1(b)(i)-(ii) .................................................................. 21

29 C.F.R. § 2550.404c-1(b)(1)(ii), (b)(2), (b)(3) ........................................... 19

iv

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

 **PLEASE TAKE NOTICE THAT** on November 29, 2016, at 2:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 of this Court, located at 1301 Clay Street, Oakland, California 94612, Defendant Franklin Resources, Inc., will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Count of the Complaint filed by Plaintiff Marlon H. Cryer, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan.

 Defendant brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff fails to allege sufficient facts to support his claim for breach of defendants' fiduciary duties.  This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Catalina J. Vergara and the Request for Judicial Notice, the pleadings in this action, and such other materials and evidence as may be presented to the Court.


Dated: October 24, 2016    Respectfully submitted,

            BRIAN D. BOYLE
            CATALINA J. VERGARA
            O'MELVENY & MYERS LLP

            By:   /s/ Catalina J. Vergara

              Catalina J. Vergara

            Attorneys for Defendant
            FRANKLIN RESOURCES, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND ISSUES TO BE DECIDED

Franklin Resources, Inc. ("Franklin Resources") is a leading financial services company that, through its subsidiaries (together with Franklin Resources, the "Company"), provides a variety of time-tested, actively managed financial products to its clients under the brand name Franklin Templeton Investments ("FTI").  The Company offers its employees the opportunity to participate in the Franklin Templeton 401(k) Retirement Plan (the "Plan"), through which they may invest in some of those same financial products.  The Plan provides participants with a diverse menu of investment options to choose from that covers a range of risk profiles, expense ratios, and investment management philosophies and is aimed at meeting the unique investment needs of Company employees, many of whom are sophisticated investment professionals.

Plaintiff Marlon H. Cryer is a former Company employee and former Plan participant.  By this suit, he attempts to allege a single claim for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") against Franklin Resources, the Plan Investment Committee, and unspecified members of the Investment Committee (collectively, the "Plan fiduciaries").  The Complaint concludes that Franklin Resources and the Plan fiduciaries breached their duties of loyalty and prudence by (i) selecting FTI mutual funds for inclusion in the Plan lineup; (ii) offering a money market fund rather than a stable value fund to Plan participants; and (iii) charging Plan participants administrative and investment management fees that plaintiff deems "excessive."  The Complaint's conclusory allegations do not add up to a plausible claim of breach.

*First*, the decision to include various FTI mutual funds in the Plan's investment menu is both expressly authorized under ERISA and commonplace in plans sponsored by fund companies.  As numerous courts have acknowledged, in crafting ERISA and its regulatory framework, Congress and the Department of Labor (the "DOL") recognized that the law should not impede financial institutions from offering their own employees

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1   the very same investment products they provide to the general investing public.  For

2   affiliated mutual funds, the regulations simply require that they be made available to plan

3   participants on the same terms as those offered on the market, and the Complaint accepts

4   that the FTI funds meet this standard.  In addition, judicially noticeable materials establish

5   that the Plan Investment Committee has offered only a subset of FTI's full menu of funds

6   to Plan participants, contradicting plaintiff's conclusory suggestion that the fiduciaries'

7   decision-making process was disloyal.  And while plaintiff attempts to support his theory

8   of fiduciary breach with conclusory allegations that certain of the FTI funds performed

9   poorly in recent quarters, his hindsight, short-term assessment cannot support a plausible

10   inference of breach of fiduciary duty.

11       *Second*, plaintiff challenges the Plan fiduciaries' decision not to include a stable

12   value fund in the Plan lineup, and instead to offer a money market fund as the Plan's safe,

13   capital preservation option.  Once again, plaintiff pleads no facts suggesting that the

14   fiduciaries' decision-making process was compromised or conflicted in any way.  Money

15   market funds are a mainstream option offered by the majority of 401(k) plans, as even the

16   studies cited in plaintiff's Complaint show.  Here, the Plan Investment Committee acted

17   entirely within its discretion in opting for the safety and liquidity that money market funds

18   provide instead of a stable value option, which could have yielded potentially higher

19   returns only at greater risk and at the expense of greater restrictions on participants'

20   trading.  Courts do not second-guess fiduciary judgments that require the balancing of

21   competing interests under uncertain conditions, and the fact that plaintiff may have made

22   a different decision is therefore inconsequential.

23       *Third*, plaintiff contends that the total Plan fees were "excessive," but the

24   Complaint once again offers nothing in support of the allegation, aside from plaintiff's

25   own say-so.  The case law is clear that legal conclusions disguised as factual allegations

26   are insufficient to state a plausible claim for relief.

27       For these reasons, explained in greater detail below, the Complaint should be

28

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

dismissed in its entirety with prejudice.[1]

## II.   STATEMENT OF RELEVANT FACTS

Franklin Resources, operating through its subsidiaries, is a well-respected financial services company that provides a full spectrum of actively-managed investment products and services to retail and institutional investors throughout the world.  Since 1981, the Company has offered its employees the opportunity to participate in the Plan (Complaint ("Compl.") ¶ 14), which is funded through both employee-directed contributions and the Company's generous matching program.  Prior to October 1, 2010, the Company made matching contributions "with respect to 50% of the first six percent of eligible compensation deferred by participants," as well as discretionary profit sharing contributions.  (Ex. 9 (2009 Form 5500) at 26.)[2]  After that date, the Company amended the Plan to provide a more generous matching contribution, under which Franklin Resources matches up to 75% of eligible compensation (i.e., up to 50% of eligible pre-tax annual compensation and up to 100% of the cash portion of any year-end bonus) deferred by participants up to the annual IRS limit.  (*See id.* at 37; *see also* Ex. 8 (Summary Plan Description) at 10; Ex. 10 (2010 Form 5500) at 25; Ex. 11 (2011 Form 5500) at 25; Ex. 12 (2012 Form 5500) at 26; Ex. 13 (2013 Form 5500) at 26; Ex. 14 (2014 Form 5500) at 26.)

The Plan is managed by an Administrative Committee and an Investment Committee.  (Ex. 6 (Plan Document) at 42–44; Ex. 14 at 26.)  The Administrative Committee acts as the Plan administrator, and the Investment Committee is responsible for, among other things, selecting and monitoring investments offered to Plan participants.

---

[1] Franklin Resources is separately moving for judgment in its favor, on the ground that plaintiff is precluded from asserting his claim under the terms of the severance agreement he executed with the Company.  Because that motion references documents outside the Complaint, it is brought as a motion for summary adjudication.

[2] All Exhibits are attached to the Declaration of Catalina J. Vergara in Support of Defendant Franklin Resources, Inc.'s Motion to Dismiss ("Vergara Decl."), filed concurrently herewith.  On a motion to dismiss, the Court may consider plan-related materials and Form 5500s outside of the Complaint that are central to the plaintiff's claims and whose authenticity is not in dispute.  (*See* Request for Judicial Notice in Support of Motion to Dismiss ("RJN") at 4–6.)

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

(Ex. 6 at 42–44; *see also* Ex. 7 (Investment Policy Statement) at 5–6.)  The Plan has nearly 6,000 participants, who are provided with a diverse lineup of investment options that includes a wide range of products with varying asset classes, risk profiles, expenses, and investment management philosophies and styles.  (*See* Ex. 8 at 15–18; Ex. 13 at 27–29; Ex. 14 at 2, 27, 32–35.)  Among the options offered to Plan participants are various FTI mutual funds (winnowed from a broader universe of FTI offerings), Franklin Resources common stock, and third-party index funds.  (*See* Ex. 8 at 15–18; Ex. 13 at 27–29; Ex. 14 at 27, 32–35.)  The affiliated mutual funds included in the lineup are each successful, market-tested products that have attracted substantial institutional and retail investment from outside investors.  (Vergara Decl., ¶ 22 (citing fund prospectuses).[3])

Pursuant to the Plan's Investment Policy Statement ("IPS"), the Investment Committee may consider various qualitative and quantitative factors in evaluating a fund for inclusion in the Plan's lineup, including a minimum of three years of performance history, fund asset size, expense ratios, appropriate benchmarks, investment philosophy, investment process, and personnel.  (Ex. 7 at 8.)  The IPS also enumerates the factors to be considered in monitoring Plan investment options and, if necessary, removing a fund from the Plan lineup.  (*Id.* at 9–10.)  It directs that, in making Plan-related decisions, the Investment Committee should take a long-term view: "Recognizing that short-term fluctuations may cause variations in a portfolio's performance, the Committee intends to select funds with long-term investment strategies and will evaluate fund performance from a long-term perspective."  (*Id.* at 9.)

During the alleged class period, the Investment Committee actively evaluated the investment options offered to Plan participants, in accordance with its mandate.  It engaged an independent consultant to assist with fiduciary decisions and continually refined the Plan's lineup, by removing certain funds and adding additional, time-tested funds from FTI's broad base of offerings, as well as non-affiliated index funds.  (*See, e.g.*,

---

[3] Fund prospectuses are proper subjects of judicial notice.  (*See* RJN at 7–8.)

Compl. ¶¶ 22, 33–34, 39–40; *see also* Ex. 7 at 8–10; Ex. 14 at 6–7, 26 (referencing independent fiduciaries retained by the Plan).)  Plan fiduciaries also closely oversaw the Plan's administrative and investment management fees.  For example, the Administrative Committee solicited recordkeeping proposals in 2013, and ultimately replaced the Plan's then-recordkeeper, Charles Schwab, with Bank of America Merrill Lynch ("BAML"), resulting in a reduction of annual recordkeeping fees per participant from $70 to $48. (*See* Ex. 9 at 25; Ex. 12 at 36; Ex. 13 at 26.)  In 2013, the Plan also transitioned to a lower-cost R6 share class for FTI funds when that share class became available.  (Compl. ¶ 27.)  These facts demonstrate that the Plan fiduciaries managed the Plan attentively and well, contrary to the bare conclusions in plaintiff's Complaint.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court must accept well-pleaded facts as true, it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court regards dismissal motions as an "important mechanism for weeding out meritless claims" in an ERISA action.  *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  A claim of fiduciary imprudence under ERISA requires a plaintiff to allege facts showing that the fiduciary did not act "with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with

1   such matters would use." *Tibble v. Edison Int'l* ("*Tibble II*"), 135 S. Ct. 1823, 1828

2   (2015) (quotations omitted).  Fiduciary decision-making typically requires "balancing of

3   competing interests under conditions of uncertainty," and ERISA's duty of prudence does

4   not seat fiduciaries on a "razor's edge" in striking that balance.  *Armstrong v. LaSalle*

5   *Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006); *see also Chao v. Merino*, 452 F.3d

6   174, 182 (2d Cir. 2006) (prudent person standard does not require a fiduciary to take "any

7   particular course of action if another approach seems preferable" (quotations omitted)).

8   Rather, the exercise of fiduciary discretion is reviewed "deferentially" for an "abuse of

9   discretion," *Armstrong*, 446 F.3d at 733, in light of "the circumstances . . . prevailing at

10  the time the fiduciary act[ed]," *Dudenhoeffer*, 134 S. Ct. at 2471 (citation and quotations

11  omitted).  In short, a fiduciary's prudence is judged by process, not outcome.  *Tibble v.*

12  *Edison Int'l* ("*Tibble I*"), 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds*,

13  *Tibble II*, 135 S. Ct. 1823 (2015).  "[T]he primary question is whether the fiduciaries, at

14  the time they engaged in the challenged transactions, employed the appropriate methods

15  to investigate the merits of the investment and to structure the investment."  *Id.*

16          ERISA § 404(a)(1) also imposes a duty of loyalty on plan fiduciaries: "a fiduciary

17  shall discharge his duties with respect to a plan solely in the interest of the participants

18  and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to

19  participants and beneficiaries; and . . . defraying reasonable expenses of administering the

20  plan."  29 U.S.C. § 1104(a)(1)(A).  This duty focuses on the fiduciary's motivation and

21  "requires that plan fiduciaries make decisions 'with an eye single to the interests of the

22  participants and fiduciaries.'"  *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL

23  4502808, at *4 (N.D. Cal. Aug. 29, 2016) (quoting *Pegram v. Herdich*, 530 U.S. 211, 235

24  (2000)).  To survive dismissal, a claim for disloyalty must allege *facts* plausibly

25  suggesting an improper motive, rather than an "obvious alternative explanation," for the

26  conduct.  *Iqbal*, 556 U.S. at 682.

27

28

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

IV.   **ARGUMENT**

    A.   **Plaintiff's Affiliated Mutual Funds Claim Fails To Meet Applicable Pleading Standards.**

       Plaintiff's core allegation is that the Plan's fiduciaries breached general fiduciary duties owed under ERISA § 404, 29 U.S.C. § 1104, by including and failing to remove FTI funds in the Plan's investment lineup.  (Compl. ¶¶ 20–41.)  Plaintiff's conclusory allegations that these options were imprudent or overly expensive are insufficient to state a claim for breach of fiduciary duty under § 404.

          1.   **The inclusion of affiliated funds in a broad menu of investment options does not support an inference that Plan fiduciaries breached their duty of loyalty.**

       There is nothing unusual about an in-house 401(k) plan's choice to offer affiliated products or services as options to plan participants.  Indeed, Congress and the DOL both recognize that financial services organizations frequently offer their own investment products and services to their in-house plans—and they likewise recognize that this practice frequently benefits plan participants.  *See, e.g.*, Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730 (Mar. 13, 1991) (recognizing that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor").[4]  For that reason, despite ERISA's other prohibitions on transactions with affiliated entities (*see generally* ERISA § 406, 29 U.S.C. § 1106), the statute expressly allows insurance companies or their affiliates to offer proprietary "life insurance, health insurance, or annuities" to their in-house plans (*id.* § 1108(b)(5)), and allows financial services organizations to offer proprietary "common or collective trust fund[s] or pooled investment fund[s]" to their in-house plans (*id.* § 1108(b)(8)).  The DOL also extends

---

[4] *See also* H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5094 ("[I]t would be contrary to normal business practice to require the plan of an insurance company to purchase its insurance from another insurance company."); *id.* at 5096 ("The conferees understand that it is common practice for banks, trust companies and insurance companies to maintain pooled investment funds for plans.").

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

analogous exemptions to mutual fund advisers and their affiliates.  *See* Prohibited

Transaction Exemption ("PTE") 77-3, 42 Fed. Reg. 18734 (Apr. 8, 1977).  Although

plaintiff does not assert a prohibited transactions claim in his Complaint, PTE 77-3

demonstrates that where, as here, a Plan offers affiliated products, such conduct is not

inherently suspect.[5]

In view of this statutory and regulatory guidance, courts have recognized that plan

fiduciaries do not breach their fiduciary duties merely by selecting and offering funds

from one source, even if that source is an affiliated entity.  *See, e.g.*, *Dupree v. Prudential*

*Ins. Co. of Am.*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla. Aug.

10, 2007) (offering affiliated investment options "does not give rise to an inference of

disloyalty, especially where these practices are universal among plans of the financial

services industry."); *cf. Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)

(dismissing plaintiffs' complaint to the extent it was based on the defendants' decision to

"select[] funds from one management company").

Here, plaintiff alleges little more than the mere fact of affiliation to claim that the

Plan fiduciaries selected FTI mutual funds solely because "they were managed by, paid

fees to, and generated profits for Franklin Templeton."  (Compl. ¶ 21.)  Not only is that

inference conclusory and unsupported, but there is also an "obvious alternative

explanation," *Iqbal*, 556 U.S. at 682—i.e., that the Plan fiduciaries know their own

investment products well, believe in the soundness of their investment strategies, have

immediate access to the funds' managers, and can ensure that participants are offered

investment options on the best available terms.  *See Dupree*, 2007 WL 2263892, at *10

(plan fiduciaries may choose to offer proprietary products for various reasons, including

because the fiduciaries "were familiar with the investment managers personally, and were

confident in their abilities and responsiveness").

---

[5] PTE 77-3 creates an exemption from all prohibitions of section 406 for the purchase by an ERISA plan of shares in a mutual fund that is advised by the plan sponsor or its affiliate, provided certain conditions are met.  42 Fed. Reg. 18734 (Apr. 8, 1977).

If the Court were to accept plaintiff's bare assertion that the Investment Committee's decision to include affiliated products in the Plan is inherently suspect, it would effectively be holding that a financial services company can never offer its investment products to its own plan without presumptively breaching its duty of loyalty. This conclusion not only contradicts the stated intent of Congress and the DOL, it is also antithetical to the duty of loyalty itself. If adopted, plaintiff's position would force fiduciaries to forgo investment options that in their judgment well suit their participants' needs, simply because their own company creates and manages them. Such a position must be rejected—particularly where, as here, the Complaint makes no other allegations suggesting that the inclusion of the affiliated funds was imprudent or disloyal. Plaintiff does not, for example, allege facts showing that the Plan selected affiliated funds for which participants were charged a premium as compared to other investors. *Cf. Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825, at *3, 11 (D. Minn. Nov. 20, 2012) (allegations found plausible where plaintiff alleged, *inter alia*, that fiduciaries purchased "higher-cost share classes when lower-cost share classes were available" for identical products). Nor does plaintiff allege facts from which one could infer that the process for selecting, monitoring, and removing Plan options was deficient. *See Tibble I*, 729 F.3d at 1136. Because plaintiff does not plead any facts supporting his conclusory assertion that the Plan fiduciaries acted contrary to the interests of the Plan in constructing the Plan lineup, he cannot sustain a claim for fiduciary breach.

### 2. Management fees charged for affiliated funds do not support an inference that Plan fiduciaries breached their fiduciary duties.

To support his claim, plaintiff also points to the "millions of dollars" in investment management fees that the Company purportedly received during the putative class period, which he asserts are "unreasonable" and "significantly higher" than the fees charged for other mutual funds available on the market. (Compl. ¶ 25; *see generally id.* ¶¶ 25–27.) These conclusory allegations similarly do not support an inference that the fiduciaries breached their duties of loyalty or prudence.

1    The disloyalty claim fails because the Complaint contains no factual allegations

2  from which the Court could infer that the affiliated mutual funds were offered to Plan

3  participants on anything but the terms that were generally available in the market.  Absent

4  such allegations, the mere fact that the Company received market-rate management fees

5  on the Plan's investments in FTI funds does not suggest that the fiduciaries had an

6  improper motive in selecting the affiliated funds for the lineup.  *Cf. Hecker*, 556 F.3d at

7  586 (rejecting fiduciary challenge based on excessive fees, noting that "all of these funds

8  were also offered to investors in the general public, and so the expense ratios necessarily

9  were set against the backdrop of market competition").

10    Plaintiff's assertion that the Plan fiduciaries acted imprudently in selecting

11  affiliated funds that were purportedly more expensive than other funds available in the

12  market also fails to state a claim.  Plaintiff suggests the Plan fiduciaries should have

13  considered other, lower-cost mutual funds (Compl. ¶ 27)—but his argument is premised

14  on a false comparison of actively-managed funds to passively-managed funds, which are

15  structured and priced differently.  He also contends that mutual fund alternatives would

16  have been less expensive than the options in the lineup (*id.* ¶ 28)—though, again, he

17  ignores the materially different characteristics of those products.  Even if plaintiff were

18  making valid comparisons (and he is not), his imprudence claim would still fail, because

19  courts have recognized, time and time again, that plan fiduciaries need not focus on cost

20  alone when selecting investment options.  *See White*, 2016 WL 4502808, at *10

21  ("Fiduciaries have latitude to value investment features other than price (and indeed, are

22  required to do so), as recognized by the courts.") (collecting cases).

23            a.    *Plaintiff's comparison to Vanguard Institutional Funds is*
              *misplaced.*
24

25    Plaintiff relies on what he claims are "comparable" Vanguard Institutional Funds

26  as a benchmark for the reasonableness of the FTI funds' investment management fees.

27  (Compl. ¶¶ 26–27.)  Although he notes that the expense ratios for the affiliated mutual

28  funds are higher than the expense ratios for the Vanguard funds (*id.*, ¶ 27), he is

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

comparing apples to oranges.  The vast majority of the referenced Vanguard funds are passively-managed,[6] and the Complaint makes no allegations that suggest the Plan's *actively-managed* funds are at all comparable to Vanguard's *passively-managed*, indexed mutual funds.  For example, plaintiff pleads no facts suggesting that the risk profiles, asset classes, or investment strategies of passively-managed Vanguard funds are similar to those undertaken by FTI's portfolio managers.  Absent such facts, it is implausible to suggest, as plaintiff does, that those Vanguard funds are appropriate comparators for the FTI mutual funds.  *See, e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 669–70 (7th Cir. 2011) (explaining differences between actively-managed and passively-managed funds); *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345–46 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion.") (claim under Investment Company Act).[7]

### b.   Mutual fund alternatives are not appropriate comparators for the affiliated mutual funds offered to Plan participants.

Plaintiff also implies that the Plan fiduciaries acted imprudently in choosing to include the affiliated funds in the Plan because they purportedly could have saved on expenses by purchasing "comparable separately managed accounts."  (Compl. ¶ 28.) Many courts have rejected this very argument, and have concluded that plans may reasonably opt for the expanded package of services offered by mutual funds over institutional accounts, even if they have higher fees.  *See, e.g.*, *Loomis*, 658 F.3d at 671 (affirming dismissal of claims that plan fiduciaries should have offered institutional investment vehicles in lieu of higher-priced retail mutual funds); *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (nature of the services a participant receives can justify

---

[6] Of the 40 Vanguard funds referenced in the Complaint, 33 are passively-managed.

[7] Vanguard is a particularly improper comparator.  As reflected in a 2009 Senate report, Vanguard does not represent the market norm.  The asset weighted expense ratio for Vanguard target date funds was not only the lowest in the market, but was a fraction of the next cheapest competitor's.  *See* Majority Staff of S. Special Comm. on Aging, 111th Cong., Target Date Retirement Funds: Lack of Clarity Among Structures and Fees Raises Concerns 15 (Comm. Print 2009).

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

the selection of higher-cost investment options).  Unlike separately managed accounts, mutual funds are subject to extensive SEC regulation under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq.  See United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 704–05 (1975) ("The Act vests in the SEC broad regulatory authority over the business practices of investment companies.").  Among other things, they are governed by boards that include independent directors, 15 U.S.C. § 80a-16; they are required to register with the SEC; and they offer detailed shareholder communications such as prospectuses and annual reports, *see* 15 U.S.C. §§ 80a-8, 24, 29; *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 93–94 (2d Cir. 2010) (summarizing registration and disclosure requirements for mutual funds, including filing of prospectus).  There is simply no rule that plan sponsors must forgo the distinct regulatory and transparency benefits of mutual funds for different investment structures— and the Complaint does not allege any facts that invite a plausible inference that the fiduciaries acted disloyally by selecting the affiliated registered funds here rather than separately managed accounts.  As the Supreme Court has made clear, conclusory allegations are insufficient; facts must be pled to make a claim plausible.  *Twombly*, 550 U.S. at 555.

### c.    *Plan fiduciaries need not offer the cheapest alternatives in order to satisfy their duties of loyalty and prudence.*

Plaintiff's claim is flawed in any case because it charges the Plan fiduciaries with imprudence based solely on the cost of the investment options in the Plan lineup.[8]  The law is clear that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued with other

---

[8] Plaintiff also alleges, in conclusory fashion, that "Defendants made a fortune off of the Plan's investments in Proprietary Funds" based on the fact that Franklin Resources has an operating margin of 37 percent.  (Compl. ¶ 29.)  It is unclear why Franklin Resources's operating margin—a measure of operating efficiency—is relevant to whether the Plan fiduciaries breached their duties of loyalty or prudence.  Indeed, one would expect Franklin Resources, one of the world's leading and most successful investment firms, to be profitable and efficient.

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1  problems)." *Hecker*, 556 F.3d at 586.  Plaintiff offers no allegations from which one

2  could plausibly infer that the Plan fiduciaries disloyally and imprudently selected funds

3  with management fees that were not supported by the active portfolio management

4  services provided by FTI's portfolio managers.  *See Hecker*, 569 F.3d at 711 (denying

5  reh'g) (noting that the nature of the services a participant receives can justify the selection

6  of higher-cost investment options).[9]

7          Moreover, the investment management fees at issue here, which are alleged to be

8  between 38 and 165 basis points ("bps") (Compl. ¶ 27), are all in the R6 share class—the

9  lowest expense share class offered to  investors (*see* Ex. 14 at 32).  They are also within

10 the range of fee expenses that courts have found to be reasonable as a matter of law when

11 offered in plans that provide varied investment options and disciplines, like the one

12 offered by Franklin Resources.  *See, e.g.*, *Tibble I*, 729 F.3d at 1135 (rejecting excessive

13 fee arguments where expense ratios ranged between 3 bps and 200 bps).  And there is

14 nothing to support plaintiff's allegation that Plan fiduciaries "lard[ed] the Plan with

15 excessively expensive Proprietary Funds" as a way to provide the Company with

16 "excessive compensation."  (Compl. ¶ 62.)  In fact, the judicially noticeable facts prove

17 otherwise.  As noted, Franklin Resources matches 75% of eligible compensation deferred

18 by participants.  (*See* Ex. 8 at 10; Ex. 11 at 25; Ex. 12 at 26; Ex. 13 at 26; Ex. 14 at 26.)

19 For the six year period from 2010 to 2015, these matching contributions totaled over $156

20 million.[10]  Franklin Resources thus made voluntary matching contributions *exceeding* the

21 total management fees received each year by the Company on the Plan's investments in

22 the FTI funds as pleaded in the Complaint.  (Compl. ¶ 58.)  Under these circumstances,

23 one cannot infer that the Plan fiduciaries were motivated by receiving "excessive

24

25 [9] Although plaintiff now heralds the virtue of many Vanguard passively-managed funds
   and argues that the Plan fiduciaries were imprudent in failing to include them in the Plan
26 lineup, this argument is undercut by the fact that plaintiff does not allege that he ever
   invested money in the money market fund or in any of the passively-managed index funds
27 offered as part of the lineup.

28 [10] Ex. 9 at 14; Ex. 10 at 14; Ex. 11 at 14; Ex. 12 at 14; Ex. 13 at 14; Ex. 14 at 15.

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

compensation" from investment fees.  A more plausible explanation is that the Plan's fiduciaries always had the participants' best interests in mind—whether it was in selecting established, market-tested FTI funds for the Plan lineup that Company employees work to support, or in generously matching participant contributions—and were not motivated by any benefits to the Company.

### 3. Plaintiff's allegations about the performance of certain funds during the putative class period do not support an inference that the Plan fiduciaries breached their duties.

The Complaint also asks the Court to infer disloyalty or imprudence because, according to plaintiff, "[m]any of the Proprietary Funds had and continue to have poor performance histories compared to prudent alternatives Defendants could have chosen for inclusion in the Plan."  (Compl. ¶ 30.)  Such an inference is unsupported for two reasons.

First, "[i]t is well-established that allegations of poor results alone do not constitute allegations sufficient to state a claim for [ ] a breach [of fiduciary duty]." *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 80 (2d Cir. 2013) (Unpub. Disp.) (citing *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011)).  Instead, "ERISA requires a plaintiff to plead some other objective indicia of imprudence."  *White*, 2016 WL 4502808 at *17 (citations omitted).  Plaintiff must allege facts concerning flaws in the fiduciaries' selection and monitoring process of the funds, or at least allege facts that would permit the court reasonably to infer "more than the *mere possibility* of misconduct."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718–19 (2d Cir. 2013) (emphasis in original).

Here, plaintiff pleads no facts from which the Court could reasonably infer that the process by which the Plan fiduciaries made decisions with respect to the Plan lineup was in any way conflicted or flawed.  Instead, plaintiff appeals to hindsight, resting his claim solely on assertions of "low rankings" and "underperformance" for select funds.[11]

---

[11] Although the Complaint broadly asserts that "[m]any of the Proprietary Funds were and are poorly rated" (Compl. ¶ 37), both Morningstar and BrightScope, an independent

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1   (Compl. ¶ 30; ¶¶ 32–36; ¶ 37.)  That hindsight critique is inadequate as a matter of law.

2   The law requires "prudence, not prescience," *DeBruyne v. Equitable Life Assur. Soc'y of*

3   *U.S.*, 920 F.2d 457, 465 (7th Cir. 1990), and it judges fiduciary decision-making as of the

4   time the decisions were made.  29 U.S.C. § 1104(a)(1)(B); *see St. Vincent*, 712 F.3d at

5   716 ("[W]e judge a fiduciary's actions based upon information available to the fiduciary

6   at the time of each investment decision and not from the vantage point of hindsight");

7   *White*, 2016 WL 4502808, at *18 (same).  As a result, plaintiff's focus on the purported

8   underperformance of certain funds does not invite a plausible inference that the Plan

9   fiduciaries breached their duty of prudence at the time of any particular decision.  *See,*

10  *e.g.*, *White*, 2016 WL 4502808, at *17 ("The mere fact that the fund's price dropped is not

11  sufficient to state a claim for breach of fiduciary duty.").

12       Second, even if a period of underperformance were enough by itself to support a

13  claim of imprudence—and it is not—the Complaint only identifies brief periods during

14  which plaintiff contends certain funds underperformed.  (*See* Compl. ¶¶ 32; 35–36.)  This

15  focus on short-term underperformance does little to inform the Court's analysis.  Markets

16  and investments are both in a constant state of fluctuation.  As a result, a fiduciary may—

17  and often does—retain investments through a period of underperformance as part of a

18  long-range investment strategy.  *See Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006)

19  (defendant did not breach fiduciary duties by retaining low-performing mutual funds over

20  a three-year period, as it can be reasonable "to stay with . . . mutual funds even during

21  years of lower performance"); *Laboy*, 513 F. App'x at 80–81 (noting that fund's "poor

22  performance relative to comparable funds over the last five years" was "not adequate to

23  permit a plausible inference that the Defendants breached their fiduciary duties").  The

24  Plan engages in such a long-term investment strategy, as reflected in the IPS.  (Ex. 7 at 9.)

25  provider of 401(k) ratings and data, reflect that many of the Plan's funds are highly rated.
    *See generally* http://performance.morningstar.com; https://www.brightscope.com.  It is
26  axiomatic that any investment lineup will contain funds that are out of favor at a given
    time.  That fact alone does not support an inference that the plan's fiduciaries were
27  imprudent in selecting the funds, and there are no facts alleged here to show the
    fiduciaries' process was deficient.
28

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1    Plaintiff has not alleged that the Plan fiduciaries have failed to monitor the long-term

2    performance of Plan funds, as they are required to do under the IPS, or that they failed to

3    remove an investment if it performed poorly over the long-term.  The Plan fiduciaries

4    complied with their investment mandate and the FTI funds' prospectuses confirm what

5    thousands of retail and institutional investors already know—that FTI Funds have stood

6    the test of time by weathering a wide range of market conditions over full economic

7    cycles.  (*See id.* at 8–10; Vergara Decl., ¶ 22.)

8            **B.      Plaintiff's Stable Value Allegations Fail To State A Claim.**

9            Plaintiff next challenges the Investment Committee's decision to include a money

10   market fund—an established offering in the marketplace—in the Plan offerings in lieu of

11   a stable value fund.  (Compl. ¶¶ 42–55.)  Plaintiff asserts that a stable value fund would

12   have delivered higher returns during the putative class period than the money market fund

13   (*id.*), but makes no allegation that the money market option did not serve its purpose (i.e.,

14   preserve invested principal and provide returns consistent with short-term interest rates).

15   This attempt to mandate stable value offerings over money market funds has been rejected

16   by the Ninth Circuit and this District, as well as the DOL in its regulations and guidance.

17           In *Tibble v. Edison International*, the Ninth Circuit expressly rejected the

18   contention that "it was imprudent for [a plan fiduciary] to include a short-term investment

19   fund"—akin to a money market fund—"rather than a stable value fund" in a 401(k) plan

20   lineup.  *Tibble I*, 729 F.3d at 1136; *see also Hecker*, 556 F.3d at 586 ("nothing in [ERISA]

21   requires plan fiduciaries to include any particular mix of investment vehicles in their

22   plan").  In that case, the plaintiffs attempted to establish the imprudence of the fiduciaries'

23   investment choice based on hindsight outcomes, but the Court held that, in evaluating the

24   prudence of an investment decision, "the primary question is whether the fiduciaries, at

25   the time they engaged in the challenged transactions, employed the appropriate methods

26   to investigate the merits of the investment and to structure the investment."  *Tibble I*, 729

27   F.3d at 1136.

28           Mere months ago, a court in this District reached the same conclusion and rejected

17

a challenge almost identical to the one raised by plaintiff here.[12]  In *White v. Chevron Corp.*, plaintiffs, six participants in the Chevron Employee Savings Investment Plan, sued Chevron for breach of fiduciary duty under § 404, among other things.  2016 WL 4502808, at *1–2.  The plaintiffs challenged the defendants' inclusion of a money market fund in the plan's lineup and argued that the defendants should have instead offered a stable value fund.  *Id.* at *6–8.  They claimed, as plaintiff does here, that stable value funds generally provide a relatively steady rate of return that exceeds the returns provided by money market funds and that a majority of large 401(k) plans offer a stable value fund as an investment option.  *Id.* at *7.  Given the size of the Chevron plan, the plaintiffs asserted that it was "beyond plausible" that the defendants did not balance those factors or come to a reasoned decision when deciding to offer a money market fund.  *Id.*

In dismissing the claim, Chief Judge Phyllis Hamilton found that plaintiffs' complaint did not allege sufficient facts to show a breach of the duty of prudence.  *Id.* The Court noted that "[o]ffering a money market fund as one of an array of mainstream investment options along the risk/reward spectrum more than satisfied the Plan fiduciaries' duty of prudence," *id.* (citing *Loomis*, 658 F.3d at 673–74), and explained that the plaintiffs pleaded no facts tending to show that "the [p]lan fiduciaries failed to evaluate whether a stable value fund or some other investment option would provide a higher return and/or failed to evaluate the relative risks and benefits of money market funds vs. other capital preservation options," *id.* at *8.  In other words, the plaintiffs' sole allegation—that stable value funds may provide a higher return than money market funds—did not give rise to a plausible inference that the fiduciaries acted imprudently.  *Id.*

Here, plaintiff likewise concludes that the Plan fiduciaries did not use reasoned decision-making to select a money market option instead of a stable value option (Compl. ¶¶ 54, 78), but the Complaint alleges no facts to support those conclusions.  Instead,

---

[12] Compare *White v. Chevron Corp.*, No. 4:16-cv-00793-PJH (N.D. Cal. Feb. 17, 2016) (Dkt. No. 1), ¶¶ 27–32 *with* Compl. ¶¶ 42–49.  The *White* Complaint is attached as Exhibit 2 to the concurrently filed Vergara Declaration and is a proper subject of judicial notice.  *See* RJN at 3–4.

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1    plaintiff seeks to have the Court infer an imprudent process from the decision itself.  But,

2    as the Second Circuit recognized in *St. Vincent*, a complaint that lacks "allegations

3    relating directly to the methods employed by the ERISA fiduciary" can survive a motion

4    to dismiss only "if the court, based on circumstantial factual allegations, may reasonably

5    infer from what is alleged that the process was flawed."  712 F.3d at 718, 727 (quotation

6    omitted).  No such inference can be made in this case.

7            Plaintiff's attack on the inclusion of money market funds is also meritless because

8    the DOL has explicitly recognized that such funds can "play an important role as a

9    component of a diversified portfolio" and "may be prudent for some participants or

10   beneficiaries."  72 Fed. Reg. 60,452, 60,463, 60,452 (Oct. 24, 2007).  DOL regulations

11   encourage plan sponsors to include at least one "safe" option in an investment lineup, *viz.*,

12   an "income producing, low risk, liquid" investment, 29 C.F.R. § 2550.404c-1(b)(1)(ii),

13   (b)(2), (b)(3), and a money market fund provides each of those features—it produces

14   income, is very low risk, and is highly liquid.  The DOL's guidance plainly permits plan

15   sponsors to include money market funds in their plan lineups, where they are open to

16   selection by participants according to their individual investment needs and preferences.

17           Here, because the Plan is participant-directed, participants could decide for

18   themselves whether to invest in the money market option or whether to allocate their

19   accounts to higher-risk options with potential for greater returns.  The offering of a money

20   market fund as one of an array of mainstream investment options along the risk/reward

21   spectrum more than satisfied the Plan fiduciaries' duty of prudence.  *Loomis*, 658 F.3d at

22   673–74 (fiduciary that "offer[s] participants a menu that includes high-expense, high-risk,

23   and potentially high-return funds, together with low-expense index funds that track the

24   market, and low-expense, low-risk, modest-return bond funds . . . has left choice to the

25   people who have the most interest in the outcome, and it cannot be faulted for doing

26   this.").

27           Plaintiff nonetheless urges that, in today's low-interest environment, plan sponsors

28   are *required* to maximize returns within the "safe" asset class by offering a stable value

1    fund instead of or in addition to a money market fund.  This argument ignores the

2    deference accorded to fiduciary decisions arising from sound processes and the fact that

3    stable value investing requires risk and liquidity tradeoffs.  As plaintiff acknowledges,

4    stable value funds have liquidity constraints; providers commonly limit the ability of plans

5    or plan participants to withdraw their accounts—delaying payment or imposing monetary

6    penalties for withdrawal—and often further restrict participants from transferring

7    investments from a stable value fund to other fixed-income investment options, requiring

8    them to expose their accounts to the fluctuations of equity investments first.[13]  Indeed,

9    plaintiff's counsel have sued some of the country's most prominent stable value

10   managers—including in a lawsuit filed just two days before this one—complaining about

11   the restrictions that such managers impose on participants wishing to transfer balances to

12   other options.[14]  Money market options do not so limit liquidity or participant investing in

13   this way, and they are open to all investors.

14          Stable value funds also pose different risks from money market funds; they are not

15   risk free, as plaintiff appears to suggest.  The DOL explicitly acknowledged some of these

16   risks, which include exposure "to the credit risk of the fund vendor," vulnerability to

17   "changes in interest rates," and dependence on the "financial stability of the wrap contract

18   provider" that insures the stable value fund's holdings.  72 Fed. Reg. at 60473 n.35; *see*

19   Ex. 16.[15]  The risk of wrap-provider failure in particular is highlighted by the many cases

20

---

[13] *See* Ex. 15 (GAO Stable Value Report) at 14–15, 26, 31 (stable value providers "typically require certain restrictions on plan sponsor and participant withdrawals or transfers of plan assets from stable value funds"); Ex. 16 (DOL Stable Value Report); Ex. 17 (OCC Comptroller's Handbook) at 37.  These reports are judicially noticeable.  *See* RJN at 6.

[14] *See* Ex. 1 (*Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-cv-1251, Dkt. No. 1 (Complaint) (D. Conn. filed July 26, 2016)); *see also* Ex. 3 (*Wittman v. N.Y. Life Ins. Co.*, No. 1:15-cv-09596, Dkt. No. 1 (Complaint) (S.D.N.Y. Dec. 8, 2015)); Ex. 4 (*Lau v. Metro. Life Ins. Co.*, No. 1:15-cv-09469, Dkt. No. 1 (Complaint) (S.D.N.Y. Dec. 3, 2015)); Ex. 5 (*Wood v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-01785, Dkt. No. 1 (Complaint) (D. Conn. Dec. 3, 2015)).

[15] *See also* Ex. 15 at 26 (explaining transfer restrictions imposed by stable value fund managers); Ex. 16 at 7 ("Ultimately, the financial stability of the wrap contract provider(s) may be a factor in the ability of the fund to continue to make payments at book value.").

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1  in which retirement assets were trapped in an insurance company wind-up. *In re Unisys*

2  *Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996) (litigation involving failure of Executive Life

3  Insurance Company); *Glennie v. Abitibi-Price Corp.*, 912 F. Supp. 993, 995 (W.D. Mich.

4  1996) (same, involving Mutual Benefit Life Insurance Company).  Money market funds,

5  in contrast, do not pose these risks.  72 Fed. Reg. at 60,473 n.35 ("[M]oney market funds

6  reasonably represent available near risk-free investment instruments").  A prudent

7  fiduciary might easily weigh these risks and opt out of offering a stable value product.

8  Plaintiff's position also flies in the face of conventional investment wisdom and

9  prudence principles.  A prudent fiduciary must consider the full range of an investment's

10 features, not just its potential for returns—particularly when an investment's chief purpose

11 is to preserve capital against loss, not to deliver spectacular returns (or spectacular risk).

12 *See, e.g.*, 29 C.F.R. § 2550.404a-1(b)(i)-(ii) (prudent fiduciary must give "appropriate

13 consideration to those facts and circumstances that . . . are relevant to the particular

14 investment or investment course of action involved, including the role the investment or

15 investment course of action plays in that portion of the plan's investment portfolio with

16 respect to which the fiduciary has investment duties"); *see also* Ex. 7 at 8–10.

17 Finally, plaintiff's attempt to "focus on the relative performance of stable value and

18 money market funds over the last six years is an improper hindsight-based challenge to

19 the Plan fiduciaries' investment decision-making."[16]  *White*, 2016 WL 4502808 at *8.  A

20 fiduciary's actions are judged "based upon information available to the fiduciary at the

21 time of each investment decision and not from the vantage point of hindsight," *St.*

22 *Vincent*, 712 F.3d at 716, and in the period of recovery following the financial crisis, no

23 reasonable fiduciary could have ruled out the possibility of an increase in interest rates to

24 previous levels, a scenario that a money market fund would weather better than a stable

25

26 [16] Plaintiff purports to show return information for the Vanguard Stable Value Fund
    between 2009 and 2015 (Compl., ¶ 52), but plaintiff provides no source for the
27 information.  Defendant's counsel have been unable to confirm the accuracy of the cited
    returns based on its review of the Vanguard Stable Value Fund's data over the same time
28 period.

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

value fund.  *See DeBruyne*, 920 F.2d at 465 (ERISA "requires prudence, not prescience" (quotation omitted)); *Dudenhoeffer*, 134 S. Ct. at 2471–72 (ERISA does not fault fiduciaries for failing to outguess the market).

Fiduciary practice confirms what the foregoing makes obvious: plan fiduciaries do not uniformly embrace stable value funds as the only prudent low-risk investment vehicle, and plaintiff's attempt to mandate the former over the latter is without merit.  The Complaint itself cites a report by MetLife—one of the stable value fund providers that plaintiff's lawyers are currently suing—for the proposition that a majority of plans offer stable value funds.  But that report shows that, today, fully one-fifth of defined contribution plans do not offer any stable value option in their plan lineup at all, notwithstanding the recent history of low short-term interest rates.  (Compl. ¶ 49 (citing MetLife study); *see also* Ex. 18 (MetLife Study) at 7).  Moreover, the same study reflects that nearly *two-thirds* of plans (62%) offer a money market fund in their lineups, whether or not they also offer stable value.  According to plaintiff's unsupported *per se* imprudence theory, every one of those plans is open to litigation and judgment for fiduciary breach.  But that would cast the courts as investment advisers, an approach that has been consistently rejected.  *See Stewart v. Nat'l Shopmen Pension Fund*, 795 F.2d 1079, 1083 (D.C. Cir. 1986) ("Choices between reasonable alternatives . . . are for the trustees, not the courts."); *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 308 (1997) ("[T]he Court is institutionally unsuited to gather the facts upon which economic predictions can be made, and professionally untrained to make them.").  Plaintiff's stable value allegations are thus insufficient as a matter of law to state a claim for breach of fiduciary duty.

### C.   Plaintiff's Excessive Fees Claim Is Belied By The Allegations In The Complaint.

In a final attempt to cobble together a fiduciary breach claim, plaintiff takes aim at the total Plan fees charged to Plan participants.  (Compl. ¶¶ 56–62.)  Specifically, the Complaint alleges that Franklin Resources acted disloyally and imprudently by charging

1  high administrative fees and "larding the Plan with excessively expensive Proprietary

2  Funds" in order to receive excessive compensation.  (*Id.* ¶¶ 56, 62.)  According to

3  plaintiff, the excess is "almost entirely the result of the mutual fund fees paid to Franklin

4  Templeton."  (*Id.* ¶ 60.)  To the extent this theory of liability is premised on nothing more

5  than the Company's receipt of investment management fees for affiliated mutual funds

6  offered to Plan participants, it fails for the same reasons explained in Section IV.A.2

7  above.  To the extent it is based on the portion of such fees that is made available to the

8  Plan's administrative services provider, plaintiff fails to state a viable claim.

9      Plaintiff faults the Plan for charging participants administrative (i.e.,

10  recordkeeping) fees of $12.00 per quarter, or $48.00 per year, but the Complaint alleges

11  no facts plausibly suggesting that the fiduciaries acted imprudently or disloyally in

12  negotiating this fee arrangement.  (Compl. ¶ 56.)  Over the relevant period, the Plan used

13  two unaffiliated recordkeepers—Schwab and BAML.  (*See* Ex. 9 at 25; Ex. 13 at 26.)

14  Schwab charged annual recordkeeping fees of $70 per year (Ex. 12 at 36) until the Plan

15  replaced it with BAML, negotiating a reduction of those fees to $48 per year.  The

16  Complaint makes no allegations suggesting that the recordkeeping arrangements were

17  "conflicted" in any way or that the same services were available on the market on better

18  terms.[17]  *See, e.g.*, *Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)

19  (Unpub. Disp.) (Sotomayor, J.) (holding that plaintiffs had not plausibly alleged that the

20  fiduciaries agreed to pay excessive fees where they "fail[ed] to allege that the fees were

21  excessive relative to the services rendered" (quotation omitted)).

22      Nor does plaintiff plead any facts suggesting that the fees were anything but

23  market-driven.  Although plaintiff hangs his hat on the conclusory allegation that the

24  recordkeeping fees charged to Plan participants were "excessive," the Complaint makes

25  no allegations whatsoever regarding what constituted "reasonable" compensation for

26  ─────────────

27  [17] The Plan's actions with respect to the recordkeeper suggest the opposite.  The fact that the Administrative Committee changed the recordkeeper in 2013 (Ex. 13 at 26) underscores the fiduciaries' diligence and supports the inference that the Plan fiduciaries

28  were routinely monitoring recordkeeping services and fees.

1    those services.  Indeed, the Complaint does not discuss the recordkeepers' actual services

2    at all.  This omission is fatal to plaintiff's claim, as courts have recognized that the nature

3    of the services provided is central to evaluating an excessive fee claim in the context of a

4    motion to dismiss.  *See, e.g.*, *Hecker*, 569 F.3d at 711.  A complaint must establish more

5    than "a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678,

6    and attempting to couch a legal conclusion (i.e., "excessiveness") as a factual allegation

7    does not satisfy plaintiff's pleading burden.  *Id.*

8         With respect to total Plan costs (Compl. ¶¶ 56–62), plaintiff points out that the Plan

9    paid nearly $6.5 million per year in investment management and administrative fees in

10   2014 and 2015, resulting in an average total Plan cost of over 57 bps.  (*Id.* ¶ 58.)  Plaintiff

11   asserts that this total Plan cost "was nearly double the cost of comparable plans that are

12   not subject to conflicted fiduciary decision-making," and resulted in the Plan paying

13   approximately $15 million more in fees than a comparable plan would have during the

14   period of 2010 through 2015.  (*Id.* ¶¶ 59–61.)  But his comparison of the Plan's aggregate

15   fees to a study purporting to set forth the average aggregate fees of similarly-sized plans

16   does not support an inference of a fiduciary breach.  (*Id.* ¶ 59.)  As an initial matter, "[t]he

17   fact that it is possible that some other funds might have had even lower ratios is beside the

18   point; nothing in ERISA requires every fiduciary to scour the market to find and offer the

19   cheapest possible fund. . . ."  *Hecker*, 556 F.3d at 586.  More importantly, the Complaint

20   does not identify the types of plans, the plan sponsors, the available investment options, or

21   the range of participant allocations among the various plans that comprise the

22   comparison.[18]  For example, the Complaint does not purport to compare the Plan to

23   similarly-sized plans with participants who have the same level of knowledge and

24   investment-savvy as Company employees and Plan participants.  This is significant, as

---

[18] Nor does the BrightScope / Investment Company Institute report referenced in the Complaint identify this information.  (Compl. ¶ 59.)  The sole editorial note explains that the sample set consisted of "32,972 plans with $3.2 trillion in assets in 2013" and that "[p]lans with fewer than four investment options, more than 100 investment options, or less than $1 million in plan assets [we]re excluded from th[e] analysis."  (Ex. 19 at 47 (footnote); *see also* RJN at 6–7.)

DEF. FRANKLIN RESOURCES, INC.'S
NOTICE OF MOT. & MOT. TO DISMISS
4:16-cv-04265-CW

1  Plan participants have different interests and investment needs than less knowledgeable

2  investors, as evidenced by their decisions to allocate their accounts chiefly to actively-

3  managed options rather than lower-cost index funds.  Without facts demonstrating that the

4  Plan is being compared to truly comparable plans (i.e., those with similar investment

5  vehicles and strategies, as well as services), plaintiff's aggregate-fee allegations are

6  meaningless.[19]

7  **V.     CONCLUSION**

8       For the foregoing reasons, Franklin Resources respectfully requests that the Court

9  dismiss plaintiff's claims in their entirety, with prejudice.

10

11  Dated: October 24, 2016              Respectfully submitted,

12                                       BRIAN D. BOYLE
13                                       CATALINA J. VERGARA
                                         O'MELVENY & MYERS LLP
14                                       By:___/s/ Catalina J. Vergara_____
15                                            Catalina J. Vergara

16                                       Attorneys for Defendant
17                                       FRANKLIN RESOURCES, INC.

18

19

20

21

22

23

24

25

26

27  [19] The comparison of aggregate fees is inappropriate for the additional reason that the Plan
is a 100% participant-directed plan, meaning that the aggregate fees are a reflection of the
28  participants' investment choices.