IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANKLIN TEMPLETON RESOURCES, INC.; and THE FRANKLIN TEMPLETON 401(k) RETIREMENT PLAN INVESTMENT COMMITTEE,<br><br>    Defendants.<br>_____/ | No. C 16-4265 CW<br><br>ORDER GRANTING MOTION TO CERTIFY CLASS<br><br>(Docket No. 53) |

This is a putative class action brought under the Employee Retirement Security Act of 1974 (ERISA) by Plaintiff Marlon Cryer, a former participant in Defendant Franklin Resources, Inc.'s 401(k) retirement plan. Plaintiff moves to certify the class. Defendant Franklin Resources, Inc. (FRI) has filed an opposition and Plaintiff has filed a reply. Having considered the parties' papers and oral argument, the Court GRANTS the motion.

BACKGROUND

The Court has previously provided the relevant background (Docket No. 44).

LEGAL STANDARD

A plaintiff seeking to represent a class first must satisfy the threshold requirements of Rule 23(a). Rule 23(a) provides that a case is appropriate for certification as a class action if:

1) the class is so numerous that joinder of all members is impracticable;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A plaintiff must also meet the requirements of one of the subsections of Rule 23(b).  In this motion, Plaintiff seeks certification under Rule 23(b)(1), and in the alternative under Rues 23(b)(2) or (3).

Subsection (b)(1) applies where the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," or of adjudications "which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 n.11 (2011).

Subsection (b)(2) applies where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

2

Subsection (b)(3) permits certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are intended "to cover cases 'in which a class action would achieve economies of time, effort, and expense . . . without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment).

Plaintiffs seeking class certification bear the burden of demonstrating that they satisfy each Rule 23 requirement at issue. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In general, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). The court must conduct a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." Dukes, 564 U.S. at 350-51 (quoting Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 564 U.S. at 351. To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie, 524 F.2d at 901 n.17. "When resolving such factual disputes in the context of a motion for class

3

certification, district courts must consider 'the persuasiveness of the evidence presented.'" Aburto v. Verizon California, Inc., No. CV 11-03683-ODW VBKX, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)), abrogated on other grounds as recognized by Shiferaw v. Sunrise Sen. Living Mgmt., Inc., No. 13-CV-2171-JAK, 2014 WL 12585796, at *24 n.16 (C.D. Cal. June 11, 2014). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D.Cal. 1991).

## DISCUSSION

1. Motions for Leave to File Under Seal

Preliminarily, Plaintiff and FRI have filed separate motions for leave to file under seal documents related to Plaintiff's motion for class certification.

There is a "strong presumption in favor of access to court records." Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096 (9th Cir.) (citation omitted), cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety, 137 S. Ct. 38 (2016). "Accordingly, '[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard.'" Id. (quoting Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006)). "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'" Id. at 1097 (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978)). There is an exception to this rule: a party seeking to file under seal

4

documents related to motions that are no "more than tangentially related to the merits of a case," id. at 1101, must satisfy the "good cause" standard from Federal Rule of Civil Procedure 26(c)(1), id. at 1097. Justification to seal is not established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be confidential, but rather must be supported by a sworn declaration demonstrating with particularity the specific harm or prejudice that would result from disclosure. Civil L.R. 79-5(d); Kamakana, 447 F.3d at 1180, 1186. Requests to seal must be narrowly tailored to seek sealing only of sealable material. Civil L.R. 79-5(b).

Because analysis of a motion for class certification frequently overlaps with the merits, the parties must provide "compelling reasons" to file under seal.

Plaintiff requests leave to file under seal in its entirety Exhibit A to his Motion, a copy of the Plan (Docket No. 61). Plaintiff's attorney declares that Defendants assert that the document contains proprietary information about Defendants' business operations that is not publicly available and that the document is confidential under the parties' stipulated protective order. However, no Defendant has filed a declaration establishing that this material is sealable and the time to do so has passed. Civil L.R. 79-5(e). Accordingly, the request must be DENIED.

FRI requests leave to file under seal (1) the entirety of the expert report prepared by Kristen Willard (Willard report) and its exhibits; (2) Franklin Templeton Investments' alternative dispute resolution (ADR) agreement; (3) Plaintiff's severance agreement;

5

(4) portions of its Opposition that refer to the Willard report, ADR agreement and severance agreement; and (5) portions of the declaration of Sharon Geary that refer to the ADR and severance agreements. (Docket No. 58).

FRI has not indicated on the unredacted versions of its Opposition and the Geary declaration, "by highlighting or other clear method, the portions of the document that have been omitted from the redacted version." Civil L.R. 79-5(d)(1)(D). Accordingly, the request to file those documents under seal is DENIED pending resubmission in conformance with this rule. Furthermore, as discussed below, FRI has not satisfied its burden to show that sealing the ADR agreement is justified.

FRI's attorney declares that the Willard report "contains sensitive information related to plaintiff's former account holdings" in the Plan and the accounts of other participants, that it is subject to the parties' stipulated protective order, and that FRI has taken measures to ensure its confidentiality. Docket No. 58-1, Decl. of Catalina J. Vergara in Supp. of Def. Franklin Resources, Inc.'s Admin. Mot. for Leave to File Docs. Under Seal (Vergara Decl.) ¶¶ 4-5. However, this does not identify the specific harm that would come from disclosure or describe it with particularity and is therefore insufficient to justify sealing. See Martin v. Wells Fargo Bank, N.A., No. CV 12-06030 SI, 2013 WL 5441973, at *2 (N.D. Cal. Sept. 30, 2013).

FRI's attorney declares that the ADR agreement "contains confidential business information related to Defendant's business practices related to employment," is the product of confidential communications and negotiations with Plaintiff, and that Franklin

6

Templeton Companies, LLC and FRI have taken steps to preserve its confidentiality. Docket No. 58-1, Vergara Decl. ¶¶ 6-7. However, the declaration again does not identify the specific harm that would come from disclosure or describe it with particularity and is therefore insufficient to justify sealing. Accordingly, the request is DENIED as to the ADR agreement.

The Court has previously granted permission to file the severance agreement under seal and does so again.

For the foregoing reasons and as described above, FRI's request is GRANTED in part and DENIED in part.

2. Releases

FRI argues that in two separate agreements Plaintiff waived his right to participate in a class action in any way related to his employment.[1]

These provisions are unenforceable. Morris v. Ernst & Young, LLP, 834 F.3d 975, 983 (9th Cir. 2016), cert. granted, 137 S. Ct. 809 (2017).[2] FRI cites Lu v. AT & T Services, Inc., No. C 10-05954 SBA, 2011 WL 2470268 (N.D. Cal. June 21, 2011), for the proposition that stand-alone class action waivers in severance agreements may be enforced. That Fair Labor Standards Act (FLSA) case held that the release in question was not unenforceable because "the right to proceed on a collective basis implicates an

---

[1] Following Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999), the Court has previously held that the covenant not to sue contained in the severance agreement did not preclude Plaintiff's lawsuit because his breach of fiduciary duty claim seeks to restore value to and is therefore brought on behalf of the Plan.

[2] FRI points out that the Supreme Court has granted certiorari in Morris, but it does not request a stay.

7

employee's procedural, as opposed to substantive rights" whereas the FLSA protected only substantive rights. Id. at *3. However, the court in Morris held that the National Labor Relations Act (NLRA) right to pursue concerted work-related legal claims is substantive. 834 F.3d at 983. FRI also cites Birdsong v. AT & T Corporation, No. C12-6175 TEH, 2013 WL 1120783, at *6 (N.D. Cal. Mar. 18, 2013) for the same proposition. Relying in part on Lu, that case also held that the right to bring a FLSA action collectively is a waivable procedural right. Id. at *6. The court added that it was "mindful that Plaintiff signed the instant release agreement after her employment had ended, rather than as a precondition to employment or to continued employment." Id. FRI points out that one of the agreements here coincided with Plaintiff's termination from employment. However, at the time Plaintiff signed his severance agreement, he was an employee. Furthermore, the NLRA applies to former employees. See 29 U.S.C. § 152(3). To the extent these cases suggest an outcome at variance with the Ninth Circuit's subsequent holding in Morris, the Court declines to follow them.

Accordingly, under Ninth Circuit precedent the class action waivers in both of the agreements at issue are unenforceable.

3. Standing

FRI argues in multiple ways that Plaintiff does not have standing to bring this lawsuit. These arguments are more suited to a motion to dismiss but may overlap with arguments about typicality and adequacy. First, it argues that he does not have standing to bring claims regarding funds in which he did not invest because his single claim for breach of fiduciary duty "in

8

reality . . . comprises 40 separate claims challenging the propriety of each and every FTI Fund offered in the Plan lineup." Docket No. 57, Opp'n 8. Similarly, it argues that he lacks standing to pursue claims related to the funds in which he invested that outperformed comparable funds because he was not injured in those instances. FRI also argues that Plaintiff lacks standing because he does not fully understand what a stable value fund is and whether he would have allocated money to such a fund had it been available, and had he done so he would have lost money.

These arguments fail primarily because, as the Court has explained, the lawsuit seeks to restore value to and is therefore brought on behalf of the Plan. The Supreme Court has explained that "recovery for a violation of 29 U.S.C. § 1109 for breach of fiduciary duty inures to the benefit of the plan as a whole, and not to an individual beneficiary." Paulsen v. CNF Inc., 559 F.3d 1061, 1073 (9th Cir. 2009) (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985)). The potential "liability of the fiduciary is "to make good to such plan any losses to the plan . . . and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." Russell, 473 U.S. at 140 (citation omitted). Accordingly, in determining constitutional standing, courts look not to individual funds but "to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan as a whole." Urakhchin v. Allianz Asset Mgmt. of Am., L.P., No. SACV 15-1614-JLS (JCGX), 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016).

9

FRI also argues that Plaintiff does not have standing to bring claims that seek injunctive relief because he has withdrawn his funds from the Plan. FRI relies on DeFazio v. Hollister, Inc., 636 F. Supp. 2d 1045, 1076 (E.D. Cal. 2009), aff'd in part sub nom. DeFazio v. Hollister Employee Share Ownership Trust, 612 F. App'x 439 (9th Cir. 2015), and an out-of-circuit district court case. But subsequent Ninth Circuit authority indicates the contrary. In Harris v. Amgen, Inc., 573 F.3d 728 (9th Cir. 2009), the court held that "employees who cash out of a defined contribution ERISA plan are still 'participants' in that plan, as defined by 29 U.S.C. § 1002(7), regardless of whether they withdrew their assets voluntarily." Id. at 734. The court rejected the proposition that such a plaintiff has standing only under 29 U.S.C. § 1132(a)(1)(B), which permits participants "to recover benefits due," and not under 29 U.S.C. § 1132(a)(2), which permits participants to sue for "appropriate relief." Appropriate relief includes equitable remedies. Harris, 573 F.3d at 734 n.4. The court held that a participant who has cashed out "has statutory standing to assert fiduciary duty claims under Section 502(a)(2), even when relief is also available under Section 502(a)(1)(B)." Id. at 735; see also LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008). Accordingly, Plaintiff does not lack standing on this basis.

4. Rule 23(a)

a. Numerosity

Plaintiff requests certification of a class that includes all participants in the Plan from July 28, 2010 to the date of judgment. As of September 30, 2015, there were over 5,000

10

participants.  FRI does not challenge numerosity.  The Court finds that joinder of all members is impracticable.

### b. Commonality

As noted above, Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has explained that this rule does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff identifies multiple common questions of law and fact.  All proposed members of the class participated in the Plan.  Their participation in the Plan is governed by the same written document and they were provided the same investment options.  The Plan's fiduciaries' alleged conflicts of interest affected the options offered under the plan and the allegedly excessive fees.  They owed the same duty to the Plan and recovery is on behalf of the Plan as a whole.

FRI argues that there are no common questions for three reasons.  First, it argues that determining whether the funds offered under the Plan constituted a violation of fiduciary duties requires individualized analysis of participants' choices of funds, the times of those choices, investment decisions and those

11

1  funds' relative performance.  Second, FRI argues that § 502(a)(2)
2  claims do not qualify for class certification by default.  The
3  Court agrees.  Third, they argue that the determinative question
4  in this analysis is not whether claims raise common questions but
5  whether they are susceptible to common proof.

6      FRI's arguments are not persuasive because, as discussed
7  above, any recovery is on behalf of the Plan as a whole.  The
8  common focus will be "on the conduct of Defendants: whether they
9  breached their fiduciary duties to the Plan as a whole by paying
10 excessive fees, whether they made imprudent investment decisions."
11 Kanawi v. Bechtel Corp., 254 F.R.D. 102, 109 (N.D. Cal. 2008).
12 FRI's argument has been rejected by multiple courts within the
13 Ninth Circuit.  In re Northrop Grumman Corp. ERISA Litig., No. CV
14 06-06213 MMM JCX, 2011 WL 3505264, at *8 (C.D. Cal. Mar. 29, 2011)
15 (collecting cases).

16     The Court finds that Plaintiff has identified common issues
17 of law and fact.

18          c. Typicality

19     Rule 23(a)(3)'s typicality requirement provides that a "class
20 representative must be part of the class and possess the same
21 interest and suffer the same injury as the class members."
22 Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc.
23 v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks
24 omitted).  This requirement is meant to ensure "that the interest
25 of the named representative aligns with the interests of the
26 class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.
27 1992).  Rule 23(a)(3) is satisfied where the named plaintiff has
28 the same or similar injury as the unnamed class members, the

action is based on conduct which is not unique to the named plaintiff, and other class members have been injured by the same course of conduct. Id. Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (citation omitted).

FRI argues that Plaintiff's claims are not typical of the proposed class because he has withdrawn from the Plan. FRI admits that this reprises its argument that Plaintiff lacks standing. The argument is also unpersuasive to the extent it applies to typicality. "Courts within the Ninth Circuit have repeatedly concluded that the typicality requirement was satisfied in defined contribution cases despite the fact that 'participants have individual accounts and select their investment fund from a variety of available options.'" In re Northrop Grumman Corp. ERISA Litig., 2011 WL 3505264, at *10 (citation omitted) (collecting cases). FRI speculates that Plaintiff would be "preoccupied with establishing the imprudence of the specific funds in which he invested" and demonstrating his losses. Docket No. 57, Opp'n 28. However, "[i]f the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed." Kanawi, 254 F.R.D. at 109 (citation omitted).

Plaintiff and unnamed class members have allegedly been injured by FRI's management of the Plan; that conduct is not unique to Plaintiff; and the unnamed class members were allegedly injured by the same conduct. FRI does not identify any defenses

13

unique to Plaintiff. Accordingly, Plaintiff has satisfied the typicality requirement.

### d. Adequate Representation

"The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim." Moeller v. Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citing Burkhalter, 141 F.R.D. at 153-54). While class representatives must "understand the gravamen" of their claims, it is not necessary that they be "intimately familiar with every factual and legal issue in the case." Id. (citing In re Worlds of Wonder Sec. Litig., 1990 WL 61951, at *3 (N.D. Cal. Mar. 23, 1990)). Thus, a class representative "will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." Id. (quoting Greenspan v. Brassler, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978)). "Those courts that have found representatives inadequate have done so because the plaintiffs knew nothing about the case and completely relied on counsel to direct the litigation." Id. (citing Welling v. Alexy, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (finding plaintiff inadequate because he showed a "complete lack of interest in the conduct of the case")), and Koenig v. Benson, 117 F.R.D. 330, 337 (E.D.N.Y. 1987) (finding plaintiff inadequate because of an "alarming unfamiliarity" with the lawsuit)).

FRI argues that Plaintiff lacks a basic understanding of the lawsuit. In his deposition, Plaintiff explained,

> When an employer puts forth recommendations they should take into consideration, like I said before, things that are good performers, not necessarily yours, but you are still going to make money out of it--but good performers that will meet the

14

> employee's expectation of what's fair.  And so, if you don't do that, and you only, quote, put your proprietary in there to keep the money in house--that is my term--then I think that fiduciary . . . responsibility has been neglected.

Docket No. 59-1, Reply, Ex. 1, Decl. of Marlon H. Cryer 47.  This demonstrates a basic understanding of the lawsuit.  See In re Northrop Grumman Corp. ERISA Litig., 2011 WL 3505264, at *14 (collecting cases); Kanawi, 254 F.R.D. at 110.

     5. Rule 23(b)

          a. Subsection (b)(1)

As noted above, a class may be certified under Rule 23(b)(1) if the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  "Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries."  Wit v. United Behavioral Health, 317 F.R.D. 106, 132–33 (N.D. Cal. 2016).  "Most ERISA class action cases are certified under Rule 23(b)(1)."  In re Northrop Grumman Corp. ERISA Litig., 2011 WL 3505264, at *15 (quoting Kanawi, 254 F.R.D. at 111).  If each of the thousands of proposed members of the class was forced to adjudicate individually, there would be a significant risk of inconsistent judgments.  Certification is therefore appropriate under Rule 23(b)(1).

//

//

15

b. Subsection (b)(2) & (b)(3)

Because Plaintiff seeks certification under these subsections only in the alternative to certification under subsection (b)(1), the Court does not reach them.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is GRANTED (Docket No. 53).

The Court certifies the following class: All participants in the Franklin Templeton 401(k) Retirement Plan from July 28, 2010 to the date of judgment. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

Plaintiff's request for leave to file under seal Exhibit A to his Motion is DENIED (Docket No. 61). Plaintiff shall refile the exhibit without any redactions or withdraw it from consideration.

FRI's request for leave to file under seal portions of its Opposition and supporting exhibits is GRANTED in part and DENIED in part (Docket No. 58). The motion is granted as to Plaintiff's severance agreement. It is denied as to (1) the Willard report and its exhibits and (2) the ADR agreement. It is denied without prejudice to resubmission in accordance with this Order and the Local Rules as to (1) portions of FRI's Opposition that refer to the Willard report, ADR agreement and severance agreement and (2) portions of the declaration of Sharon Geary that refer to the ADR and severance agreements.

IT IS SO ORDERED.

Dated: July 26, 2017

CLAUDIA WILKEN
United States District Judge