IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANKLIN RESOURCES, INC.; and THE FRANKLIN TEMPLETON 401(k) RETIREMENT PLAN INVESTMENT COMMITTEE,<br><br>　　　　Defendants. | No. C 16-4265 CW<br><br>ORDER DENYING FRI'S MOTION FOR RECONSIDERATION AND GRANTING-IN-PART FRI'S MOTION TO STRIKE<br><br>(Docket Nos. 73 and 80) |

Defendants Franklin Resources, Inc. and The Franklin Templeton 401(k) Retirement Plan Investment Committee (FRI) move for reconsideration of the Court's order granting Plaintiff's motion for class certification (Docket No. 67). The Court ordered Plaintiff Marlon H. Cryer to file an opposition and permitted FRI to file a reply and the parties did so.[1] Having considered the papers submitted by the parties, the Court DENIES FRI's motion for reconsideration.

---

[1] Cryer also submitted a notice of supplemental authority along with two pages of additional argument. Docket No. 79. FRI moved to strike the additional argument. Docket No. 80. Consistent with Civil Local Rule 7-3(d)(2), the Court considers the underlying cases cited by Cryer's notice, but not any argument contained in the notice.

BACKGROUND

The parties are familiar with the facts of this case, and so the Court provides only the facts most relevant to the resolution of FRI's motion for reconsideration.

FRI is a financial services company that provides investment products, including mutual funds, to individual and institutional investors. Since 1981, it has sponsored a 401(k) plan for its employees. Complaint ¶¶ 14, 18. The plan is a "defined contribution plan" under 29 U.S.C. § 1002(34) and an "employee pension benefit plan" under 29 U.S.C. § 1002(2). Id. at ¶¶ 15-16.

Cryer is a former employee of FRI and a former member of FRI's 401(k) retirement plan. On February 12, 2016, Cryer was terminated from his employment with FRI. Docket No. 58-13 at 1. On February 13, 2016, Cryer signed a document entitled "Confidential Agreement and General Release" (severance agreement). Id. at 1, 12. The severance agreement contained a "general release" provision whereby "the Employee" (Cryer) agreed to release all claims against FRI, including "all common law, contract, tort or other Claims the Employee might have, as well as Claims the Employee might have under the . . . Employee Retirement Income Security Act of 1974." Id. at 3. The "general release" provision is followed by a "carve-out" provision which states that "the Employee does not release any rights that the law does not permit the Employee to release." Id. at 4. The "carve-out" provision goes on to state that the Employee does not release "any right that relates to: . . . (iii) the Employee's vested participation in any qualified retirement plan." Id.

The severance agreement also contains a "class action waiver" provision which states:

> (g) **Surrender of Class Participation.** By executing this Confidential Agreement, the Employee waives and surrenders any right to become, and promises not to consent to become, a member of any class or collective action in which claims are asserted against any Released Party related in any way to the Employee's employment, or the termination of Employee's employment, with the Company. If, without the prior knowledge or consent of the Employee, the Employee is made a member of any such class or collective action in any proceeding, the Employee agrees immediately to opt out of the class or collective action at the first opportunity and to forego and not accept any personal relief in such action.

Id. at 5.

On July 28, 2016, Cryer, "individually and as representative of a class of similarly situated persons," brought suit against FRI pursuant to ERISA § 502(a)(2), asserting FRI breached its fiduciary duties to the Franklin Templeton 401(k) Retirement Plan. Complaint ¶ 1. Cryer seeks restoration of all losses to the plan arising from FRI's alleged breach of fiduciary duties. Id. at 21.

On October 24, 2016, FRI brought a motion for summary judgment, contending that Cryer could not advance his claims because he had released them in his severance agreement. Order on Motion for Summary Judgment at 6. Specifically, FRI argued that Cryer's claims are barred by the "general release" provision. See id. at 3-4. The Court rejected FRI's motion. Id. at 6-8. Relying on Bowles v. Reade, 198 F.3d 752 (9th Cir. 1999), the Court held that Cryer could not give up the claims that he brought on behalf of the plan. Id.

On June 9, 2017, Cryer brought a motion to certify a class of all current and former participants in the Franklin Templeton 401(k) Retirement Plan from July 28, 2010 to the present. Motion

to Certify Class.  FRI argued that Cryer's severance agreement's "class action waiver" provision prevented Cryer from serving as the class representative in this case.  The Court rejected FRI's argument, finding that the severance agreement's "class action waiver" provision was not enforceable under Morris v. Ernst & Young, LLP, 834 F.3d 975, 983 (9th Cir. 2016).  Order on Class Certification at 7.  FRI made a number of other arguments against class certification, which the Court rejected.  Ultimately, the Court granted Cryer's motion for class certification.  Id. at 16.

On August 8, 2017, FRI sought reconsideration of the Court's order granting class certification.

DISCUSSION

FRI urges the Court to reconsider its decision that Cryer's severance agreement's "class action waiver" provision is not enforceable under the National Labor Relations Act (NLRA) and Morris.  On its face, the language of the "class action waiver" provision would seem to prevent Cryer from becoming a member of a class action such as this one.

In its motion for reconsideration, FRI informs the Court that Cryer signed the severance agreement on February 13, 2016, a day after his employment terminated.  Motion at 5; see also Docket No. 58-13 at 1, 12.  This is material to the Court's decision because Morris holds that class action waivers are unenforceable under the NLRA when they are required by the employer as a condition of employment.  Morris, 834 F.3d at 983, 990 ("The NLRA precludes contracts that foreclose the possibility of concerted work-related claims. An employer may not condition employment on the requirement that an employee sign such a contract.").  If,

4

however, a class action waiver is signed after employment has already ended, then it cannot be said to be required by an employer as a condition of employment, and may be enforceable. See id. Cryer signed the severance agreement and its "class action waiver" provision after his employment had already terminated, and not as a condition of continued employment. See Birdsong v. AT & T Corp., 2013 WL 1120783, at *6 (N.D. Cal. Mar. 18, 2013) (in holding that a class action waiver signed as part of a severance agreement was enforceable, noting "that Plaintiff signed the instant release agreement after her employment had ended, rather than as a precondition to employment or to continued employment."). Accordingly, Morris does not render the provision unenforceable.

Cryer argues that the NLRA and Morris protect former employees as well as current employees. As the Morris court recognized, however, the NLRA protects the rights of "employees" as defined by the statute. Morris, 834 F.3d at 981 ("The NLRA establishes the rights of employees in § 7."). The NLRA defines the term "employee" as follows:

> The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, <u>and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice.</u>

29 U.S.C. § 152(3) (emphasis added). Read plainly, the statute protects only (1) current employees and (2) former employees whose work ceased because of or in connection with "any current labor dispute or because of any unfair labor practice." Cryer does not

5

allege that his work ceased because of or in connection with "any current labor dispute or because of any unfair labor practice."

Cryer also cites a number of out-of-circuit cases to support his position on this point, but none is persuasive. Cryer cites Cellular Sales of Missouri, LLC v. NLRB, 824 F.3d 772, 779 (8th Cir. 2016), to show that "a former employee continues to be an 'employee' within the meaning of the NLRA." Opposition at 2. In that case, however, the court considered a mandatory employment agreement whereby the employee agreed as "a condition of his employment" to arbitrate individually all claims related to his employment and found that it was unenforceable under the NLRA. Id. at 774, 778. Because the offending agreement was executed as a condition of employment, Cellular Sales of Missouri, LLC is consistent with Morris. Cryer also cites Hayes v. Bayer Cropscience, LP, 139 F.3d 795, 803 (S.D.W.V. 2015), for the assertion, "Severance pay is a term and condition of employment . . . under the NLRA." But this case merely states that the NLRA requires union leadership and employers to bargain in good faith about conditions of employment, including severance pay, which becomes clear if the quotation is read as a whole. See id. ("Severance pay is a term and condition of employment subject to mandatory bargaining under the NLRA.") (emphasis added). That does not mean that the NLRA applies to preclude a term in a severance agreement that a former employee signed after his employment had already ended.

Even if the NLRA and Morris do not bar enforcement of the "class action waiver" provision, the provision may be unenforceable for a different reason. Cryer argues in the

6

alternative that, because he is bringing this action as a plan participant on behalf of the plan pursuant to § 502(a)(2), the "class action waiver" provision he signed cannot be used to waive substantive rights which belong to the plan. Opposition at 4. FRI responds that the "class action waiver" provision does not affect any substantive rights belonging to the plan. Reply at 2.

The Court previously adjudicated a similar issue in its order on FRI's motion for summary judgment. FRI argued that Cryer released the claim-in-suit when he signed the "general release" provision in his severance agreement. Order on Motion for Summary Judgment at 6. Cryer responded by citing the Ninth Circuit's decision in Bowles v. Reade, which held that a plan participant cannot settle, without the plan's consent, a § 502(a)(2) breach of fiduciary duty claim seeking "a return to [the plan] and all participants of all losses incurred and any profits gained from the alleged breach of fiduciary duty." 198 F.3d 752, 760 (9th Cir. 1999). Because Cryer seeks to bring the same type of claim to restore value to the plan, he could not have released the claim without the consent of the plan. Order on Motion for Summary Judgment at 6. The Court agreed with Cryer, holding that he did not release the claim for breach of fiduciary duty. Id. at 7-8.

Cryer now contends that Bowles' reasoning also bars enforcement of the "class action waiver" provision. Cryer argues that the "class action waiver" provision cannot be enforced because it constitutes a waiver of the plan's rights, citing Munro v. Univ. of S. California, No. CV166191VAPCFEX, 2017 WL 1654075, at *4 (C.D. Cal. Mar. 23, 2017) in support of his position.

The Munro court considered whether an arbitration agreement signed by employees at the start of their employment could bind the employees to arbitrate their ERISA § 502(a)(2) claims on behalf of the plan, noting that it was an issue of first impression in the Ninth Circuit. Id. at *3. The Munro court followed the reasoning in Bowles and held, "Just as a participant suing on behalf of a plan under § 502(a)(2) cannot waive a plan's right to pursue claims, a participant cannot waive a plan's right to file its claims in court." Id. at *5.

The Munro court noted that participants cannot "abandon even their own claims under § 502(a)(2) to sue on the plans' behalf." Id. (citing cases); see also Bowles, 198 F.3d at 761 (holding that Bowles properly "remained as plaintiff in her representative capacity" even though her own individual claims had been released). Accordingly, the Munro court ruled that the arbitration agreement could not be enforced against the plaintiffs, who could continue to pursue their claims in court. Id. at *7. The decision whether to arbitrate a claim is a right that belongs to the plan, and "it cannot be bargained away without the plan's consent." Id. This holding makes "practical sense and is closely aligned with the goals of ERISA." Id. at *6. If individual employees' arbitration agreements could affect their ability to bring § 502(a)(2) claims on behalf of the plan in court, then "fiduciaries could mitigate their ERISA obligations to their plans and erect barriers to ERISA enforcement on behalf of plans by requiring employees to sign arbitration agreements." Id. Fiduciaries could similarly require employees to sign "provisions requiring confidentiality, expedited arbitration procedures,

8

limited discovery, required splitting of arbitrators' fees, and mandatory payment of the prevailing party's attorneys' fees" -- all of which would "give fiduciaries many procedural advantages" and discourage participants from bringing suit to hold fiduciaries accountable in court for potential wrongdoing. Id.

The same reasoning applies here. The decision whether to file a § 502(a)(2) claim as a class action is a right that belongs to the plan, and it cannot be bargained away without the plan's consent. Accordingly, the "class action waiver" provision cannot be enforced against Cryer, who brought § 502(a)(2) claims in this case behalf of the plan. If individual participants' class action waivers could affect their ability to bring a § 502(a)(2) claim as a class action, then this could prevent fiduciaries from being held accountable in court for potential wrongdoing.

The ability to file a § 502(a)(2) claim as a class action is an important one. Participants bringing a § 502(a)(2) claim act in a representative capacity on behalf of the plan and are bound to "employ procedures to protect effectively the interests they purport to represent." Coan v. Kaufman, 457 F.3d 250, 259 (2d Cir. 2006); see also Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985). Representatives can discharge their duty by ensuring absent participants are properly represented, joining or making a good faith effort to join other participants, or filing a class action pursuant to Rule 23. Coan, 457 F.3d at 259-60. Where the number of participants is large, a class action may be the most appropriate procedural device. Id. at 260; see also Shady Grove Orthopedic Associates v. Allstate Ins. Co., 559 U.S. 393, 402 (2010) (Rule 23 provides "procedural fairness and

9

efficiency"). Accordingly, the right to seek class certification is important for fair resolution of § 502(a)(2) claims, and cannot be bargained away without the plan's consent.

CONCLUSION

For the foregoing reasons, the Court DENIES FRI's motion for reconsideration (Docket No. 73).

IT IS SO ORDERED.

Dated: October 4, 2017

CLAUDIA WILKEN
United States District Judge