# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| 13   MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan, | **Lead Case No. 4:16-cv-04265-CW** [Consolidated with Case No. 4:17-cv-06409-CW] |
| 14 | |
| 15 | **SETTLEMENT AGREEMENT** |
| 16                         Plaintiffs, | Judge:        Hon. Claudia Wilken |
| 17 | |
| 18            v. | |
| 19   FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1-25, | |
| 20 | |
| 21 | |
| 22                         Defendants. | |

23

24

25

26

27

28

This Settlement Agreement and Release ("Agreement") is entered into on February 15, 2019, by and among Plaintiffs, on their own behalves and on behalf of the Class and the Plan, on the one hand, and the Defendants, on the other hand, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

The capitalized terms used in the preceding sentence and in this Agreement are defined in Part I below.

## I.   DEFINITIONS

1.1.   "Action" shall mean *Cryer, et al. v. Franklin Resources, Inc., et al.*, N.D. Cal. Case No. 4:16-cv-04265-CW, consolidated with *Fernandez, et al. v. Franklin Resources, Inc., et al.*, N.D. Cal. Case No. 4:17-cv-06409-CW, and any and all cases now or hereafter consolidated herewith.

1.2.   "Active Participant" shall mean any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a positive balance and is eligible to make additional contributions to the account.

1.3.   "Administration Costs" shall mean (a) the costs and expenses associated with the production and dissemination of the Notice; (b) all reasonable costs incurred by the Settlement Administrator in administering and effectuating this Settlement, including costs of distributing the Settlement Amount, which costs are necessitated by performance and implementation of this Agreement and any court orders relating thereto; and (c) all reasonable fees charged by the Settlement Administrator.

1.4.   "Attorneys' Fees and Expenses" shall mean any and all attorneys' fees, costs (including fees and costs charged or incurred by retained experts or consultants), and expenses of Class Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action and resulting Settlement.

1.5.   "Case Contribution Awards" shall have the meaning ascribed to it in Section 8.1.

1.6.   "Class" shall mean the class certified by the Court on July 26, 2017, consisting of all participants in the Franklin Templeton 401(k) Retirement Plan from July 28, 2010, to the date

1  of judgment, excluding Defendants, Defendants' beneficiaries, and Defendants' immediate

2  families.

3       1.7.   "Class Counsel" shall mean Robert Izard of Izard Kindall & Raabe LLP and

4  Gregory Porter of Bailey & Glasser LLP.

5       1.8.   "Class Member" shall mean a member of the Class.

6       1.9.   "Court" shall mean the United States District Court for the Northern District of

7  California.

8       1.10.   "Company" shall mean Franklin Resources, Inc.

9       1.11.   "Compliance Period" shall mean a period lasting three years from the Effective

10  Date.

11       1.12.   "Defendants" shall mean Franklin Resources, Inc., the Franklin Templeton 401(k)

12  Retirement Plan Investment Committee, the Franklin Templeton 401(k) Retirement Plan

13  Administrative Committee, Norman Frisbie, Jennifer Johnson, Penelope Alexander, Kenneth

14  Lewis, Dan Carr, Nicole Smith, Alison Baur, Madison Gulley (erroneously sued as "Matthew

15  Gulley"), the Franklin Resources, Inc. Board of Directors, Gregory E. Johnson, Rupert H.

16  Johnson, Jr., Charles B. Johnson, Charles E. Johnson, Peter K. Barker, Mariann Byerwalter, Mark

17  C. Pigott, Chutta Ratnathicam, Laura Stein, Seth Waugh, Geoffrey Y. Yang, Samuel Armacost,

18  Joseph Hardiman, and Anne Tatlock.

19       1.13.   "Defendants' Counsel" shall mean Brian D. Boyle and Catalina J. Vergara of

20  O'Melveny & Myers LLP.

21       1.14.   "Defendant Released Parties" shall mean (a) Defendants and, as applicable, each

22  of their predecessors, successors, current and former parents, subsidiaries, affiliates, divisions,

23  related companies, assigns, descendants, dependents, beneficiaries, marital community, heirs,

24  executors, and administrators; (b) Franklin Templeton sponsored funds, investment vehicles, or

25  other products; and (c) each of the current and former officers, directors, trustees, and fiduciaries

26  (including but not limited to the current and former trustees and fiduciaries of the Plan, with the

27  exception of the Independent Fiduciary), committees, employees, investment consultants,

28

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

administrators, actuaries, agents, insurers, representatives, attorneys, and retained experts of the entities and individuals in (a) and (b).

1.15.    "Effective Date" shall mean (a) the date upon which the applicable period to appeal the Final Approval Order and Judgment has expired, if no appeal is taken during such period; or (b) if, during the appeals period, an appeal is taken from such Final Approval Order and Judgment, the date upon which all appeals, including further petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date upon which the applicable period to initiate such further petitions or proceedings has expired. The Parties shall agree in writing when the Effective Date has occurred, and any dispute shall be resolved by the Court.  It is expressly agreed by the Parties and their counsel that no Party intends this provision or any other part of this Agreement to establish or acknowledge that anyone is entitled to or has the right to appeal from the Final Approval Order and Judgment.

1.16.    "Escrow Account" shall mean an account at an established Financial Institution agreed upon by the Parties that is established for the deposit of the Settlement Amount and amounts relating to it, such as income earned on investment of the Settlement Amount.

1.17.    "Escrow Agent" shall mean the entity approved by the Parties to act as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.18.    "Fee and Expense Application" shall mean the petition to be filed by Class Counsel seeking approval of an award of Attorneys' Fees and Expenses.

1.19.    "Final Approval Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive final approval by the Court.  The Parties will request that the Final Approval Hearing be scheduled for a date no earlier than one hundred ten (110) calendar days after the entry of the Preliminary Approval Order.

1.20.    "Final Approval Order and Judgment" shall mean a final order entered by the Court after the Final Approval Hearing, substantially the same in all material respects to that attached hereto as **Exhibit A**, granting its approval of the Settlement.  The Parties may agree to

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

additions or modifications to the form of the Final Approval Order and Judgment as they agree are appropriate at the time that it is submitted to the Court for final approval of the Settlement.

1.21.   "Financial Institution" shall mean the institution at which the Escrow Account is established.

1.22.   "Former Participant" shall mean any Class Member who maintained a positive balance in the Plan on or after July 28, 2010, but who does not have any account with a positive balance in the Plan as of the date of the Preliminary Approval Order.

1.23.   "Inactive Participant" shall mean any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a positive balance but who is no longer eligible to make contributions to the Plan account.

1.24.   "Increased Match" shall have the meaning ascribed to it in Section 3.3.

1.25.   "Increased Match Period" shall have the meaning ascribed to it in Section 3.3.

1.26.   "Independent Fiduciary" shall mean the qualified and experienced independent fiduciary that the Company selects to review the Settlement independently on behalf of the Plan (subject to the consent of Plaintiffs, which consent shall not be unreasonably withheld).

1.27.   "Independent Fiduciary Fees and Costs" shall mean all reasonable fees, costs, and expenses of the Independent Fiduciary.  The Independent Fiduciary Fees and Costs shall be paid from the Settlement Fund after such funds are deposited with the Escrow Agent and upon receipt of an invoice from the Independent Fiduciary.

1.28.   "Notice" shall mean the notice, identical in all material respects to that attached hereto as **Exhibit B**, to be provided directly to Class Members pursuant to Section 2.4 and made available on the Settlement Website and the website of Class Counsel.

1.29.   "Parties" shall mean Plaintiffs, the Class, and Defendants.

1.30.   "Plaintiffs" shall mean Plaintiffs Marlon H. Cryer and Nelly J. Fernandez.

1.31.   "Plan" shall mean the Franklin Templeton 401(k) Retirement Plan.

1.32.   "Plan of Allocation" shall mean the framework for allocating the Settlement Fund that is approved by the Court, which framework shall be in the form attached hereto as **Exhibit C**.

4

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1.33.   "Plan Recordkeepers" shall mean Charles Schwab Retirement Plan Services Company and Bank of America Merrill Lynch.

1.34.   "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement, pursuant to Section 2.1 below, which order is substantially the same in all material respects to that attached hereto as **Exhibit D**.

1.35.   "Regulatory Change" shall have the meaning ascribed to it in Section 3.4(a).

1.36.   "Released Claims" shall be any and all claims for monetary, injunctive, and all other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the *Cryer* and *Fernandez* operative Complaints, whether or not included as counts in the Complaints; (b) the selection, retention and monitoring of the Plan's investment options and service providers; (c) the performance, fees and other characteristics of the Plan's investment options; (d) the Plan's fees and expenses, including without limitation, its recordkeeping fees; (e) the nomination, appointment, retention, monitoring and removal of the Plan's fiduciaries; and (f) the approval by the Independent Fiduciary of the Settlement; except that the Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement, nor do they include, and this Agreement does not in any way bar, limit, waive, or release, any individual claim by the Plaintiffs or a Class Member to vested benefits that are otherwise due under the terms of the Plan.  With respect to the Released Claims, it is the intention of the Parties and all other Class Members and the Plan expressly to waive to the fullest extent of the law: (i) the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor"; and (ii) the provisions, rights and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

1.37.   "Settlement" shall mean the compromise and resolution embodied in this Agreement.

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1    1.38.    "Settlement Administrator" shall mean Angeion Group.

2    1.39.    "Settlement Amount" shall mean thirteen million eight hundred fifty thousand

3    dollars ($13,850,000).

4    1.40.    "Settlement Fund" shall have the meaning set forth in Section 4.1(b).

5    1.41.    "Settlement Website" shall have the meaning ascribed to it in Section 2.5.

6    1.42.    "Structural Changes" shall mean the Plan changes set forth in Sections 3.2 and 3.3.

7    1.43.    "Taxes" shall have the meaning ascribed to it in Section 4.1(i).

8    1.44.    "Tax-Related Costs" shall have the meaning ascribed to it in Section 4.1(i).

9    1.45.    "Unknown Claims" shall mean any Released Claims that Plaintiffs and/or any

10   Class Members do not know or suspect to exist in their favor at the time of the release of the

11   Defendant Released Parties, including claims which, if known by them, might have affected their

12   settlement with the Defendants and release of the Defendant Released Parties, or might have

13   affected their decision not to object to this Settlement.  Plaintiffs and/or any Class Members may

14   later discover facts in addition to or different from those which they now know or believe to be

15   true with respect to the subject matter of the Released Claims, but Plaintiffs and all Class

16   Members, upon the date of the Court's entry of the Final Approval Order and Judgment, shall be

17   deemed to have, and by operation of the Final Approval Order and Judgment shall have, fully,

18   finally, and forever settled and released any and all Released Claims, known or unknown,

19   suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden,

20   which now exist, or heretofore have existed, upon any theory of law or equity now existing or

21   coming into existence in the future, including, but not limited to, conduct which is negligent,

22   intentional, with or without malice, or a breach of any duty, law or rule, without regard to the

23   subsequent discovery or existence of such different or additional facts.  Plaintiffs and all Class

24   Members shall be deemed by operation of the Final Approval Order and Judgment to have

25   acknowledged that the foregoing waiver was separately bargained for and a key element of the

26   Settlement of which this release is a part.

27

28

6

1    **II.     SETTLEMENT APPROVAL**

2        2.1.    *Motion for Preliminary Approval.*  No later than February 15, 2019, Plaintiffs shall move the

3    Court for preliminary approval of the Settlement, including entry of an order identical in all

4    material respects to the form of the Preliminary Approval Order.  Plaintiffs' papers seeking

5    preliminary settlement approval will make clear that before the Parties reached this Settlement

6    and independent of any settlement discussions, Plaintiffs agreed voluntarily to dismiss, with

7    prejudice, the Franklin Resources, Inc. Board of Directors, the individual current and former

8    Franklin Board members named in the suit (Gregory E. Johnson, Rupert H. Johnson, Jr., Charles

9    B. Johnson, Charles E. Johnson, Peter K. Barker, Mariann Byerwalter, Mark C. Pigott, Chutta

10   Ratnathicam, Laura Stein, Seth Waugh, Geoffrey Y. Yang, Samuel Armacost, Joseph Hardiman,

11   and Anne Tatlock), and Plaintiff Fernandez's monitoring claim, which dismissal will be effected

12   as part of the Final Approval Order and Judgment.  Defendants will not object to Plaintiffs'

13   motion for preliminary approval but reserve the right to challenge the Fee and Expense

14   Application and request for Case Contribution Awards referenced therein in full.

15       2.2.    ***Rights of Exclusion.***  Class Members shall not be permitted to exclude themselves

16   from the Class.

17       2.3.    ***Right to Object.***  Class Members shall be permitted to object to the Settlement.

18   Requirements for filing an objection shall be set forth in the Preliminary Approval Order.

19       2.4.    ***Class Notice***.  Within forty-five (45) calendar days of the entry of the Preliminary

20   Approval Order or as may be modified by the Court, the Settlement Administrator shall send the

21   Notice by electronic mail (if available) or first-class mail to the Class Members.  The Notice shall

22   be sent to the last known electronic mail address or last known mailing address of the Class

23   Members that are available through the Plan Recordkeepers.  The Settlement Administrator shall

24   update mailing addresses through the National Change of Address database before mailing (with

25   all returned mail skip-traced and promptly re-mailed).

26       2.5.    ***Settlement Website.***  Within thirty (30) calendar days of the entry of the

27   Preliminary Approval Order and no later than the first date that the e-mailing or the mailing of the

28   Notice occurs, or as may be extended by the Court on application of the Parties, the Settlement

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1   Administrator shall establish a website containing the Notice and this Agreement and its exhibits

2   (the "Settlement Website").  The Notice will identify the web address of the Settlement Website.

3        2.6.    ***Settlement Information Line.***  Within thirty (30) calendar days of the entry of the

4   Preliminary Approval Order and no later than the first date that the e-mailing or the mailing of the

5   Notice occurs, or as may be extended by the Court on application of the Parties, the Settlement

6   Administrator shall establish a toll-free telephone number to which Class Members can direct

7   questions about the Settlement.  The Settlement Administrator shall develop a question-and-

8   answer-type script, with input and approval from Defendants' Counsel and Class Counsel, for the

9   use of persons who answer calls to this line.

10       2.7.    ***Approval of Settlement by Independent Fiduciary.***

11            (a)    The Independent Fiduciary shall review the Settlement and provide any

12       requested authorizations, including the authorization required by Employee Retirement

13       Income Security Act of 1974 ("ERISA") Prohibited Transaction Exemption 2003-39, 68

14       Fed. Reg. 75632 (Dec. 31, 2003), as amended by 75 Fed. Reg. 33830 (June 15, 2010).

15       The Parties shall comply with reasonable requests for information made by the

16       Independent Fiduciary.

17            (b)    At least thirty (30) calendar days prior to the Final Approval Hearing, the

18       Independent Fiduciary shall have approved and authorized in writing the Settlement, and

19       given a release in its capacity as fiduciary of the Plan for and on behalf of the Plan, on the

20       terms set forth in Section 6.1, in accordance with Prohibited Transaction Class Exemption

21       2003-39.  Should the Independent Fiduciary fail to approve and authorize the Settlement

22       or fail to give a release on behalf of the Plan, the Agreement shall be terminable, pursuant

23       to Section 9.3 below.

24       2.8.    ***Class Action Fairness Act Notice.***  The Settlement Administrator shall comply

25   with the notice requirements of 28 U.S.C. § 1715, and pursuant to the Preliminary Approval

26   Order, shall file a notice with the Court confirming compliance at least thirty (30) calendar days

27   prior to the Final Approval Hearing.

28

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

2.9.    ***Motion for Final Approval.***  Plaintiffs shall move the Court for final approval of the Settlement no later than the deadline set by the Court in the Preliminary Approval Order, or as may be extended by the Court on application of the Parties.  On or after the date set by the Court for the Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court shall determine, among other things, (a) whether to enter the Final Order and Judgment finally approving the Settlement; and (b) what, if any, Case Contribution Awards and/or Attorneys' Fees and Expenses should be awarded to Plaintiffs and Class Counsel, respectively, pursuant to Sections 8.1 and 8.2 of this Agreement.

## III.    STRUCTURAL CHANGES

3.1.    ***Overview.***  In consideration of all the promises and agreements set forth in this Agreement, Defendants agree to make certain Plan Structural Changes, as set forth in Sections 3.2 and 3.3 below.  It is understood and agreed by the Parties that by making these Structural Changes, Defendants do not agree with or in any way admit, and shall not be deemed to agree with or in any way admit, any theories of Plaintiffs or Class Counsel regarding Defendants' liability in the Action, including, without limitation, that any of Defendants' prior or existing practices violates any federal or state laws, statutes, or regulations.

3.2.    ***Addition to Investment Lineup.***  No later than thirty (30) calendar days following the Effective Date, unless otherwise stipulated by the Parties to address any implementation issues, the fiduciaries to the Plan with responsibility for selecting Plan investment options will add a nonproprietary target date fund option ("TDF") to the Plan lineup, and such TDF (or another nonproprietary TDF) will be maintained as a Plan investment option for the duration of the Compliance Period, in addition to the Plan's Qualified Default Investment Alternative (currently the LifeSmart Target Date Funds).  The choice of TDF will be made by the fiduciaries responsible for selecting Plan investment options in a manner consistent with their fiduciary oversight responsibilities, following a search of nonproprietary TDF options conducted by the Plan's independent investment consultant, Callan Associates, Inc.

3.3.    ***Additional Plan Benefit Consisting of Increased Match Contributions by the Company.***  The Company agrees to provide an additional benefit to the Plan consisting of an

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1   increase of the Company's existing match contributions to the Plan from a rate of seventy-five

2   percent (75%) of each participant's eligible salary deferrals to the rate of eighty-five percent

3   (85%) (the "Increased Match"), beginning with the first full quarter of participant deferrals

4   following the Effective Date, for a period of three years (the "Increased Match Period").  The

5   Increased Match will apply to participants eligible to receive match contributions under the Plan

6   document.  The Company may elect, in its sole discretion, to accelerate the Increased Match

7   Period starting with deferrals made by eligible participants during the calendar year in which the

8   Increased Match is implemented, by making retroactive "true-up" Increased Match contributions

9   (i.e., at a rate of 10%) to the Plan accounts of those Participants who received a 75% match

10   contribution during that calendar year.  Should the Company elect to do so, the three-year

11   Increased Match Period shall be deemed to have commenced on the first day of the first quarter in

12   which the Increased Match was first applied, even if that date is prior to the Effective Date.

13   (Thus, by way of illustration only, if the Effective Date falls on September 1, 2019, such that the

14   Increased Match under this Agreement would otherwise first apply beginning with eligible

15   participant deferrals made in the fourth calendar quarter of 2019, the Company could instead elect

16   to apply the Increased Match to eligible participant deferrals made beginning in the first calendar

17   quarter of 2019 and forward.  Under this example, those Plan participants who received 75%

18   match contributions during any of the quarters in 2019, would receive retroactive Increased

19   Match contributions in their Plan accounts, based on their eligible deferrals in 2019, and the

20   Increased Match Period would end on December 31, 2021.)  Under all circumstances, the Plan's

21   vesting rules will apply to the Increased Match.

22          3.4.    ***Impact of Regulatory Changes.***

23          (a)     Notwithstanding anything in this Part III to the contrary, Defendants shall

24   not be required to comply with any provision of this Part III should Congress, the

25   Department of Labor, or any other applicable regulatory or self-regulatory body impose

26   substantive requirements that render such compliance unlawful, whether through statute,

27   regulation, guidance, or otherwise ("Regulatory Change").

28          (b)     Notwithstanding anything in this Part III to the contrary, Defendants shall

1    have the right, at their sole option, to modify any of the Structural Changes described in

2    Part III following a Regulatory Change; provided, however, that, in the event of a

3    Regulatory Change that affects only certain of the provisions of this Part III, Defendants

4    shall be required to continue to comply with all other provisions of Part III that are not

5    affected by the Regulatory Change.  In the event of a Regulatory Change, (i) Defendants

6    shall notify Class Counsel about the change and Defendants' resulting modification and

7    (ii) Defendants' compliance with the new regulatory requirements and/or guidance shall

8    be deemed compliant with the terms of this Agreement.

9          3.5.   ***Compliance Reporting.***  Defendants shall file a notice with the Court within thirty

10   (30) calendar days following (a) the end of the first full quarter in which the Increased Match is

11   implemented or (b) the end of the first full quarter after the Effective Date, whichever is later, or

12   as may be extended by the Court on application of the Parties, attesting that they have

13   implemented the Structural Changes.

14   **IV.   PAYMENTS TO THE CLASS**

15         4.1.   ***The Settlement Amount.***

16         (a)   In consideration of all of the promises and agreements set forth in this

17   Agreement, the Company will pay the Settlement Amount.  None of the other Defendant

18   Released Parties shall have any obligation to contribute financially to this Settlement.  It is

19   understood and agreed by the Parties that by paying the Settlement Amount, Defendants

20   do not agree with or in any way admit, and shall not be deemed to agree with or in any

21   way admit, any theories of Plaintiffs or Class Counsel regarding Defendants' liability in

22   the Action, including, without limitation, that any of Defendants' prior or existing

23   practices violates any federal or state laws, statutes, or regulations.

24         (b)   The Company shall pay the Settlement Amount in two segments, and this

25   funding, in the aggregate, together with any interest and investment earnings thereon, shall

26   constitute the "Settlement Fund."  First, the Company shall cause seventy-five thousand

27   dollars ($75,000) of the Settlement Amount to be deposited by wire transfer into the

28   Escrow Account within fifteen (15) calendar days of the entry of the Preliminary

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

Approval Order to fund any Administration Costs and Independent Fiduciary Fees and Costs that arise before the Court's entry of the Final Approval Order and Judgment. Second, the Company shall cause the remaining portion of the Settlement Amount to be deposited by wire transfer into the Escrow Account within fifteen (15) calendar days following the Court's entry of the Final Approval Order and Judgment, subject to the provisions of Section 9.5.

(c)     The Settlement Amount shall be used solely for the purposes set forth in Section 4.1(j) below.

(d)     Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.  Neither Defendants nor Plaintiffs shall have any liability whatsoever for the acts or omissions of the Settlement Administrator appointed by the Court.  The Settlement Administrator shall not disburse the Settlement Amount or any portion of the Settlement Fund except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Class Counsel and Defendants' Counsel.

(e)     The Settlement Administrator is authorized to execute transactions on behalf of Class Members that are consistent with the terms of this Agreement and with orders of the Court.

(f)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

(g)     The Settlement Administrator shall, to the extent practicable and prudent, invest the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Fund or any portion thereof has been invested, and identifying the precise

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

location (including any safe deposit box number) and form of holding of each such instrument.  Neither the Settlement Fund nor any portion thereof shall be commingled with any other monies in any instruments.  Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section 4.1(g) shall be maintained by the Settlement Administrator, and not commingled with any other monies, in a bank account, which shall promptly be identified to the Parties at any Party's request by bank and account number and any other identifying information.  The Settlement Administrator and Class Members shall bear all risks related to investment of the Settlement Fund.

(h)      The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account.  The Company agrees to provide the Settlement Administrator with the statement described in Treasury Regulation §1.468B-3(e).  Neither Defendants, Defendants' Counsel, the Defendant Released Parties, Plaintiffs, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(i)      All taxes on the income of the Escrow Account ("Taxes") and expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(j)      The Settlement Fund will be used to pay the following amounts associated with the Settlement:

(1)      Compensation to Class Members determined in accordance with Section 4.2;

(2)      Any Case Contribution Awards approved by the Court;

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1    (3)  All Attorneys' Fees and Expenses approved by the Court;

2    (4)  Independent Fiduciary Fees and Costs;

3    (5)  Administration Costs; and

4    (6)  Taxes and Tax-Related Costs.

5  4.2.  ***Distribution to Class Members.***

6    (a)  The Settlement Fund will be distributed to Class Members in accordance

7 with the Plan of Allocation.

8    (b)  It is understood and agreed by the Parties that the proposed Plan of

9 Allocation is not part of this Agreement and is to be considered by the Court separately

10 from the Court's consideration of the fairness, reasonableness, and adequacy of the

11 Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate

12 to terminate or cancel this Agreement or affect the finality of the Court's Final Approval

13 Order and Judgment approving the Settlement or any other orders entered pursuant to the

14 Agreement.  Notwithstanding the foregoing or anything else in this Agreement, any

15 revisions to the Plan of Allocation that would increase the Settlement Amount or require

16 the Company or its affiliates to incur additional expenses or costs or to provide data not

17 readily available shall be deemed a material alteration of this Agreement and shall entitle

18 the Company, at its election, to terminate the Agreement.

19    (c)  Class Members who receive a check from the Settlement Administrator

20 under the Plan of Allocation must cash their checks within ninety (90) calendar days of

21 issuance.  If they do not do so, the checks will be void, and the Settlement Administrator

22 shall be instructed to return any such funds to the Settlement Fund pursuant to Section 4.4.

23 This limitation shall be printed on the face of each check.  Notwithstanding these

24 requirements, the Settlement Administrator shall have the authority to reissue checks to

25 Class Members where it determines there is good cause to do so, provided that doing so

26 will not compromise the Settlement Administrator's ability to implement the Plan of

27 Allocation.  The voidance of checks shall have no effect on the Class Members' release of

28 claims, obligations, representations, or warranties as provided herein, which shall remain

14

1    in full effect.

2      4.3. ***Responsibility for Taxes on Distribution.*** Each Class Member who receives a

3    payment under this Agreement shall be fully and ultimately responsible for payment of any and

4    all federal, state or local taxes resulting from or attributable to the payment received by such

5    person. Each Class Member shall hold Defendants, Defendants' Counsel, the Defendant

6    Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax

7    liability, including without limitation penalties and interest, related in any way to payments or

8    credits under the Agreement, and (b) the costs (including, without limitation, fees, costs and

9    expenses of attorneys, tax advisors, and experts) of any proceedings (including, without

10   limitation, any investigation, response, and/or suit), related to such tax liability.

11     4.4. ***Treatment of Undistributed Funds and Uncashed Checks.*** Any funds associated

12   with checks that are not cashed within ninety (90) calendar days of issuance and any funds that

13   cannot be distributed to Class Members for any other reason, together with any interest earned on

14   them, and any funds remaining after the payment of any applicable Taxes by the Escrow Agent,

15   shall be returned to the Settlement Fund by the Settlement Administrator to be distributed as

16   described in the Plan of Allocation.

17     4.5. ***Administration Costs.*** The Administration Costs shall be paid from the Settlement

18   Fund. The Settlement Administrator will reserve from the Settlement Fund its estimated

19   Administration Costs. Beginning thirty (30) calendar days after the entry of the Preliminary

20   Approval Order, and on every thirtieth (30th) calendar day thereafter, the Settlement

21   Administrator shall provide the Parties with a detailed accounting of any Administration Costs

22   expended to date and an invoice for the amount of such Administration Costs. Any disputes as to

23   whether amounts billed by the Settlement Administrator are reasonable and necessary under this

24   Agreement shall be resolved by the Court.

25     4.6. ***Entire Monetary Obligation.*** Notwithstanding anything else in this Agreement, in

26   no event shall Defendants be required to pay any amounts under this Agreement or otherwise,

27   other than the Settlement Amount, or the costs of the Structural Changes described in Part III.

28

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1    **V.    SETTLEMENT ADMINISTRATION**

2        5.1.    The Company shall use reasonable efforts to cause the Plan Recordkeepers to provide to the

3    Settlement Administrator, within thirty (30) calendar days of the entry of the Preliminary

4    Approval Order, the participant data sufficient to effectuate the Notice, implement the Plan of

5    Allocation, and distribute the Settlement Fund.  Subject to at least thirty (30) calendar days'

6    written notice from the Settlement Administrator, the Company shall also use reasonable efforts

7    to cause the current Plan Recordkeeper to provide an updated list of Active Participants and

8    Inactive Participants prior to the distribution, in order to identify any such participants who have

9    taken a full distribution from their Plan account and no longer have a Plan account with a positive

10    balance.  The Company shall not otherwise be obligated to assist with effecting Notice,

11    implementation of the Plan of Allocation, or distribution of the Settlement Fund.

12        5.2.    The Settlement Administrator shall administer the Settlement subject to the

13    supervision of Class Counsel, Defendants' Counsel, and the Court as circumstances may require.

14        5.3.    Defendants, Defendants' Counsel, and the Defendant Released Parties shall have

15    no responsibility for, interest in, or liability whatsoever, with respect to:

16            (a)    any act, omission or determination of the Settlement Administrator, Class

17        Counsel, or designees or agents of Class Counsel or the Settlement Administrator;

18            (b)    any act, omission or determination of Class Counsel or their designees or

19        agents in connection with the administration of the Settlement;

20            (c)    the management, investment, or distribution of the Settlement Fund; or

21            (d)    the determination, administration, calculation, or payment of any claims

22        asserted against the Settlement Fund.

23        5.4.    The Settlement Administrator shall provide to Class Counsel and Defendants'

24    Counsel, no less frequently than monthly, a full accounting of all expenditures made in

25    connection with the Settlement, including Administration Costs (as noted in Section 4.5 above),

26    and any distributions from the Settlement Fund.

27

28

5.5.     The Settlement Administrator shall provide such information as may be reasonably requested by Plaintiffs or Defendants or their counsel relating to administration of this Agreement.

**VI.     RELEASES, COVENANTS AND JUDICIAL FINDINGS**

6.1.     *Release of Defendants and the Defendant Released Parties.*  Subject to Part IX below, upon and through the date of the Court's entry of the Final Approval Order and Judgment, Plaintiffs and each Class Member (on behalf of themselves, their current and former beneficiaries, their representatives and successors-in-interest), and the Plan (by and through the Independent Fiduciary pursuant to Section 2.7(b)) absolutely and unconditionally release and forever discharge all Released Claims.

6.2.     *Covenant Not to Sue.*  The Parties recognize that the Structural Changes in Part III above and the Settlement Amount in Part IV above are designed to benefit the Class and to eliminate any potential future controversies over the Released Claims.  In order to ensure that these practices affecting the Plan are not subject to future potentially inconsistent challenges or standards, Class Members agree that, for the duration of the Compliance Period, none of them will institute, maintain, prosecute, sue, or assert in any action or proceeding, whether individually, in a representative capacity, or on behalf of the Plan, any claim based on conduct subsequent to, or any liability or damages claimed to arise or occur after, the date of the Court's entry of the Preliminary Approval Order, with respect to any of the conduct or practices this Agreement requires Defendants to undertake, including without limitation the requirement to add a nonproprietary TDF investment option.  Notwithstanding this Section 6.2, any claim concerning the substantive prudence of the particular TDF ultimately added to the Plan lineup pursuant to Section 3.2 is preserved.

6.3.     *Releases of Plaintiffs, the Plan, the Class, and Class Counsel.*  Upon and through the date of the Court's entry of the Final Approval Order and Judgment, the Company (on behalf of itself and any successors-in-interest) shall be deemed to have, and by operation of the Final Approval Order and Judgment, shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of Plaintiffs, the Plan, the Class and

17

1    Class Counsel from any and all actual or potential claims, actions, causes of action, demands,

2    obligations, liabilities, attorneys' fees and costs, whether under local, state or federal law, whether

3    by statute, contract, common law or equity, whether brought in an individual, representative or

4    any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted,

5    foreseen or unforeseen, actual or contingent, liquidated or unliquidated, relating to the pursuit of

6    the Action.

7          6.4.    ***Taxation of Settlement Fund.***  Plaintiffs acknowledge that the Defendant

8    Released Parties have no responsibility for any taxes due on funds deposited in or distributed

9    from the Settlement Fund, or on any funds that Plaintiffs or Class Counsel receive from the

10   Settlement Fund, including through any Case Contribution Awards or Attorneys' Fees and

11   Expenses award, as applicable.

12         6.5.    ***Use of Settlement Administrator Information.***  Class Counsel, Defendants'

13   Counsel, and the Defendants shall have equal access to information held by the Settlement

14   Administrator given that such information is necessary to administer this Settlement, except to the

15   extent the Settlement Administrator receives or provides information protected by attorney-client

16   privilege.

17         6.6.    ***Use of Company and Plan Information.***  Class Counsel and their agents,

18   including without limitation the Settlement Administrator, shall use any information provided by

19   the Company and/or the Plan Recordkeepers pursuant to this Agreement solely for the purpose of

20   providing the Notice and administering this Settlement and for no other purpose.  Such

21   information shall be marked "Confidential" and treated as such under the Protective Order

22   governing this Action.

23   **VII.   REPRESENTATIONS AND WARRANTIES**

24         7.1.    ***Parties' Representations and Warranties.***  The Parties, and each of them, represent and warrant

25   as follows, and each Party acknowledges that each other Party is relying on these representations

26   and warranties in entering into this Settlement Agreement:

27             (a)    That they have diligently investigated the claims in this Action; that they

28         are voluntarily entering into this Agreement as a result of arm's-length negotiations

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

among their counsel; that in executing this Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as provided in this Agreement, they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party.  Each Party assumes the risk of mistake as to facts or law.

(b)	That they have carefully read the contents of this Agreement and this Agreement is signed freely by each signatory executing the Agreement on behalf of the applicable Party.  The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to this Settlement, this Agreement, and all of the matters pertaining thereto, as he, she or it deems necessary.

7.2.	***Signatories' Representations and Warranties.***  Each person executing this Agreement on behalf of any other person does hereby personally represent and warrant that he or she has the authority to execute this Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent and that no right or claim compromised pursuant to this Agreement has been assigned or hypothecated to any third party.

## VIII.   MONETARY PAYMENTS

8.1.	***Case Contribution Awards***

(a)	Plaintiff Cryer will seek a Case Contribution Award not to exceed the amount of twenty-five thousand dollars ($25,000.00) and Plaintiff Fernandez will seek a Case Contribution Award not to exceed the amount of fifteen thousand dollars ($15,000), which awards shall be subject to Court approval (the "Case Contribution Awards").  Defendants reserve all rights to oppose Plaintiffs' request for Case Contribution Awards in full.  Any Case Contribution Awards approved by the Court shall be paid within thirty (30) calendar days of the Effective Date.  The Case Contribution Awards shall be paid by

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

the Settlement Administrator solely out of the Settlement Fund and shall be deducted (to the extent approved by the Court) from the Settlement Fund on or after the Effective Date and prior to the distribution of the Settlement Fund to the Class Members.  Plaintiffs shall also be entitled to distribution under this Settlement pursuant to Section 4.2 as Class Members.

(b)     Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Awards shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the Case Contribution Awards, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

(c)     Defendants shall have no obligations whatsoever with respect to any Case Contribution Award to Plaintiffs, which shall be payable solely out of the Settlement Fund.

8.2.     ***Attorneys' Fees and Expenses***

(a)     Class Counsel will submit a Fee and Expense Application seeking an award of Attorneys' Fees not to exceed seven million four hundred ninety thousand dollars ($7,490,000), plus reasonable litigation Expenses.  Defendants reserve all rights to oppose the Fee and Expense Application in full.  Any amount awarded by the Court in response to such Fee and Expense Application shall be paid by the Settlement Administrator solely out of the Settlement Fund and shall be deducted (to the extent approved by the Court) from the Settlement Fund and paid to Class Counsel within thirty (30) calendar days of the Effective Date.

(b)     Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Fund shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy

of the Settlement, and any order or proceedings relating to the award of Attorneys' Fees and Expenses, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

(c)     Defendants shall have no obligations whatsoever with respect to any Attorneys' Fees and Expenses incurred by Class Counsel, which shall be payable solely out of the Settlement Fund.

## IX.     CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT

9.1.    This Agreement and the Settlement shall terminate and be cancelled if, within ten (10) business days after any of the following events, one of the Parties provides written notification of an election to terminate the Settlement:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter, or materially modifies, the contents of the Preliminary Approval Order, or the Preliminary Approval Order is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter, or materially modifies, the contents of the Final Approval Order and Judgment;

(c)     The Court's Final Approval Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

(d)     The Effective Date does not occur for some other reason.

9.2.    For purposes of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning the administration of the Settlement or the persons performing such administrative functions, or the amount or award of any Attorneys' Fees and Expenses or Case Contribution Awards shall constitute grounds for cancellation or termination of the Agreement.

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

9.3.    This Agreement and the Settlement shall terminate and be cancelled, at the sole election of the Company, if the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to approve the release on behalf of the Plan of the Released Claims.  Alternatively, the Company shall have the option to waive this condition.  Unless otherwise agreed by the Parties, either option is to be exercised in writing within the earlier of: (a) ten (10) business days after the Parties' receipt of the Independent Fiduciary's written determination under Section 2.7 or (b) three (3) business days prior to the date set for the Final Approval Hearing.

9.4.    This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to, or request material modifications to, the Agreement; and (b) within ten (10) business days after the deadline set in the Preliminary Approval Order for such objections or requests, or within ten (10) business days of receiving any such objection or request, if later, the Company provides written notice of its election to terminate the Settlement.

9.5.    If for any reason this Agreement is terminated or fails to become effective, then:

(a)    The Parties shall be deemed to have reverted to their respective status in the Action as of February 15, 2019, the Action shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)    Class Counsel and Defendants' Counsel shall within ten (10) business days after the date of termination of the Agreement jointly notify the Financial Institution in writing to return to the Company, or its designee, the full amount contained in the Settlement Fund, with all interest and income earned thereon, after deduction of any amounts earlier disbursed and/or incurred by the Settlement Fund as of the termination, and direct the Financial Institution to effect such return within fourteen (14) calendar days after such notification.  Prior to the return of amounts contemplated by this Section 9.5(b), the Financial Institution shall fully and finally fulfill and set aside for any and all tax obligations of the Settlement Fund as set forth in Section 4.1(i) and the Company shall have no past, present, or future liability whatsoever for any such tax obligations.

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1        (c)        This Part IX and its provisions shall survive any termination of this

2    Settlement, as will Sections 4.3, 5.3, 6.4, and 6.6 above.

3    **X.        NO ADMISSION OF WRONGDOING**

4        10.1.    The Parties understand and agree that this Agreement embodies a compromise settlement of

5    disputed claims, and that nothing in this Agreement, including the furnishing of consideration for

6    this Agreement, shall be deemed to constitute any finding or admission of any wrongdoing or

7    liability by any of the Defendants or the Defendant Released Parties, or give rise to any inference

8    of wrongdoing or liability in the Action or any other proceeding.  This Agreement and the

9    consideration provided hereunder are made in compromise of disputed claims and are not

10   admissions of any liability of any kind, whether legal or factual.  The Defendants and the

11   Defendant Released Parties specifically deny any such liability or wrongdoing and the Company

12   states that it is entering into the Agreement solely to eliminate the burden and expense of

13   protracted litigation.  Further, Plaintiffs, while believing that all Claims brought in the Action

14   have merit, have concluded that the terms of this Agreement are fair, reasonable, and adequate to

15   the Plan, themselves, and the Class Members given, among other things, the inherent risks,

16   difficulties and delays in complex ERISA litigation such as the Action.  Neither the fact, nor the

17   terms, of this Agreement shall be used or offered or received in evidence in any action or

18   proceeding for any purpose, except in an action or proceeding to enforce this Agreement, whether

19   affirmatively or defensively.

20   **XI.        MISCELLANEOUS**

21       11.1.    *No Disparaging Statements*.  Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel

22   shall make no statements to the press or make any other public statements describing this

23   Settlement that disparage any Party or Defendant Released Parties or accuse any Party or

24   Defendant Released Parties of wrongdoing.  Nothing in this Agreement shall be construed to

25   prevent Plaintiffs and Class Counsel from freely and frankly communicating with the Class

26   Members.

27       11.2.    *Waiver*.  The provisions of this Agreement may be waived only by an instrument

28   in writing executed by the waiving Party.  The waiver by any Party of any breach of this

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1    Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior,

2    subsequent, or contemporaneous, of this Agreement.

3        11.3.   ***Dispute Resolution.***  If a dispute arises regarding compliance with any of the

4    provisions of this Agreement, it shall first be mediated in non-binding mediation by a mutually

5    agreed mediator.  The cost of any mediation shall be split equally between Plaintiffs and the

6    Company.

7        11.4.   ***Entire Agreement.***  This Agreement is the entire agreement among the Parties and

8    it supersedes any prior agreements, written or oral, between the Parties.  This Agreement cannot

9    be altered, modified or amended except through a writing executed by either Plaintiffs and

10   Defendants, or by Class Counsel and Defendants' Counsel.

11       11.5.   ***Construction of Agreement.***  This Agreement shall be construed to effectuate the

12   intent of the Parties to resolve all disputes encompassed by the Agreement.  All Parties have

13   participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue

14   of a presumption in favor of any Party.  The Agreement was reached at arm's length by the

15   Parties represented by counsel.  None of the Parties shall be considered to be the drafter of this

16   Agreement or any provision hereof for the purposes of any statute, case law, or rule of

17   interpretation or construction.

18       11.6.   ***Principles of Interpretation.***  The following principles of interpretation apply to

19   this Agreement:

20            (a)    The headings of this Agreement are for reference only and do not affect in

21       any way the meaning or interpretation of this Agreement.

22            (b)    Definitions apply to the singular and plural forms of each term defined.

23            (c)    Definitions apply to the masculine, feminine, and neutral genders of each

24       term defined.

25            (d)    References to a person are also to the person's permitted successors and

26       assignees.

27            (e)    Whenever the words "include," "includes," or "including" are used in this

28       Agreement, they shall not be limiting but rather shall be deemed to be followed by the

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1    words "without limitation."

2        11.7.   ***Executed in Counterparts***.  This Agreement may be executed in counterparts, all

3    of which shall be considered the same as if a single document had been executed.  The

4    Agreement shall be deemed executed by all Parties when such counterparts have been signed by

5    each of the Parties' counsel and delivered to the other Party.  Counterpart copies of signature

6    pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken

7    together shall all be treated as originals and binding signatures.

8        11.8.   ***Notices***.  Unless otherwise provided herein, any notice, request, instruction,

9    application for Court approval, or application for Court order sought in connection with the

10   Agreement, shall be in writing and delivered personally or sent by certified mail or overnight

11   delivery service, postage prepaid, with copies by facsimile or e-mail to the attention of Class

12   Counsel or Defendants' Counsel, as applicable (as well as to any other recipients that a court may

13   specify). Parties may change the person(s) to whom such notices should be directed by giving

14   notice pursuant to this Section 11.8.  As of the date hereof, the respective representatives are as

15   follows:

16        **For Defendants:**
              **Brian D. Boyle**
17             O'Melveny & Myers LLP
               1625 Eye Street, NW
18             Washington, D.C. 20006
               Telephone:    (202) 383-5300
19             Facsimile:     (202) 383-5414
               Email:  bboyle@omm.com
20

21        **For Plaintiffs:**
              **Gregory Y. Porter**
22             Bailey & Glasser, LLP
               1055 Thomas Jefferson St. NW
23             Suite 540
               Washington, D.C. 20007
24             Telephone:    (202) 463-2101
               Facsimile:     (202) 463-2103
25             Email:          gporter@baileyglasser.com

26

27        11.9.   ***Extensions of Time***.  The Parties may agree, subject to the approval of the Court

28   where required, to reasonable extensions of time to carry out the provisions of the Agreement.

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

11.10.  ***Governing Law.***  This Agreement shall be governed by and construed in accordance with the laws of California without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than California.

11.11.  ***Fees and Expenses***.  Except as otherwise expressly set forth herein, each Party hereto shall pay all fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to his, her or its negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors.  Nothing in this Agreement shall require Defendants to pay any monies other than as expressly provided herein.

11.12.  ***Communication With Participants.***  Nothing in this Agreement or Settlement shall prevent or inhibit the Company's ability to communicate with Active, Inactive, or Former Participants of the Plan.  The Plaintiffs acknowledge and do not object to the fact that the Company informed the Class Members of this Settlement prior to their receipt of Notice under this Agreement.

11.13.  ***Retention of Jurisdiction.***  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as necessary or appropriate to effectuate the terms of the Agreement.


Dated: February 15, 2019                    MARK P. KINDALL
                                            ROBERT A. IZARD
                                            IZARD KINDALL & RAABE LLP

                                            GREGORY Y. PORTER
                                            MARK G. BOYKO
                                            BAILEY & GLASSER

                                            By:_____
                                                    Gregory Y. Porter
                                            Attorneys for Plaintiffs

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

1

2    Dated: February 15, 2019          BRIAN D. BOYLE

3                                       CATALINA J. VERGARA

4                                       O'MELVENY & MYERS LLP

5                                By: _____

6                                       Catalina J. Vergara

7                                Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT
4:16-cv-04265-CW

# EXHIBIT A

Mark P. Kindall, Cal. Bar No. 138703
mkindall@ikrlaw.com
Robert A. Izard, *pro hac vice*
rizard@ikrlaw.com
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292

Gregory Y. Porter, *pro hac vice*
gporter@baileyglasser.com
Mark G. Boyko, *pro hac vice*
mboyko@baileyglasser.com
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101

Joseph A. Creitz, Cal. Bar. No. 169552
joe@creitzserebin.com
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090

*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1-25,<br><br>Defendants. | **Lead Case No. 4:16-cv-04265-CW**<br>[Consolidated with Case No. 4:17-cv-06409-CW]<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br>**[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT**<br><br>Judge:    Hon. Claudia Wilken |

## JUDGMENT APPROVING SETTLEMENT OF CLASS ACTION

WHEREAS, Marlon Cryer and Nelly Fernandez (the "Plaintiffs") in the above-captioned consolidated litigation (the "Action") on their own behalf and on behalf of the Class and the Plan, on the one hand, and Defendants Franklin Resources, Inc., the Franklin Templeton 401(k) Retirement Plan Investment Committee, the Franklin Templeton 401(k) Retirement Plan Administrative Committee, Norman Frisbie, Jennifer Johnson, Penelope Alexander, Kenneth Lewis, Dan Carr, Nicole Smith, Alison Baur, Madison Gulley (erroneously sued as Matthew Gulley), the Franklin Resources, Inc. Board of Directors, Gregory E. Johnson, Rupert H. Johnson, Jr., Charles B. Johnson, Charles E. Johnson, Peter K. Barker, Mariann Byerwalter, Mark C. Pigott, Chutta Ratnathicam, Laura Stein, Seth Waugh, Geoffrey Y. Yang, Samuel Armacost, Joseph Hardiman, and Anne Tatlock (the "Defendants"), on the other hand, have entered into a Settlement Agreement and Release dated February 15, 2019, (the "Agreement"), that provides for a complete dismissal with prejudice of all claims asserted in the Action against Defendants by the Class on the terms and conditions set forth in the Agreement, subject to the approval of this Court (the "Settlement");

WHEREAS, the capitalized terms not defined in this Final Approval Order and Judgment shall have the same meaning ascribed to them in Part I of the Agreement;

WHEREAS, by Order dated _____ (the "Preliminary Approval Order"), this Court (1) preliminarily approved the Settlement; (2) appointed a Settlement Administrator; (3) directed notice be given to the Class and approved the form and manner of Notice; (4) approved the Plan of Allocation; (5) scheduled a Final Approval Hearing; and (6) scheduled a hearing on Class Counsel's Fee and Expense Application and Plaintiffs' request for Case Contribution Awards;

WHEREAS, due and adequate notice has been given to the Class;

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

WHEREAS, the Court conducted a hearing on _____ (the "Final Approval Hearing") to consider, among other things, (1) whether the proposed Settlement on the terms and conditions provided for in the Agreement is fair, reasonable, adequate, and in the best interests of the Class and should be finally approved by the Court; (2) whether Class Counsel's Fee and Expense Application is reasonable and should be approved; (3) whether Plaintiffs' request for Case Contribution Awards is reasonable and should be approved; and (4) whether this Final Approval Order and Judgment should be entered dismissing with prejudice all claims asserted in the Action against Defendants; and

WHEREAS, the Court having reviewed and considered the Agreement, all papers filed and proceedings held herein in this Action in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **<u>Jurisdiction:</u>**  The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members.

2. **<u>Incorporation of Settlement Documents:</u>**  This Final Approval Order and Judgment incorporates and makes a part hereof: (a) the Agreement filed with the Court on February 15, 2019, including the Plan of Allocation submitted therewith; and (b) the Notice approved by the Court on _____.

3. **<u>Notice:</u>**  The Court finds that the dissemination of the Notice:  (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice reasonably practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise all Class Members of the pendency of the Action,

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

of the effect of the Settlement (including the releases provided for therein), of their right to object to the Settlement and appear at the Final Approval Hearing, of Class Counsel's Fee and Expense Application, and of Plaintiffs' request for Case Contribution Awards; (d) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution including the Due Process Clause, and all other applicable law and rules.

4.      **Objections:**  The Court finds _____.

5.      **Final Settlement Approval:**  Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Agreement in all respects including, without limitation, the terms of the Settlement; the releases provided for therein; and the dismissal with prejudice of the claims asserted in the Action, and finds that the Settlement is, in all respects, fair, reasonable and adequate, and is in the best interests of Plaintiffs and the Class.  The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions of the Agreement.

6.      **Dismissal of Claims:** As of the Effective Date, pursuant to Fed. R. Civ. P. 54(b), all of the claims asserted in this Action against Defendants are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Agreement.

7.      **Binding Effect:**  The terms of the Agreement and of this Final Approval Order and Judgment shall be forever binding on Defendants, Plaintiffs, and all Class Members, as well as their respective current and former beneficiaries, heirs, descendants, dependents, administrators, executors, representatives, predecessors, successors, and assigns.

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

8.    **Releases:**  The releases set forth in the Agreement (the "Releases"), are expressly incorporated herein in all respects.  The Releases are effective as of the date of the entry of this Final Approval Order and Judgment.  Accordingly, the Court orders that, as of that date:

a)    Plaintiffs and each Class Member (on behalf of themselves, their current and former beneficiaries, heirs, descendants, dependents, administrators, executors, representatives, predecessors, successors, and assigns), and the Plan (by and through the Independent Fiduciary), shall be deemed to have, and by operation of law and of this Final Approval Order and Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice all Released Claims, including any and all claims for monetary, injunctive, and all other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the *Cryer* and *Fernandez* operative Complaints, whether or not included as counts in the Complaints; (b) the selection, retention and monitoring of the Plan's investment options and service providers; (c) the performance, fees and other characteristics of the Plan's investment options; (d) the Plan's fees and expenses, including without limitation, its recordkeeping fees; (e) the nomination, appointment, retention, monitoring and removal of the Plan's fiduciaries; and (f) the approval by the Independent Fiduciary of the Settlement, and shall forever be enjoined from prosecuting any or all of the Released Claims, including any or all Unknown Claims, against the Defendant Released Parties, as more fully set forth in the Settlement Agreement; and

b)    The Company (on behalf of itself and any successors-in-interest) shall be deemed to have, and by operation of law and of this Judgment shall have fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

Plaintiff, the Plan, the Class, and Class Counsel from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether under local, state or federal law, whether by statute, contract, common law or equity, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, relating to the pursuit of the Action, as more fully set forth in the Settlement Agreement.

9.    **Rule 11 Findings:**  The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the commencement, maintenance, prosecution, defense and settlement of the claims asserted in the Action.

10.    **No Admissions:**  This Final Approval Order and Judgment, the Preliminary Approval Order, the Agreement (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be agreed-upon by the Parties or approved by the Court), the negotiations that led to the agreement-in-principle reached by the Parties on December 3, 2018, the negotiation of the Agreement and its exhibits, and any papers submitted in support of approval of the Settlement, and any proceedings taken pursuant to or in connection with the Agreement or approval of the Settlement, including any arguments proffered in connection therewith: (a) shall not give rise to any inference of, and shall not be construed or used as an admission, concession, or declaration against any of the Defendant Released Parties of wrongdoing or liability in the Action or any other proceeding; (b) are not an admission of any liability of any kind, whether legal or factual; (c) shall not be used or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce the Agreement, whether affirmatively or defensively; (d) shall not be construed or used as

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

an admission, concession, or declaration by or against Plaintiffs, the Plan, or the Class that their claims lack merit or that the relief requested in the Action is inappropriate, improper or unavailable; and (e) shall not be construed or used as an admission, concession, declaration or waiver by any Party of any arguments, defenses, or claims he, she, or it may have in the event that the Agreement is terminated.  This Order and the Agreement and any proceedings taken pursuant to the Agreement are for settlement purposes only.

11.  **Retention of Jurisdiction:**  Without affecting the finality of this Final Approval Order and Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) Class Counsel's Fee and Expense Application and Plaintiffs' request for Case Contribution Awards; and (d) the Class Members for all matters relating to the Action.

12.  **Fees and Awards:**  A separate order shall be entered on Class Counsel's Fee and Expense Application and Plaintiffs' request for Case Contribution Awards.  Such order shall in no way affect or delay the finality of this Final Approval Order and Judgment and shall not affect or delay the Effective Date of the Settlement.

13.  **Modification of Settlement Agreement:**  Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Agreement or any exhibits attached thereto to effectuate this Settlement that: (a) are not materially inconsistent with this Final Approval Order and Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement.

14.  **Termination:**  If the Settlement does not go into effect or is terminated as provided for in the Agreement, then this Final Approval Order and Judgment (and any orders of

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further

force or effect, except as otherwise provided by the Agreement.

    15.    **Entry of Final Judgment:**  There is no just reason to delay entry of this Final

Approval Order and Judgment as a final judgment with respect to the claims asserted in the

Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this Final

Approval Order and Judgment pursuant to Fed. R. Civ. P. 54(b) as against Defendants.


**SO ORDERED** this _____ day of _____, 2019.


_____
The Honorable Claudia A. Wilken
United States District Judge

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
ORDER AND FINAL JUDGMENT
4:16-cv-04265-CW

EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>                    Plaintiffs,<br><br>    v.<br><br>FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1-25,<br><br>                    Defendants. | **Lead Case No. 4:16-cv-04265-CW**<br>[Consolidated with Case No. 4:17-cv-06409-CW]<br><br><br><br>Judge:      Hon. Claudia Wilken |

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*A federal court has authorized this Notice.  This is not a solicitation from a lawyer.*

## PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS

You are receiving this notice (the "Notice") because the records of the Franklin Templeton 401(k) Retirement Plan (the "Plan") indicate that you have been a participant in the Plan and maintained an account with a positive balance at some point since July 28, 2010.  As such, your rights may be affected by a proposed settlement of this class action litigation (the "Settlement").

This Notice summarizes the proposed Settlement.  The complete terms and conditions of the Settlement are described in the Settlement Agreement, which is available at www._____.com, or by contacting class counsel, Mark G. Boyko at mboyko@baileyglasser.com or Oren Faircloth at ofaircloth@ikrlaw.com, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

1

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE
TO INQUIRE ABOUT THIS SETTLEMENT.**

## What this Litigation is About

This consolidated class action litigation is brought on behalf of participants in the Plan. Marlon H. Cryer and Nelly F. Fernandez (collectively referred to as "Plaintiffs" or "Class Representatives") are the named plaintiffs and the representatives on behalf of all members of the Class in the litigation. One of the consolidated lawsuits was filed in July 2016, and the other in November 2017.

Plaintiffs sued Franklin Resources, Inc. ("Franklin"), the Franklin Templeton 401(k) Retirement Plan Investment Committee (the "Investment Committee"), the individual members of the Investment Committee, and others alleged to have served in fiduciary roles to the Plan (together, "Defendants") alleging primarily that Defendants violated their fiduciary duties by choosing for the Plan allegedly imprudent and expensive investment funds that were managed by Franklin's investment adviser subsidiaries, and by allegedly failing to negotiate lower record keeping fees with the Plan's third-party recordkeepers. Plaintiffs allege that there were superior, less expensive investment options available that Defendants should have chosen for the Plan. Plaintiffs also allege that between 2010 and 2013, Franklin engaged in transactions prohibited by the Employee Retirement Income Security Act of 1974 ("ERISA"). After the lawsuits were filed, Plaintiffs agreed voluntarily to dismiss from the litigation a claim for alleged breach of fiduciary duty relating to monitoring of the Plan fiduciaries as well as certain individual defendants, and the Court granted summary judgment to Defendants on Plaintiffs' alleged excessive recordkeeping fee claim.

Defendants deny all allegations of wrongdoing, fault, liability or damage to the Plaintiffs and the Class and deny that they have engaged in any wrongdoing or violation of law or breach of duty. Defendants maintain that they acted in the best interests of Plan participants at all times and complied with their fiduciary obligations to the Plan and its participants. Among other things, Defendants contend that the Plan fiduciaries employed a robust and thorough process for selecting, monitoring, and removing Plan investment options and for monitoring Plan-related fees.

## The Terms of the Settlement

To avoid the time and expense of further litigation, Plaintiffs and Defendants have agreed to resolve the consolidated litigation. The Settlement is the product of extensive negotiations between the parties, who were assisted in their negotiations by a neutral private mediator. The parties have taken into account the uncertainty and risks of litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. If the Settlement is approved by the Court, the Class will obtain the benefits of the Settlement without the further delay and uncertainty of additional litigation. The Settlement resolves all issues regarding the Plan's investment options and fees from July 28, 2010 through such time as the Court grants final approval of the Settlement.

2

The terms of the Settlement are set forth in the Settlement Agreement and Release dated February 15, 2019 (the "Settlement Agreement"), which is available at www._____.com.  Those terms are summarized below.  Nothing in the Settlement Agreement is an admission or concession on Defendants' part of any fault or liability whatsoever, nor is it an admission or concession on Plaintiffs' part that their claims lacked merit.

       1.    <u>The Class Covered by the Settlement</u>.  The Court certified a Class on July 26, 2017, and the Settlement applies to, and is binding on, that Class. The Class is defined as:

> All participants in the Franklin Templeton 401(k) Retirement Plan from July 28, 2010 to the date of judgment.  Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

Plan records indicate that you may be a member of the Class because you are a current or former participant in the Plan who has maintained a positive account balance at some point since July 28, 2010.

       2.    <u>Relief Provided to the Class by the Settlement</u>.  Under the proposed Settlement, (1) Franklin will contribute thirteen million, eight hundred fifty thousand dollars ($13,850,000) to a Settlement Fund (the "Settlement Amount"); (2) Franklin will provide an additional benefit to the Plan by increasing its existing match contributions to the Plan from its current rate of seventy-five percent (75%) of each participant's eligible salary deferrals to eighty-five percent (85%) of such deferrals for a period of three years (the "Increased Match");[1] and (3) the Investment Committee responsible for selecting investment options for the Plan will add a non-proprietary target date fund (TDF) to the Plan as an additional investment option.

The Settlement Amount—after the deduction of amounts to be approved by the Court for Class Counsel's Attorneys' Fees and Expenses and Case Contribution Awards to the named Plaintiffs, as well as Administration Costs, Independent Fiduciary Fees and Costs, and Taxes and Tax-Related Costs[2]—and Anticipated Future Benefit will be distributed to eligible Class Members pursuant to a Plan of Allocation to be approved by the Court.  Individual benefits under the Settlement for each Class Member will be determined in accordance with that Plan of Allocation.  The proposed Plan of Allocation, which is generally based on the average year-end account balances of each participant from a period between 2010 and 2018 and the Class Member's current or former participant status in the Plan, as shown in the Plan's records, is available at [URL].

On a summary level, Settlement benefits will be distributed as follows: current Plan participants with positive account balances who are no longer eligible to contribute to their account (generally, former employees) will receive their allocation from the Settlement Fund by

---

[1]    The value of a 10% match increase is subject to fluctuation depending on future Plan participant counts and deferrals over the three-year period.  Using participant data from 2017, a 10% match increase would have provided an incremental benefit of approximately $4.3 million to Plan participants in that year.  For purposes of estimating the value of the Increased Match, $4.3 million will be used as the annual estimate (the "Anticipated Future Benefit").

[2]    All capitalized terms not defined in this Notice are defined in the Settlement Agreement, which can be viewed at [URL].

electronic payment to their Plan accounts; and former participants (those who have closed out, or rolled over, their Plan accounts) will receive their allocation from the Settlement Fund by check. In either case, no payment to such Class Members shall be less than $10.00.  Current Plan participants with positive account balances who are still eligible to contribute to the Plan (generally, current employees) will receive their allocation first through the Increased Match, as described in the Plan of Allocation, and may also receive an allocation from the Settlement Fund after the conclusion of the Increased Match Period if the Increased Match received over that period was less than they would have been entitled to had they been entitled to participate in the initial settlement distribution.  All inquiries related to distributions should be addressed solely to the Settlement Administrator at the addresses listed below.

[ADDRESS]

3.    <u>Summary of the Claims Released by the Class</u>.  In exchange for the Settlement Amount and other terms of the Settlement, all members of the Class will release any and all claims for monetary, injunctive, and all other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the operative Complaints, whether or not included as counts in the Complaints; (b) the selection, retention and monitoring of the Plan's investment options and service providers; (c) the performance, fees and other characteristics of the Plan's investment options; (d) the Plan's fees and expenses, including without limitation, its recordkeeping fees; (e) the nomination, appointment, retention, monitoring and removal of the Plan's fiduciaries; and (f) the approval by the Independent Fiduciary of the Settlement; except that the Released Claims shall not include claims to enforce the covenants or obligations set forth in the Agreement and shall not in any way bar, limit, waive, or release, any individual claim by any Class Member to vested benefits that are otherwise due under the terms of the Plan.

Class Members will not have the right to sue the Defendants or other Defendant Released Parties, whether individually or on behalf of the Plan, for conduct pertaining to the Plan during the Class Period or conduct that the Settlement requires Defendants to undertake during its Compliance Period.  The entire release is set forth in the Settlement Agreement, which can be viewed online at www._____.com, or requested from Class Counsel.

## **The Settlement Approval Process**

The Court has granted preliminary approval of the proposed Settlement and approved this Notice. The Settlement will not take effect, and there will be no benefits distributed under the Settlement, however, if the Court does not enter a Final Approval Order and Judgment or the Settlement otherwise does not become effective. The Court will hold a Final Approval Hearing on _____ in Courtroom 6 at the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California.  Class Counsel will attend the hearing to answer any questions the Court may have.  You are not required to attend the Final Approval Hearing.

The date and location of the Final Approval Hearing is subject to change by order of the Court without further notice to the Class.  If you would like to attend the Final Approval

Hearing, you should check the Settlement Website, [URL], or the Court's online docket to confirm that the date has not been changed.  Prior to the Final Approval Hearing, an Independent Fiduciary will be asked to approve the Settlement and Released Claims on behalf of the Plan, as may be required by ERISA Prohibited Transaction Exemption 2003-39 or any other applicable class or statutory exemptions.  Defendants have the unilateral right not to proceed with the Settlement in the absence of such Independent Fiduciary approval.

## The Opportunity to Object to the Settlement

As a Class Member, you can ask the Court to deny approval of the Settlement by filing an objection.  You cannot, however, ask the Court to order settlement on different terms; the Court can only approve or reject the Settlement on the terms reached by the Parties.  If the Court denies approval, the Settlement Amount will not be distributed, the Increased Match will not be implemented, and the litigation will resume.

Any objection to the proposed Settlement must be made in writing.  If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (*Cryer v. Franklin Resources, Inc.,* Lead Case No. 4:16-cv-04265-CW), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [DATE].

Those Class Members or their attorneys intending to appear at the Final Approval Hearing must give notice of their intention to appear setting forth, among other things, the name, address, and telephone number of the Class Member (and, if applicable, the name, address, and telephone number of that Class Member's attorney) on Class Counsel and Defendants' Counsel and file it with the Court Clerk on or before [DATE].

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms.  You cannot exclude yourself from the Settlement. The Court certified the Class under Federal Rule of Civil Procedure 23(b)(1), which does not permit Class Members to opt out of the Class.

## Attorneys' Fees and Case Contribution Awards for Named Plaintiffs

The Class is represented by Class Counsel.  The attorneys for the Class are as follows:

Gregory Y. Porter
Mark G. Boyko
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007

mboyko@baileyglasser.com
314-863-5446

Robert A. Izard
Mark P. Kindall
Douglas P. Needham
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT  06107

Class Counsel and the Class Representatives have devoted many hours to investigating the claims, bringing this litigation, and pursuing it for over two years.  During that time, Class Counsel incurred litigation expenses in addition to the time spent by attorneys, paralegals, and others. Class Counsel also took the risk of litigation and have not been paid for their time and expenses while this litigation has been pending before the Court.

Class Counsel will file a motion with the Court seeking approval of payment from the Settlement Fund of reasonable attorneys' fees and reimbursement of the expenses they incurred in prosecuting the litigation.  They will request (1) attorneys' fees of $7,490,000, which represents approximately 28% of the aggregate value of the Settlement Amount and the estimated value of the three-year Increased Match, and (2) reimbursement of expenses of $xxx. Plaintiffs will also request that the Court order Case Contribution Awards of $25,000 for Plaintiff Cryer and $15,000 for Plaintiff Fernandez from the Settlement Fund.  Defendants have reserved the right to object to such requested amounts.

Plaintiffs' preliminary approval motion and supporting papers were filed on February 15, 2019, and their papers in support of their fee and expense motion, as well as their papers in support of final approval of the Settlement, will be filed on or before [DATE].  You may review these filings at www._____.com.  Any award of Attorneys' Fees and Expenses and Case Contribution Awards approved by the Court, in addition to the Administration Costs, Independent Fiduciary Fees and Costs, and Taxes and Tax-Related Costs will be paid from the Settlement Fund.

### Getting More Information

> **You do not need to do anything to be a part of this Class or, if the Settlement is approved, to be eligible to receive your share of the Settlement Fund and/or Increased Match, as applicable. If you still have a Plan account with a positive balance when Settlement Fund distributions are made, your Settlement benefits will be distributed to your Plan account. If you no longer have a Plan account, a check will be mailed to you.**

You can visit the Settlement Website at www._____.com, where you will find the full Settlement Agreement, the Court's order granting preliminary approval, this Notice, and other relevant documents. If there are any changes to the deadlines identified in this Notice, the date of the Final Approval Hearing, or the Settlement Agreement, those changes will be posted to the Settlement Website.  You will not receive an additional mailed notice with those changes, unless separately ordered by the Court.  If you cannot find the information you need on the

website, you may also contact **1-800-xxx-xxxx** for more information.  Please do not contact the Court or counsel for Defendants to get additional information.

Dated: _____, 2019                                  By Order of the United States District Court
                                                                              District Judge Claudia Wilken

EXHIBIT C

**Exhibit C – Plan of Allocation**

I.      For purposes of this Plan of Allocation:

       a.      Class Members shall be considered "Former Participants" if they maintained a balance in the Plan on or after July 28, 2010, but do not have any account with a positive balance in the Plan as of the date of the Preliminary Approval Order;

       b.      Class Members shall be considered "Inactive Participants" if, as of the date of the Preliminary Approval Order, they have a Plan account with a positive balance but are no longer eligible to make contributions to the Plan account;

       c.      Class Members shall be considered "Active Participants" if, as of the date of the Preliminary Approval Order, they have a Plan account with a positive balance and are eligible to make additional contributions to the account;

       d.      The "Distributable Settlement Amount" shall mean the money remaining in the Settlement Fund after the Settlement Administrator (1) withdraws and pays Class Counsel's Attorneys' Fees and Expenses approved by the Court, Administration Costs (including an estimated provision for the costs of the distribution to Class Members and other post-distribution related Administration Costs, as proposed by the Settlement Administrator and approved by Class Counsel and Defendants' Counsel as reasonable), Independent Fiduciary Fees and Costs, Case Contribution Awards approved by the Court, and Taxes and Tax-Related Costs, and (2) holds back at least $150,000 for the Second Distribution;

       e.      The "Anticipated Future Benefit" shall mean the estimated potential value of the Increased Match over the Increased Match Period.  Participant data from 2017 indicates that a 10% Company match increase would have amounted to an approximately $4.3 million benefit to Plan participants in that year.  The actual value of the Increased Match here over the agreed three-year period is subject to fluctuation depending on future participant counts and deferrals; however, for purposes of calculating the Anticipated Future Benefit, $4.3 million will be used as the annual estimate, for a total estimate of $12.9 million over the Increased Match Period;

       f.      The "Allocation Amount" shall be the Distributable Settlement Amount plus the Anticipated Future Benefit;

       g.      The "Initial Distribution" shall be the distribution made to Former Participants and Inactive Participants from the Settlement Fund following the Effective Date of the Settlement Agreement;

h.    The "Second Distribution" shall be the distribution made to Active Participants from the Settlement Fund following the conclusion of the Increased Match Period;

i.    The "Participant Data" shall have the meaning ascribed to it in Paragraph II(a) below;

j.    A Class Member's "Pro Rata Percentage" shall mean that Class Member's Plan investments as a percentage of the Plan investments as a whole, calculated by dividing the aggregate of his or her individual year-end account balances from the beginning of the Class Period through December 31, 2018, by the Plan's total aggregate year-end balances through December 31, 2018;

k.    The "Raw Allocation" shall mean, for each Class Member, the Allocation Amount multiplied by that Class Member's Pro Rata Percentage;

l.    The "Reconciliation Payment" shall have the meaning ascribed to it in Paragraph III(b) below; and

m.    All capitalized terms not defined herein shall have the meanings ascribed to them in Part I of the Settlement Agreement.

II.    The Initial Distribution shall be made as follows:

a.    The Settlement Administrator shall obtain from the Plan's current and former Recordkeepers the year-end account balances for each Class Member from the beginning of the Class Period through December 31, 2018 (the "Participant Data").

b.    Based on the Plan's data, the Settlement Administrator shall calculate, for each Class Member, his or her Pro Rata Percentage and Raw Allocation.

c.    Any Former Participant or Inactive Participant whose Raw Allocation is less than $10.00 shall be deemed entitled to receive a payment of $10.00, with the Raw Allocation for all Remaining Class Members adjusted proportionally (the "Adjusted Allocation").

d.    If the aggregate of the Adjusted Allocation amounts owed the Former Participants and Inactive Participants exceeds the Distributable Settlement Amount, their Adjusted Allocations shall be reduced pro rata, except that in no event shall their Adjusted Allocations be reduced to less than $10.00.

e.    The Settlement Administrator shall mail checks to Former Participants for their Adjusted Allocations (less any required withholdings) without the need to complete any claim form.

f.    Relying on the calculations performed by the Settlement Administrator, the Plan Recordkeeper shall deposit the Adjusted Allocations due to Inactive Participants directly into their Plan accounts, also without the need to complete any claim form.

g.    Active Participants shall not receive any portion of the Initial Distribution.

III.    Any assets in the Settlement Fund following the Initial Distribution, including any interest earned on the amounts in the Settlement Fund, shall be distributed in the Second Distribution, and any amounts remaining after the Second Distribution shall be distributed, as follows:

a.      Once the Increased Match Period has concluded, the Settlement Administrator shall obtain from the Plan Recordkeeper a data file detailing the amount of the Increased Match actually provided to each Active Participant during the Increased Match Period.

b.      Active Participants who have not received at least their Adjusted Allocation through the Increased Match during the Increased Match Period will be entitled to receive a one-time payment from the Settlement Fund (their "Reconciliation Payment") following the conclusion of the Increased Match Period equal to the difference between the Active Participant's Adjusted Allocation and the amount he or she received through the Increased Match over the Increased Match Period.

c.      If there are insufficient funds in the Settlement Fund to pay all Reconciliation Payments, recoveries will be proportionally reduced across all Active Participants deemed eligible to recover under the Second Distribution.

d.      Relying on the calculations performed by the Settlement Administrator, the Plan Recordkeeper will deposit the Reconciliation Payments due to Active Participants (less any proportionate reduction) directly into their Plan accounts, if they have a Plan account with a positive balance on the date Reconciliation Payments are made. If an Active Participant no longer maintains a Plan account with a positive balance on the date the Reconciliation Payments are paid, the Settlement Administrator will mail that Class Member a check for his or her Reconciliation Payment (less any required withholdings or proportionate reduction).  However, no checks will be mailed for Reconciliation Payments that are less than $10.00.  Any Class Member owed a Reconciliation Payment of less than $10.00 that does not have a Plan account with a positive balance on the date that Reconciliation Payments are made will not receive a Reconciliation Payment.

e.      If the funds in the Settlement Fund are sufficient to cover the Reconciliation Amounts in full and more than $50,000 remains, a final distribution will be made to those Class Members who have a Plan account with a positive balance at that time, via direct deposit into their Plan accounts on an equal share basis.

f.      If $50,000 or less remains in the Settlement Fund after the payment of the Reconciliation Amounts, or if any funds remain following the distribution

described in Paragraph III(e) above, the remaining amount will be deposited in the Plan's forfeiture account, to be used to pay Plan administrative expenses.

IV. Changes to the Plan of Allocation:

    a. In the event that the Settlement Administrator determines that this Plan of Allocation would require payments exceeding the amounts in the Settlement Fund at any point in time, the Settlement Administrator is authorized, subject to the approval of the Parties, to make such changes to the Plan of Allocation as are necessary to ensure that the payments under this Plan of Allocation do not exceed the amounts in the Settlement Fund.

    b. If the Settlement Administrator concludes that it is impracticable to implement any provision of the Plan of Allocation, it shall be authorized, subject to the approval of the Parties, to make such changes to the Plan of Allocation as are necessary to implement as closely as possible the terms of the Settlement Agreement, so long as the payments under this Plan of Allocation do not exceed the amounts in the Settlement Fund.

# EXHIBIT D

1   Mark P. Kindall, Cal. Bar No. 138703
    mkindall@ikrlaw.com
2   Robert A. Izard, *pro hac vice*
    rizard@ikrlaw.com
3   IZARD KINDALL & RAABE LLP
    29 South Main Street, Suite 305
4   West Hartford, CT 06107
    Telephone: (860) 493-6292
5

6   Gregory Y. Porter, *pro hac vice*
    gporter@baileyglasser.com
7   Mark G. Boyko, *pro hac vice*
    mboyko@baileyglasser.com
8   BAILEY & GLASSER LLP
    1055 Thomas Jefferson Street, NW Suite 540
9   Washington, DC 20007
    Telephone: (202) 463-2101
10

11  Joseph A. Creitz, Cal. Bar. No. 169552
    joe@creitzserebin.com
12  CREITZ & SEREBIN LLP
    100 Pine Street, Suite 1250
13  San Francisco, CA 94111
    Telephone: (415) 466-3090
14

15  *Attorneys for the Plaintiffs*
16
              **UNITED STATES DISTRICT COURT**
17            **NORTHERN DISTRICT OF CALIFORNIA**
                    **OAKLAND DIVISION**
18

19  MARLON H. CRYER, individually and on        | **Lead Case No. 4:16-cv-04265-CW**
    behalf of a class of all others similarly situated, | [Consolidated with Case No. 4:17-cv-
20  and on behalf of the Franklin Templeton 401(k) | 06409-CW]
    Retirement Plan,
21                                               | **CLASS ACTION SETTLEMENT**
                                                 | **AGREEMENT AND RELEASE**
22              Plaintiffs,
                                                 | **[PROPOSED] PRELIMINARY**
23                                               | **APPROVAL ORDER**
        v.
24                                               | Judge:      Hon. Claudia Wilken
    FRANKLIN RESOURCES, INC., the Franklin
25  Templeton 401(k) Retirement Plan Investment
    Committee, and DOES 1-25,
26
27              Defendants.
28

                                    CLASS ACTION SETTLEMENT
                                    AGREEMENT AND RELEASE [PROPOSED]
                                    PRELIMINARY APPROVAL ORDER
                                    4:16-cv-04265-CW

**PRELIMINARY APPROVAL ORDER**

**(1)    GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT;**

**(2)    APPOINTING A SETTLEMENT ADMINISTRATOR;**

**(3)    ENJOINING CLASS MEMBERS FROM PURSUING ANY CLAIMS THAT ARISE OUT OF OR RELATE IN ANY WAY TO THE RELEASED CLAIMS PENDING FINAL APPROVAL OF THE SETTLEMENT;**

**(4)    DIRECTING NOTICE TO CLASS MEMBERS AND APPROVING THE FORM AND MANNER OF NOTICE;**

**(5)    APPROVING THE PLAN OF ALLOCATION;**

**(6)    SCHEDULING A FINAL APPROVAL HEARING; AND**

**(7)    SCHEDULING A HEARING ON CLASS COUNSEL'S FEE AND EXPENSE APPLICATION AND PLAINTIFFS' REQUEST FOR CASE CONTRIBUTION AWARDS**

The Court, having received and considered the Unopposed Motion for a Preliminary Approval Order (the "Motion") by Plaintiffs Marlon Cryer and Nelly Fernandez ("Plaintiffs") in the above-captioned action (the "Action") and the supporting papers, including the Settlement Agreement and Release dated February 15, 2019 (the "Agreement") and the declarations of counsel, having further considered the arguments of counsel and the pleadings and record in this case, and finding good cause for granting the Motion,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.     Capitalized terms not defined in this Order shall have the meaning ascribed to them in Part I of the Agreement.

2.     This Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

3.     Venue before the Court is proper pursuant to 29 U.S.C. § 1132(e)(2).

4.     The terms set forth in the Agreement are hereby preliminarily approved, subject to further consideration at the hearing the Court will hold pursuant to Federal Rule of Civil

Procedure 23(e) to determine whether the Settlement should receive final approval by the Court, as provided for below (the "Final Approval Hearing").  Having considered the terms of the Settlement and the submissions in support of preliminary approval, the Court determines, in accordance with Fed. R. Civ. P. 23(e)(1)(B), that it is likely that the Court will be able to grant final approval of the Settlement under Fed. R. Civ. P. 23(e)(2) following notice and a hearing. The Settlement Agreement is sufficiently within the range of reasonableness to warrant the preliminary approval of the Agreement, the scheduling of the Final Approval Hearing, and the mailing of Notice to Class Members, each as provided for in this Order.

5.      The Court approves the retention by Class Counsel of Angeion Group as the Settlement Administrator.

6.      In further aid of the Court's jurisdiction to review, consider, implement, and enforce the Settlement, the Court orders that Plaintiffs, all Class Members, and the Plan are preliminarily enjoined and barred from commencing, prosecuting, or otherwise litigating, in whole or in part, either directly, individually, representatively, derivatively, or in any other capacity, whether by complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, arbitration forum, or in any agency or other authority or forum wherever located, any contention, allegation, claim, cause of action, matter, lawsuit, or action (including but not limited to actions pending as of the date of this Order), including, without limitation, any Unknown Claim, that arises out of or relates in any way to the Released Claims.

7.      The Court approves the Notice to Class Members in substantially the form attached as Exhibit B to the Agreement.

8.      The Court finds that the Plan of Allocation proposed by Plaintiffs and Class Counsel for allocating the Settlement Amount to Class Members is fair and reasonable.

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW

**<u>Manner of Giving Notice</u>**

9.     The Company shall use reasonable efforts to cause the Plan Recordkeepers to provide to the Settlement Administrator, within thirty (30) calendar days of the entry of this Preliminary Approval Order, the participant data (including names and last known addresses and email addresses, if available) sufficient to effectuate the Notice, implement the Plan of Allocation, and distribute the Settlement Fund on the terms provided for in the Agreement.  The names and addresses provided to the Settlement Administrator pursuant to this Order shall be used solely for the purpose of providing Notice of this Settlement and distribution of the Settlement Fund, and for no other purpose and shall be treated as "Confidential" under the Protective Order governing this Action.

10.     Within thirty (30) calendar days of the entry of this Order and no later than the first date that the e-mailing or the mailing of the Notice occurs, the Settlement Administrator shall establish a website containing, at a minimum, the Notice, the Agreement, its exhibits, and this Order.

11.     Within thirty (30) calendar days of the entry of this Order and no later than the first date that the e-mailing or the mailing of the Notice occurs, the Settlement Administrator shall establish a toll-free telephone number to which Class Members can direct questions about the Settlement.

12.     Within forty-five (45) calendar days after entry of this Order, or as may be modified by the Court, the Settlement Administrator shall cause copies of the Notice to be sent by first-class mail or electronic mail (if available) to all Class Members through the notice procedure described in the Agreement.

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW

13.     Not later than seven (7) business days after sending the Notice to Class Members, the Settlement Administrator shall provide to Class Counsel and to Defendants' Counsel a declaration attesting to compliance with the sending of the Notice, as set forth above.

14.     The Court finds that the Notice to be provided as set forth in this Order is the best means of providing notice to the Class Members as is practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Final Approval Hearing to all persons affected by or entitled to participate in the Settlement or the Final Approval Hearing, in full compliance with the requirements of due process and the Federal Rules of Civil Procedure.

15.     All reasonable costs incurred by the Settlement Administrator for providing the Notice as well as for administering the Settlement shall be paid as set forth in the Agreement.

## **Final Approval Hearing**

16.     The Court will hold the Final Approval Hearing on _____ in Courtroom _____ of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, for the following purposes:  (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Agreement is fair, reasonable, adequate, and in the best interests of the Class and should be finally approved by the Court; (b) to determine whether Class Counsel's Fee and Expense Application is reasonable and should be approved; (c) to determine whether Plaintiffs' request for Case Contribution Awards is reasonable and should be approved; (d) to determine whether a Final Approval Order and Judgment substantially in the form attached as Exhibit A to the Agreement should be entered dismissing with prejudice all claims asserted in the Action against Defendants; and (e) to consider any other matters that may properly be brought

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW

before the Court in connection with the Settlement.  Notice of the Settlement and the Final

Approval Hearing shall be given to Class Members as set forth in Paragraph 7 of this Order.

17.     The Court may adjourn the Final Approval Hearing and approve the Settlement

with such modification as the Parties may agree to, if appropriate, without further notice to the

Class.

18.     Not later than thirty (30) calendar days before the Final Approval Hearing, Class

Counsel shall submit their papers in support of final approval of the Agreement, and in support of

Class Counsel's Fee and Expense Application and Plaintiffs' request for Case Contribution

Awards.

19.     Not later than thirty (30) calendar days before the Final Approval Hearing, the

Independent Fiduciary shall submit its report pursuant to Section 2.7 of the Agreement.

20.     Not later than thirty (30) calendar days before the Final Approval Hearing, the

Settlement Administrator shall submit its declaration pursuant to Section 2.8 of the Agreement.

### Objections to the Settlement

21.     The Court will consider written comments and objections to the Settlement, to the

proposed Fee and Expense Application, and to Plaintiffs' request for Case Contribution Awards.

Any objection to the proposed Settlement must be in writing, and must (a) clearly identify the

case name and number (*Cryer v. Franklin Resources, Inc.*, Lead Case No. 4:16-cv-04265-CW),

and (b) be submitted to the Court either by mailing it to the Class Action Clerk, United States

District Court for the Northern District of California, Ronald V. Dellums Federal Buildings &

United States Courthouse, 1301 Clay Street, Oakland, CA 94612, or by filing it in person at any

location of the United States District Court for the Northern District of California.  Any Class

Members' objections must be filed or postmarked on or before fifteen (15) calendar days before

the Final Approval Hearing.  Any objections submitted by federal or state authorities must be filed no later than thirty (30) calendar days before the Final Approval Hearing.

22.     Any Class Member who does not timely file and serve a written objection shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement Agreement, and any untimely objection shall be barred absent an order from the Court.  The Plaintiffs or the Defendants may, bearing their own fees and costs, take discovery, including depositions, from anyone who files an objection with respect to any of the issues raised in the objection.

23.     Any Class Member who files and serves a timely, written comment or objection in accordance with this Order may also appear at the Final Approval Hearing either in person or through qualified counsel retained at their own expense.  Those Class Members or their attorneys intending to appear at the Final Approval Hearing must effect service of a notice of intention to appear setting forth, among other things, the name, address, and telephone number of the Class Member (and, if applicable, the name, address, and telephone number of that Class Member's attorney) on Class Counsel and Defendants' Counsel and file it with the Court Clerk by no later than fifteen (15) calendar days before the Final Approval Hearing.  Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Final Approval Hearing, except by Order of the Court for good cause shown.  Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Class Member or that Class Member's counsel.

24.     The Parties may file written responses to any objections not later than five (5) business days before the Final Approval Hearing.

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW

**Termination of Settlement**

25.     This Order shall become null and void, *ab initio*, and shall be without prejudice to the rights of the Parties, all of whom shall be deemed to have reverted to their respective status in the Action as of February 15, 2019, if the Settlement is terminated in accordance with the terms of the Settlement Agreement.

**Use of Order**

26.     This Order is not admissible as evidence for any purpose against the Defendant Released Parties in any pending or future litigation.  This Order (a) shall not give rise to any inference of, and shall not be construed or used as an admission, concession, or declaration against any of the Defendant Released Parties of wrongdoing or liability in the Action or any other proceeding; (b) is not an admission of any liability of any kind, whether legal or factual; (c) shall not be used or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce the Agreement, whether affirmatively or defensively; (d) shall not be construed or used as an admission, concession, or declaration by or against Plaintiffs, the Plan, or the Class that their claims lack merit or that the relief requested in the Action is inappropriate, improper or unavailable; and (e) shall not be construed or used as an admission, concession, declaration or waiver by any Party of any arguments, defenses, or claims he, she, or it may have in the event that the Agreement is terminated.  This Order and the Agreement and any proceedings taken pursuant to the Agreement are for settlement purposes only.

**Jurisdiction**

27.     The Court hereby retains jurisdiction for purposes of implementing the Agreement, and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW

1

2

3   **SO ORDERED** this _____ day of _____, 2019.

4

5                                                    _____

6                                                    The Honorable Claudia A. Wilken
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE [PROPOSED]
PRELIMINARY APPROVAL ORDER
4:16-cv-04265-CW