Mark P. Kindall, Cal. Bar No. 138703
mkindall@ikrlaw.com
Robert A. Izard, *pro hac vice*
rizard@ikrlaw.com
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292

Gregory Y. Porter, *pro hac vice*
gporter@baileyglasser.com
Mark G. Boyko, *pro hac vice*
mboyko@baileyglasser.com
Bailey & Glasser LLP
1054 31st Street, NW Suite230
Washington, DC 20007
Telephone: (202) 463-2101

Joseph A. Creitz, Cal. Bar. No. 169552
joe@creitzserebin.com
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090

*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARLON H. CRYER, individually and as representative of a class of similarly situated persons, | ) ) ) ) | Case No. 4:16-cv-4265-CW **(lead case consolidated with)** Case No. 3:17-cv-6409-CW |
| Plaintiffs, | ) ) ) ) | **PLAINTIFFS' MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| v. | ) ) | |
| FRANKLIN RESOURCES, INC., et al., | ) ) ) ) | Hearing Date: Time: Judge:   Hon. Claudia Wilkens |
| Defendants. | ) | Courtroom:  2, 4th Floor |

**Plaintiffs' Memorandum in Further Support of Preliminary Approval**

## I. The Plan of Allocation Equitably Distributes Relief Between Class Members.

The plan of allocation is the best practical means of providing relief to the Class. It is equitable to all class members, given that Active Participants, Inactive Participants, and Former Participants are *all* entitled to an Adjusted Allocation under the Plan (which is calculated by determining each Class Member's Pro Rata Percentage of the Distributable Settlement Amount, and then adjusting the totals to ensure that no Class Member receives less than $10). Active Participants will receive their Adjusted Allocation first through the Increased Match, but the parties have agreed to hold back a portion of the Distributable Settlement Amount to ensure that Active Participants actually receive the Adjusted Allocation to which they are entitled, even if they (i) leave Franklin before they receive that amount through the Increased Match; or (ii) remain at Franklin but choose not to defer enough compensation into their Plan account to receive their Adjusted Allocation through the Increased Match. While the mechanism for compensating active employee class members through an enhanced match *also* provides an *opportunity* for certain active Franklin employees to receive Increased Match contributions beyond their Adjusted Allocation, those benefits only come through *additional* contributions by those employees and *additional* matching contributions by Franklin, not by a reduction in benefits to other class members. These additional matching contributions are contingent on active employees meeting three conditions that do not apply to former or inactive employees: (1) continuing to work for Franklin; (2) continuing to defer compensation into the Plan; and (3) deferring compensation at a rate that is higher than the contributions required to receive their settlement benefit. Unless these conditions are met, those current

Plaintiffs' Memorandum in Further Support of Motion for Preliminary Approval of Settlement
4:16-cv-4265-CW consolidated with 3:17-cv-6409-CW

2

employees will not receive more than the amount assumed by the settlement and Franklin will not pay more than the assumed amount of the matching contributions. Thus, the possibility of a higher benefit is, in a real way, not a feature of the settlement at all, but merely a beneficial consequence of a combination of the settlement itself and current employees' choosing to continue to work for Franklin and defer into the Plan.

There are myriad settled cases that feature both a monetary payout to the entire class and prospective relief benefitting only those class members (and non-class members) who have and continue to have a relationship with the Defendant. *See, e.g., Kanawi v. Bechtel Corp.*, No. 06-5566; 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) (noting ERISA settlement included "potentially significant non-monetary relief", which would only benefit current and future plan participants); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) (approving over objections a settlement providing for cash payments and "extensive" prospective relief). The Increased Match is just such a benefit. This settlement also includes another prospective benefit, *i.e.*, the requirement that Franklin add non-proprietary target date funds, which will benefit the current and future Plan participants above and beyond the money paid by Franklin.

In light of the above, the Plan of Allocation for distributing the settlement proceeds is equitable.

## II. The parties have agreed upon revisions to the Proposed Preliminary Approval Order and Class Notices in Response to the Court's Concerns.

Plaintiffs attach hereto as <u>Exhibit A</u> the revised Proposed Preliminary Approval Order, reflecting dates matching those requested by the Court. Specifically, deadlines are measured in calendar days divisible by seven and provide sufficient time for Class Members to review the provided material and

submit any objections. In addition, <u>Exhibit A</u> also revises the section on the Court's retention of jurisdiction over this matter, as requested by the Court.

Plaintiffs attach hereto as <u>Exhibits B</u> and <u>C</u> two revised alternative versions of the Class Notice for the Court's consideration. <u>Exhibit B</u> includes additional text intended to give Class Members more detailed information on the key inputs to a Class Member's recovery under the Plan of Allocation—in other words, to describe to them the formula for allocating settlement benefits—and to explain to Class Members that, once the Distributable Settlement Amount is determined, their respective settlement allocations will primarily be driven by two factors: (1) the number of years during the Class Period in which they had year-end account balances, and (2) the amount of each of those year-end account balances. That additional text reads as follows:

> On a summary level, the Plan of Allocation will work as follows: The Settlement Administrator will determine the Distributable Settlement Amount to be allocated to Class Members. The Settlement Administrator will then calculate the portion of the Distributable Settlement Amount to be allocated to each Class Member, based on that Class Member's year-end account balance for each year from 2010 through 2018. Thus, a Class Member's allocation will depend on both the amount he or she maintained in the Plan over the Class Period and the number of years during the Class Period in which the Class Member maintained a balance. To ensure that no Class Member receives less than $10, any Class Member entitled to receive less than $10 will be allocated $10, and the remaining allocations will be adjusted proportionally.

(Ex. B at 4.)

At the Preliminary Approval Hearing, the Court asked the parties to consider whether the Class Notice should also include hypotheticals to illustrate potential settlement allocations for Class Members. Although the precise recovery cannot be calculated, Plaintiffs believe Exhibit C, a second proposed revised version of the Class Notice, presents a reasonable estimate. It includes the additional text described above, as well as the following paragraph laying out three hypothetical scenarios:

> The following hypotheticals illustrate how the Plan of Allocation is designed to work. It is important to stress that these hypotheticals have been calculated using <u>preliminary</u> estimates of (i) the dollar amount to be distributed to Class Members, (ii) the number of Class Members, and (iii) the Class Members' Plan account data over only a portion of the Class Period (through 2017). The final allocations will depend on the final figures for each of those three factors, which will not be known until later in the settlement administration process. That said, based on these preliminary numbers:
>
> - Hypothetical Participant A, who had an average yearly Plan balance of $100,000 and was in the Plan for four years of the Class Period, may recover approximately $1,000.
> - Hypothetical Participant B, who had the same average yearly balance of $100,000, but was in the Plan for just two years of the Class Period, may recover approximately $500. (That is because, all things being equal, a Class Member who participated in the Plan for longer will get a larger allocation.)
> - Hypothetical Participant C, who had an average yearly Plan balance of $200,000 (double the average yearly balance of Hypothetical Participant A), but was in the Plan for the same four

> years as Hypothetical Participant A, may recover approximately $2,000. (That is because, all things being equal, a participant with a higher yearly Plan balances will get a larger allocation.)

(Ex. C at 4.)

Both versions of the revised Class Notice also contain the following additional language:

> Actual allocation amounts will depend on the final Distributable Settlement Amount and the Class Member's aggregate yearly account balances and number of years in the Plan during the Class Period, and it is possible that some Class Members may receive the minimum recovery of $10.

(Ex. B at 4, Ex. C at 5.)

Defendants are concerned that the hypotheticals included in Exhibit C may be misinterpreted by Class Members, causing them to form a belief that their recovery will be higher or lower than it may actually be given their individual Plan experience, or that their calculation can be identified with certainty at this stage, when none of the inputs for the Plan of Allocation formula can be stated with any precision at this time. First, the Distributable Settlement Amount has yet to be fixed. It will depend on a number of factors, including the amount of attorneys' fees and expenses awarded by the Court to Class Counsel at the Final Approval Hearing. Second, the number of Class Members is not known at this time, as the list of Class Members will be compiled following preliminary approval. Third, and relatedly, the Class Members' Plan account data (i.e., their year-end Plan account balances over the Class Period), has not yet been collected for the full Class Period, as it too will be compiled fully only following any preliminary approval. The hypotheticals thus do not give Class Members the ability to calculate their own estimated recovery

Plaintiffs' Memorandum in Further Support of Motion for Preliminary Approval of Settlement
4:16-cv-4265-CW consolidated with 3:17-cv-6409-CW

6

amounts at this stage in the proceedings (i.e., before the number of Class Members and the total Distributable Settlement Amount are fixed, and before the Class Members' participant data is collected for purposes of running the Plan of Allocation).

Defendants thus request that the Court approve the revised Class Notice attached as Exhibit B. That version provides enhanced information regarding the Plan of Allocation and the factors that will affect an individual Class Member's recovery. This is more detailed than notices approved in other comparable cases—including, for example, the notice approved by Judge Breyer in *Kanawi v. Bechtel Corp.*, No. 06-5566, Doc. 794-2 at ECF p. 59–64 (N.D. Cal. Oct. 12, 2010) (attached hereto as Exhibit D). The parties agree that the Court may select either version for distribution to the Class.

### III. The Independent Fiduciary

The Independent Fiduciary is Fiduciary Counselors, Inc. As a term of the Settlement, its fee of $15,000, plus any reasonable out-of-pocket expenses, will be paid from the settlement fund.

### IV. Settlement Release

The definition of "Released Claims" in Section 1.36 of the Settlement Agreement encompasses claims "arising out of or in any way related to" (a) the conduct alleged in the *Cryer* and *Fernandez* operative Complaints, whether or not included as counts in the Complaints; (b) the selection, retention and monitoring of the Plan's investment options and service providers; (c) the performance, fees and other characteristics of the Plan's investment options; (d) the Plan's fees and expenses, including without limitation, its recordkeeping fees; (e) the nomination, appointment, retention, monitoring and removal of the Plan's fiduciaries; and (f) the approval by the Independent Fiduciary of the Settlement, with certain exceptions described in Section 1.36. At the

Preliminary Approval Hearing, the Court inquired whether the phrase "in any way related to" should be revised to read "related to." The phrase "in any way" is frequently used in defining the scope of released claims,[1] and is expressly tied to the specific subjects that follow the phrase (which mitigates any overbreadth concerns). Defendants thus respectfully decline to revise the language of Section 1.36, which was negotiated carefully and deliberately over the course of the parties' multi-week negotiation of the Settlement Agreement.

Dated: May 17, 2019                    Respectfully submitted,

                                       /s/ *Gregory Y. Porter*
                                       Gregory Y. Porter, *pro hac vice*
                                       Mark G. Boyko, *pro hac vice*
                                       Bailey & Glasser LLP
                                       1055 Thomas Jefferson Street, NW  Suite 540
                                       Washington, DC 20007
                                       Telephone: (202) 463-2101
                                       Facsimile: (202) 463-2103
                                       gporter@baileyglasser.com
                                       mboyko@baileyglasser.com

                                       Mark P. Kindall, Cal. Bar No. 138703
                                       Robert A. Izard, *pro hac vice*
                                       IZARD KINDALL & RAABE LLP
                                       29 South Main Street, Suite 305
                                       West Hartford, CT 06107
                                       Telephone: (860) 493-6292
                                       Facsimile: (860) 493-6290
                                       rizard@ikrlaw.com
                                       mkindall@ikrlaw.com

---

[1] See, e.g., *In re Volkswagen "Clean Diesel" Mktg. Sale Practices, and Products Liab. Litig.*, 2672 CRB (JSC), 2017 WL 672820, at *4 (N.D. Cal. Feb. 16, 2017) (Finding release covering claims "in any way related to" the allegations "is consistent with Ninth Circuit law"); *Ferrari v. Autobahn, Inc.*, 17-cv-18 (YGR), 2019 WL 295260, at *17 (N.D. Cal. Jan. 23, 2019) (granting final approval where release included claims "in any way related" to the allegations); *McLeod v. Bank of Am., N.A.*, 16-cv-3294 (EMC), 2018 WL 5982863, at *7 (N.D. Cal. Nov. 14, 2018) (granting preliminary approval where release included claims "in any way related" to the allegations).

Joseph A. Creitz, Cal. Bar No. 169552
Lisa S. Serebin, Cal Bar No. 146312
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Facsimile: (415) 513-4475
joe@creitzserebin.com
lisa@creitzserebin.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of May, 2019, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system and service upon all participants in this case who are CM/ECF users will be accomplished by operation of that system.

/s/ Gregory Y. Porter