Mark P. Kindall, Cal. Bar No. 138703
mkindall@ikrlaw.com
Robert A. Izard, *pro hac vice*
rizard@ikrlaw.com
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292

Gregory Y. Porter, *pro hac vice*
gporter@baileyglasser.com
Mark G. Boyko, *pro hac vice*
mboyko@baileyglasser.com
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101

Joseph A. Creitz, Cal. Bar. No. 169552
joe@creitzserebin.com
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090

*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1-25,<br><br>Defendants. | Lead Case No. 4:16-cv-04265-CW [Consolidated with Case No. 4:17-cv-06409-CW]<br><br>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Judge:       Hon. Claudia Wilken<br>Hearing: |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   LITIGATION HISTORY .......................................................................................... 2

III.  THE SETTLEMENT AGREEMENT....................................................................... 4

    A.    The Settlement Benefits. ................................................................................ 4

    B.    Released Claims. ............................................................................................. 5

    C.    Notice to Class Members. ............................................................................... 6

IV.   THE COURT SHOULD APPROVE THE SETTLEMENT. ..................................... 7

    A.    Plaintiffs and Class Counsel have adequately represented the Class...................... 8

    B.    The Settlement was negotiated at arm's length........................................................ 8

    C.    The relief provided for the Class is adequate........................................................... 9

    D.    The costs, risks, and delay of trial and appeal...................................................... 10

    E.    The effectiveness of distribution to the Class. ..................................................... 12

    F.    The terms of the proposed attorney's fee award ................................................... 13

    G.    The proposal treats Class Members equitably relative to each other.................... 13

V.    THE NOTICE ........................................................................................................ 14

VI.   CONCLUSION ...................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Braden v. Wal-Mart Stores, Inc.*,

5

    588 F.3d 585 (8th Cir. 2009)...................................................................................10

6

*Donovan v. Cunningham*,

7

    716 F.2d 1455 (5th Cir. 1983)...............................................................................10

8

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998)..................................................................................9

9

*Krueger v. Ameriprise*,

10

    No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ...............................11

11

*Meiners v. Wells Fargo & Co.*,

    898 F.3d 820 (8th Cir. 2018)..................................................................................11

12

*Mullane v. Cent. Hanover Bank Tr. Co.*,

13

    339 U.S. 306 (1950)...........................................................................................14, 15

14

*Newbridge Networks Sec. Litig.*,

15

    No. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ..........................................9

16

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................9

17

*In re Online DVD-Rental Antitrust Litig.*,

18

    779 F.3d 934 (9th Cir. 2015)...................................................................................14

19

*Price v. Eaton Vance Corp., et. al*,

20

    No. 18-cv-12098, Dkt. 32 (D. Mass. May 5, 2019) .................................................10

21

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009)....................................................................................9

22

*Satchell v. Fed. Express Corp.*,

23

    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..........................................................9

24

*In re Synocor ERISA Litig.*,

25

    516 F.3d 1095 (9th Cir. 2008)...................................................................................7

26

*Tibble v. Edison Int'l*,

    No. 07-cv-5359, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)..............................12

27

28

- ii -

*Tussey v. ABB, Inc.*,
   No. 06-cv-4305, 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017)...............................................12

*Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*,
   No. 15-cv-1614, 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ...................................................9

*White v. Chevron Corp.*,
   No. 16-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ......................................................10

**Statutes**

29 U.S.C § 1001, *et seq.*.....................................................................................................8, 9, 10, 12

ERISA 401(k) .............................................................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................................11

Fed. R. Civ. P. 23 .........................................................................................................................15

Fed. R. Civ. P. 23(e).................................................................................................................1, 15

Fed. R. Civ. P. 23(e)(1)................................................................................................................14

Fed. R. Civ. P. 23(e)(1)(B)............................................................................................................7

Fed. R. Civ. P. 23(e)(2)..................................................................................................................7

Fed. R. Civ. P. 23(e)(3)..................................................................................................................7

**Other Authorities**

*Newberg on Class Actions*, Vol. 3 (5th ed. 2014)........................................................................15

1    Plaintiffs Marlon Cryer and Nelly Fernandez (collectively, "Plaintiffs") submit this

2  Memorandum of Law in support of their Motion for Final Approval of the Parties' February 12,

3  2019 Settlement Agreement. Plaintiffs seek an Order finally approving the Settlement under FED.

4  R. CIV. P. 23(e).[1]

5                          **I.      INTRODUCTION**

6    A month before trial was scheduled to begin, and after more than two years of litigation, full

7  fact and expert discovery and multiple dispositive motions, Plaintiffs and Defendants agreed to

8  settle the combined claims in the *Cryer* and *Fernandez* consolidated action. Of primary

9  importance, the parties resolved the matter for $13.85 million, plus an additional Plan benefit

10  consisting of an increase in Franklin's existing matching contribution rate for eligible salary

11  deferrals from 75% to 85% for a period of three years (referred to as the "Increased Match"). The

12  Increased Match is anticipated to add $4.3 million annually to the Plan through higher payments

13  by Franklin, based on 2017 Plan data).[2]  The Class will also benefit from the addition of a

14  nonproprietary target date fund to the Plan, alongside the Plan's existing target date fund (which

15  serves as the Plan's qualified default investment alternative). Plaintiffs' other main complaints,

16  concerning the continued offering of the Franklin Large Cap Value Fund and Franklin Money

17  Fund, were resolved prior to settlement by Defendants' removal of those funds from the Plan.

18    The Settlement is a fair, reasonable, and adequate resolution of the Class's claims.  In

19  particular, we estimate that the Settlement represents nearly one-third of the Class's potential

20  damages and eliminates the numerous, substantial risks, expenses, and potential delays that would

21  lay ahead if the case continued to trial and beyond. The Settlement, negotiated at arm's length by

22  ───────────────

23  [1] All capitalized terms not defined herein have the meanings ascribed to them in Part I of the
Settlement Agreement.

24  [2] While the actual value of the Increased Match over the agreed three-year period will vary
depending on future Plan participant numbers and deferral rates, for purposes of allocating the

25  Increased Match benefit, the Increased Match will be calculated as $4.3 million annually, ($12.9
million total over the full Increased Match Period) based on historical data from the Plan's most

26  recent Form 5500. In 2017, Franklin contributed $32.1 million to the Plan in matching
contributions, an obligation which would have been $4.3 million higher had it matched at a rate

27  of 85% instead of 75%. If Plan participants contribute a greater or lesser amount than they have
done historically, the aggregate value of the Increased Match could be higher or lower.

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1  experienced counsel on both sides and with the help of an experienced mediator, is an excellent

2  result and in the Class Members' best interests.

3       Lastly, the parties have ensured that the Court's instructions at preliminary approval have

4  been met. Angeion Group was retained as the Settlement Administrator. As described in the

5  attached Declaration of Brian Manigault, Angeion mailed the approved notices and gave notice to

6  the Class consistent with the Court's Order.

7  ## II.   LITIGATION HISTORY

8       The history of this case is well known to the Court. *See, e.g., Fernandez* Dkt. 116 at 2–4.

9  Plaintiff Cryer filed his original complaint on July 28, 2016. Dkt. 1. Defendants responded by

10  filing a motion to dismiss and a motion for summary adjudication (Dkts. 19 and 21), asserting,

11  among other things, that Mr. Cryer's action violated a severance agreement he had with Franklin.

12  After extensive briefing, the Court denied those dispositive motions on January 17, 2017. Dkt. 44.

13  After the start of discovery, Mr. Cryer filed a motion for class certification (Dkt. 53), which the

14  Court granted (Dkt. 67), and a motion to amend the complaint (Dkt. 56), which the Court denied.

15  Dkt. 66. Defendants moved for reconsideration of the order certifying the class (Dkt. 73), which

16  the Court agreed to hear and then denied. Dkt. 83.

17       Shortly thereafter, Plaintiff Fernandez filed a separate action, making allegations

18  substantively identical to those Mr. Cryer had raised in his proposed First Amended Complaint.

19  *Fernandez* Dkt. 1. Defendants filed a motion to dismiss and motion for summary adjudication

20  asserting, among other things, that Ms. Fernandez's action violated her severance agreement with

21  Franklin. The Court denied Defendants' motions. *Fernandez* Dkt. 52. At the same time, the Court

22  consolidated the two cases. *Id.*

23       Subsequent to the Court's consolidation of the *Cryer* and *Fernandez* actions for trial and the

24  close of fact and expert discovery, the parties briefed and argued cross motions for Summary

25  Judgment. On November 16, 2018, those motions were largely denied, and the case was set for a

26  one-week trial to commence on January 14, 2019. Dkt. 149. In the weeks leading up to trial,

27  Plaintiffs voluntarily agreed to dismiss with prejudice from the litigation the Franklin Resources,

28

2

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1 | Inc. Board of Directors, the individual current and former Franklin Board members named in the
2 | suit (Gregory E. Johnson, Rupert H. Johnson, Jr., Charles B. Johnson, Charles E. Johnson, Peter
3 | K. Barker, Mariann Byerwalter, Mark C. Pigott, Chutta Ratnathicam, Laura Stein, Seth Waugh,
4 | Geoffrey Y. Yang, Samuel Armacost, Joseph Hardiman, and Anne Tatlock), and Plaintiff
5 | Fernandez's monitoring claim.

6 |      At several points during the course of this protracted litigation, the parties engaged in good-
7 | faith discussions to determine whether it was possible to resolve the case through settlement.
8 | Dkt. 157-1 ¶ 5-6. The parties retained a highly-regarded mediator, Robert Meyer, to assist in
9 | these efforts. Dkt. 157 at ECF 14. In March of 2017, following the Court's denial of Defendants'
10 | initial Motion to Dismiss, the parties prepared detailed mediation statements and held a full-day
11 | in-person session with the mediator in San Francisco, but the parties' positions were far apart.
12 | Dkt. 157-1 ¶ 5. Over a year later, after discovery was largely complete, the Court had certified the
13 | Class, and Defendants' efforts to have the case stayed pending an interlocutory appeal of the
14 | Class Certification Order under Rule 23(f) were denied, the Court ordered a second in-person
15 | session with the mediator. Dkt. 157 at ECF 14–15. The parties again prepared detailed mediation
16 | submissions, providing the mediator with confidential assessments of the strengths and
17 | weaknesses of their respective positions. Dkt. 157-1 at ECF ¶ 5.  But again, at the end of the day
18 | the parties were unable to reach agreement. *Id*. The parties continued their discussions by email
19 | and telephone after the mediation session, but no agreement was reached. *Id*.  Indeed, the parties
20 | did not even reach an agreement in principle until early December 2018, almost five months after
21 | the last mediation session, and only after the Court's ruling on the cross-motions for Summary
22 | Judgment and after the parties had exchanged information, such as witness and exhibit lists, for
23 | the final pretrial conference report. *Id*.

24 |      The parties informed the Court of their agreement-in-principle on December 3, 2018, and
25 | filed a Notice of Settlement on December 6, 2018. Dkt. 150.

26 |      Following modifications to the Class Notice requested by the Court, the Court granted
27 | Plaintiffs' Motion for Preliminary Approval on June 3, 2019. Dkt. 161.

28 |

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1

### III.   THE SETTLEMENT AGREEMENT

2

**A.      The Settlement Benefits.**

3      The Settlement resolves all claims of the certified Class — current and former participants

4 in the Plan since July 28, 2010.

5      Class Members will receive compensation in three different ways:

6           (1)      Former Participants — Class Members who are no longer employed by the

7 Company and do not have any account with a positive balance in the Plan — will receive a check

8 for their pro rata share of the Allocation Amount (defined as the distributable portion of the

9 $13.85 million payment plus the estimated value of the Increased Match), which will be mailed to

10 them shortly after the Settlement becomes effective.

11           (2)      Inactive Participants — Class Members who are no longer eligible to make

12 contributions in their Plan accounts but who have a Plan account with a positive balance — will

13 receive their pro rata share of the Allocation Amount directly into their Plan account shortly after

14 the Settlement becomes effective. This method of distribution will provide eligible Class

15 Members with the added benefit that a direct deposit in a qualified retirement plan is tax deferred.

16           (3)      Active Participants — Class Members who are currently making

17 contributions to their Plan accounts — will receive their compensation through Franklin's

18 agreement to provide an additional Plan benefit consisting of an increase in Franklin's existing

19 matching contribution rate for eligible salary deferrals from 75% to 85% for a period of three

20 years.[3] Active Participants whose Increased Match during the Increased Match Period fails to

21 equal or exceed what their recovery would have been had they been entitled to participate in the

22

23      _____

[3] The Settlement provides that the three-year Increased Match Period will begin with the first full
24 quarter of participant deferrals following the Effective Date of the Settlement. However, Franklin
may elect to accelerate the Increased Match contributions on deferrals made by eligible
25 participants during the calendar year in which the Increased Match is first implemented, by
making retroactive "true-up" Increased Match contributions (i.e., at a rate of 10%) to the Plan
26 accounts of those Participants who received a 75% match contribution during that calendar year.
Should the Company elect to do so, the three-year Increased Match Period shall be deemed to
27 have commenced on the first day of the first quarter in which the Increased Match was applied,
even if that first date is prior to the Effective Date.

28

1   initial settlement distribution will receive a one-time payment after the end of the Increased

2   Match Period from money in the Settlement Fund not distributed initially, but set aside to ensure

3   that Class Members are no worse off by being classified as Active Participants. These

4   distributions will be made directly into the Plan accounts of such Active Participants with a Plan

5   balance at the end of the Increased Match Period, and by check to those who have since closed

6   their accounts.

7        To allocate the Settlement benefit, the $13.85 million payment, after the deduction of taxes,

8   costs, expenses, and fees, will be combined with the estimated value of the Increased Match

9   ($12.9 million based on the full Increased Match Period). The resulting figure will be allocated to

10  the Class Members in proportion to their account balances during the Class Period, which shall

11  serve as a proxy for their alleged losses, as fully described in the Plan of Allocation attached to

12  the Settlement Agreement as Exhibit C. Class members will not need to make a claim to receive

13  their share of the Settlement Fund. Any Class Member who is entitled to a calculated payment of

14  less than ten dollars ($10.00) in the initial distribution will receive a payment of ten dollars

15  ($10.00).

16       After a three-year period, amounts remaining in the Settlement Fund will first be paid to

17  Active Participants who did not receive at least their entitlement amount through the Increased

18  Match. Any remainder will be distributed to Class Members who continue to have an account in

19  the Plan at that time, by electronical payment into their Plan accounts, unless the amount

20  available for distribution is under $50,000. Any remainder under $50,000 (and any assets

21  remaining after that distribution) will be transferred to the Plan's forfeiture account and used for

22  payment of Plan administrative expenses. No portion of the Settlement Fund will revert back to

23  Franklin or the Defendants.

24  **B.      Released Claims.**

25       Under the Settlement Agreement, the "Released Claims" are any and all claims for

26  monetary, injunctive, and all other relief against the Defendant Released Parties through the date

27  the Court enters the Final Approval Order and Judgment (including, without limitation, any

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1  Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the *Cryer* and

2  *Fernandez* operative Complaints, whether or not included as counts in the Complaints; (b) the

3  selection, retention and monitoring of the Plan's investment options and service providers; (c) the

4  performance, fees and other characteristics of the Plan's investment options; (d) the Plan's fees

5  and expenses, including without limitation, its recordkeeping fees; (e) the nomination,

6  appointment, retention, monitoring and removal of the Plan's fiduciaries; and (f) the approval by

7  the Independent Fiduciary of the Settlement. The Released Claims include certain exceptions,

8  including claims to enforce the covenants or obligations set forth in the parties' Settlement

9  Agreement, and individual claims to vested benefits that are otherwise due under the terms of the

10  Plan.

11  **C.    Notice to Class Members.**

12      All Class Members are current or former Plan participants and many are current employees

13  of the Company. Consistent with the Settlement Agreement and Order granting Preliminary

14  Approval, Franklin's third-party recordkeeper for the Plan provided the Settlement Administrator

15  with the names and last known addresses of 4,160 Class Members and the e-mail addresses of

16  4,316 class members on July 1, 2019. On July 15, 2019, the Settlement Administrator sent the

17  Notice by First Class Mail or e-mail, where possible, to all Class Members using addresses

18  submitted by the Class Members for communications involving their Plan accounts. Angeion

19  Decl. at ¶¶ 7-8. A total of 404 notices were returned as undeliverable, and the Settlement

20  Administrator will be skip tracing and re-mailing if new addresses are located. Angeion Decl. at ¶

21  11.

22      After the Notice had been transmitted on July 15, 2019, the Plan's recordkeeper determined

23  that an additional 156 individuals could be identified as Class Members. Angeion Decl. at ¶ 9.

24  These individuals had positive account balances in the Plan for brief periods during the class

25  period, but did not have positive balances in their accounts at the end of any calendar year during

26  the class period. Pursuant to the approved Plan of Allocation, each of the 156 individuals is

27  eligible for only the minimum recovery of $10. The recordkeeper provided names and addresses

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1    of these individuals to the parties on July 25, 2019, and notices were sent by First Class Mail to

2    those individuals on July 29, 2019. Angeion Decl. at ¶ 10.

3        Accordingly, the notice program reached over 95 percent of the total class. While the

4    Objection Deadline is September 10, 2019, as of the date of this filing, no Class Members have

5    objected to the Settlement.

6                    **IV.    THE COURT SHOULD APPROVE THE SETTLEMENT.**

7        As explained in Plaintiffs' Motion for Preliminary Approval, "there is a strong judicial

8    policy that favors settlements particularly where complex class action litigation is concerned . . . .

9    This policy is also evident in the Federal Rules of Civil Procedure . . . which encourage

10   facilitating the settlement of cases." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

11   2008).

12       Pursuant to the modified Federal Rules effective December 1, 2018, this Court previously

13   determined that "it is likely that the Court will be able to grant final approval of the Settlement

14   under FED. R. CIV. P. 23(e)(1)(B) following notice and a hearing." Dkt 161 at ¶ 4.  The revised

15   Federal Rule directs courts, in making that evaluation, to evaluate a settlement using the same

16   factors that the Court must ultimately employ to determine whether to grant final approval;

17   namely, "whether: (A) the class representatives and class counsel have adequately represented the

18   class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

19   adequate . . . and (D) the proposal treats class members equitably relative to each other." FED. R.

20   CIV. P. 23(e)(2). The adequacy of the proposed relief must be considered in light of "(i) the costs,

21   risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

22   relief to the class, including the method of processing class-member claims; (iii) the terms of any

23   proposed award of attorney's fees, including timing of payment; and (iv) any agreement required

24   to be identified under Rule 23(e)(3)." *Id.*

25       Nothing has occurred in the time since the Court gave preliminary approval to the

26   Settlement that would call into question the results of the Court's initial evaluation.  As set forth

27   below, the Settlement merits final approval.

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

**A.      Plaintiffs and Class Counsel have adequately represented the Class.**

The Class representatives and Class Counsel have already been found adequate by this Court at the class certification stage. Dkt. 67, at 14–15.  Moreover, Class Counsel and Plaintiffs have pursued this litigation for three years, through fact and expert discovery, class certification, dispositive motions, and final preparation for trial. Class Counsel have specialized expertise in proprietary fund 401(k) litigation, which has allowed them to litigate this complex case efficiently and effectively so that it was trial-ready within less than two and half years.  Counsel's detailed factual investigation, both before the Complaint was filed and through the discovery process, coupled with their knowledge of applicable ERISA law, also allowed them to negotiate a favorable settlement on behalf of the Class.

**B.      The Settlement was negotiated at arm's length.**

At different times in the history of the *Cryer* and *Fernandez* actions, the parties have engaged in settlement discussions. Counsel for Plaintiffs and Defendants had in person mediations on April 14, 2017, and July 10, 2018, with the assistance of a neutral mediator, Robert A. Meyer, following the exchange of detailed mediation statements and exhibits. Discussions continued, with and without the assistance of Mr. Meyer, at different times. Dkt 157-1 ¶ 5. The Court ordered the parties to participate in further mediation efforts upon issuance of its ruling on the parties' cross-motions for summary judgment. On December 3, 2018, the parties reached a settlement-in-principle, and so notified the Court on December 3, resulting in a joint Notice of Settlement, including a request for a stay of all scheduled dates, filed with the Court on December 6, 2018. Dkt. 150.

Class Counsel was fully aware of the case strengths and weaknesses when negotiating the Settlement, which supports the Settlement's approval. Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have decades of experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, which they used to evaluate and negotiate the Settlement. Dkt. 157-1 at ¶ 4. As the Ninth Circuit observed, "[t]his circuit has long deferred to the private consensual decision of the parties" and

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

their counsel in settling an action. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval.

Because the Settlement was negotiated by experienced counsel with the aid of a mediator, there is a presumption that it was the product of arm's length negotiations. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Settlement was also reached after multiple rounds of negotiation, and after all fact discovery and dispositive motions were decided. Plaintiffs were thus fully informed of the merits and position of their case. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (no basis to disturb settlement in the absence of any evidence suggesting "that the settlement was negotiated in haste or in the absence of information.").

**C.     The relief provided for the Class is adequate.**

The parties have resolved the matter for $13.85 million, plus an additional Plan benefit consisting of an increase in Franklin's existing matching contribution rate from 75% to 85% for eligible salary deferrals for a period of three years. As noted above, the Increased Match is anticipated to add $4.3 million annually to the Plan through higher payments by Franklin, based on 2017 Plan data. The combination of these benefits is just under one-third of the Class's potential damages. Dkt. 157-1 at ¶ 7.

A recovery equal to almost one-third of potential damages, in and of itself, is reasonable and warrants approval. *See*, *e.g.*, *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"). *Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-cv-1614, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (approving to settlement of proprietary fund 401k ERISA case that represented between 25.5% of

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1    plaintiffs' losses) and Docket Entries 185 and 186 (final approval order and judgment of that

2    settlement). Only one month before this Court granted Plaintiffs' Motion for Preliminary

3    Approval, plaintiffs in another class action alleging breaches of fiduciary duty related to the

4    inclusion of proprietary funds in a 401(k) plan moved for preliminary approval of their

5    $3,450,000 settlement. *Price v. Eaton Vance Corp., et. al*, No. 18-cv-12098, Dkt. 32 (D. Mass.

6    May 5, 2019). Plaintiffs in that case stated that their settlement "represents approximately 23% of

7    the total damages." *Id*. at ECF 19. In addition, the Plan is already benefitting from a non-

8    proprietary stable value fund for a low-risk capital preservation option, and will benefit from a

9    non-proprietary target date fund alternative.

10    **D.    The costs, risks, and delay of trial and appeal.**

11          The adequacy of the Settlement is even more evident when the cost, risk and delay

12    associated with continued litigation are considered. Despite Plaintiffs' confidence in their case,

13    they face significant hurdles in proving their claims. While "[a] pure heart and an empty head are

14    not enough" for defendants to avoid liability (*Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th

15    Cir. 1983), *cert denied,* 467 U.S. 1251 (1984)), breach of fiduciary duty claims under ERISA

16    depend heavily on the process by which decisions were made rather than the results of those

17    decisions. *See White v. Chevron Corp.*, No. 16-793, 2017 WL 2352137, at *4 (N.D. Cal. May 31,

18    2017), *aff'd*, No. 17-16208, 2018 WL 5919670 (9th Cir. Nov. 13, 2018) (finding the "prudence

19    analysis focuses a fiduciary's 'conduct in arriving at an investment decision, not on its results,

20    and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the

21    merits of a particular investment.'"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595

22    (8th Cir. 2009).

23          Here, the Plan's investment decisions were made by the Investment Committee. The

24    minutes from the Investment Committee's meetings indicate that the Investment Committee

25    evaluated the Plan's options regularly and, at certain times, removed Franklin funds, including the

26    Large Cap Value Fund, from the Plan's lineup. The Investment Committee used an independent

27    investment consultant, who produced data on each fund for each quarterly Investment Committee

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1   meeting and was in contact with Investment Committee members and staff between meetings to

2   raise issues concerning particular investment products. The consultant also assessed each fund

3   compared to guidelines established by the Investment Committee and codified in an Investment

4   Policy Statement, which itself was reviewed and revised during the Class Period. The Investment

5   Committee frequently selected the lowest cost share class of each Franklin fund investment

6   option.

7          If Plaintiffs established that Defendants breached their fiduciary duty, proving damages

8   would not be a given. Some funds in the Plan performed well during the proposed Class Period,

9   outperforming their benchmarks and peer group, and the majority of the funds Plaintiffs alleged

10  were imprudent had particular years where they performed well, often during the period at the

11  beginning of the Class Period. While Plaintiffs' expert opined that damages were $92 million,

12  that amount was a "best case" scenario, based on the immediate removal of all proprietary funds

13  on the first day of the Class Period, a damage number that Defendants would try to minimize if

14  not eliminate at trial by asserting particular funds were prudently selected and maintained until

15  after performance had deteriorated.

16         Albeit a decision on the pleading standard on a Rule 12(b)(6) motion, the Eighth Circuit's

17  recent decision in *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018) may also impact

18  the benchmarks that Plaintiffs could use for their damages calculation. In *Meiners*, the Eighth

19  Circuit rejected a comparison of the performance and fees of Wells Fargo's actively managed

20  target date funds with a passively managed alternative. *Meiners*, 898 F.3d at 823–24. The same

21  alternative was used by Plaintiffs' expert here to calculate damages and the same methodology

22  was used to compare Franklin funds to passive alternatives.

23         While this settlement comes at the time of trial, it nevertheless provides significant savings

24  to the Class. Not only are the costs of trial and appeal saved, but the Class receives its recovery

25  now instead of after protracted appeals.

26         Courts have repeatedly recognized that ERISA 401(k) cases "often lead [] to lengthy

27  litigation." *Krueger v. Ameriprise*, No. 11-cv-2781, 2015 WL 4246879, at *1 (D. Minn. July 13,

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

2015). It is not unusual for ERISA fee cases to last for a decade or longer. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, No. 07-cv-5359, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007). The potential for protracted litigation supports the Settlement's approval.

Even if Plaintiffs prevailed at trial and established damages that began at the start of the Class Period and reflected Plaintiffs' experts' methodology, they faced not only the ordinary risks of appeal and delay, but also the particularized risk that a Supreme Court ruling in *Munro v. USC* would lead to a reversal of this Court's determination that the covenants not to sue and class action waivers signed by Mr. Cryer and Ms. Fernandez (as well as most Franklin employees) barred these actions and the Plan's recovery. Dkt. 119 (order denying motion to stay).

**E.     The effectiveness of distribution to the Class.**

No Class Member will be required to do anything to receive a monetary payment from the Settlement. The Plan's Recordkeepers maintain detailed records of its current and former participants, which, as described above, allowed the Settlement Administrator to deliver notices to virtually all Class Members. With the advantage of tracing of undeliverable notices, there is greater confidence that the distributions are being sent to the correct people and the correct addresses.

Additionally, distributions will be done in a way that minimizes or defers tax consequences, thus adding additional value to the Class. Class Members who are still contributing to the Plan will receive their benefit primarily through the Increased Match, which both allows for the potential of additional monetary benefit if they elect to increase their eligible salary deferrals into the Plan — and therefore their ability to take advantage of the Increased Match — and provides the additional benefit of dollar-cost averaging because the deferrals are made during regular pay periods. Meanwhile, these participants do not need to increase, or even maintain, their contributions in the Plan to receive their full benefit, as the Plan of Allocation provides a

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

secondary distribution to Plan participants for whom the Increased Match fails to equal or exceed the benefit they would have received if they were no longer in the Plan.

### F.      The terms of the proposed attorney's fee award

Class Counsel are separately filing a motion for an award of attorneys' fees of $7,490,000 (28% of the $13.85 million payment plus the estimated value of the Increased Match, without accounting for the value of the new Target Date Funds) and reimbursement of expenses. As set forth in that Motion, the requested fee is justified in light of the litigation risk assumed by Class Counsel, the substantial time and expense devoted to the litigation, and the results achieved for the Class.  Moreover, the Settlement expressly provides that it is not contingent on the Court granting Plaintiffs' request for attorneys' fees in whole or in part. Settlement Agreement § 8.2(b), previously filed at Dkt. 156-1, ECF 22.  For purposes of *this* Motion, therefore, nothing in the Settlement's provisions related to attorneys' fees should give the Court any reason to question the fairness of the Settlement itself.

### G.      The proposal treats Class Members equitably relative to each other.

As described previously, the settlement treats each Class Member equitably. Damage calculations are based on each individual Class Member's Plan account balance during the Class Period. Because nearly all investments in the Plan as directed by Class Members were in the proprietary funds, Plan account balances are a reasonable proxy for the alleged harm.

Meanwhile, participants are treated equitably regardless of their current status within the Plan. All Plan participants will benefit on a pro rata basis — whether through a lump-sum payment or through the Increased Match — and the Plan of Allocation is designed to ensure that Class Members who will benefit from the Increased Match obtain their full benefit even if their participant status changes before the Increased Match Period ends. The Settlement also provides for distribution of unclaimed Settlement Fund assets to Class Members who have a Plan account with a positive balance at that time, with any remainder to go to the Plan's forfeiture account to pay for Plan administrative expenses.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

It is true that Class members who are current plan participants have the opportunity to increase the benefit that they receive by increasing the base amount of their contributions to the Plan during the period that the increased match is in effect.  However, this additional benefit to current plan participants is offset by the fact that former plan participants will receive all of their benefits upfront, and without the need to make any further contributions to the retirement plan at all.  This bifurcated structure permitted Class Counsel to negotiate a settlement that maximized the dollar value of the benefits that would be available to each and every Class Member.

Finally, the Settlement also does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the claimed losses to their Plan accounts. While Plaintiffs have also requested incentive awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount. "Incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez*, 563 F.3d at 958).  As set forth in Plaintiffs' accompanying Motion for Attorneys' Fees, Expenses and Incentive Awards, the requested incentive awards are appropriate and justified by their work on behalf of the Class.

## V.    THE NOTICE

In order to satisfy due process considerations, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Here, the form and method of Notice satisfy all due process considerations and Rule 23(e)(1). The Class Notice describes the lawsuit in plain English, including the terms of the proposed Settlement, the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate, the attorneys' fees and expenses, plus costs, that are being sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

The method for distributing the Notice was also designed to reach all Class members, and as discussed above, the Notice in fact reached 95 percent of the Class. *See Mullane*, 339 U.S. at 315 (Holding that a "fundamental requirement of due process [is] . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citation omitted). Class Members promptly received the Notice either electronically to their designated email address, if that was their preference for Plan communications, or in paper form to the (last known) address they provided to the Plan's record keeper, and the Settlement Administrator will skip trace and re-mail notice letters to any Class Members whose new address is located. Angeion Decl. ¶ 11.  In addition, the Class Notice, the Complaint and various other documents from the case were published on the Settlement Website. *Id*. at ¶ 12. Thus, the notice fairly apprised Class Members of the Settlement Agreement and their options with respect thereto, and therefore fully satisfied due process requirements. *See Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014).

## VI.    CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order approving the Settlement under FED. R. CIV. P. 23(e). Plaintiffs also request that, consistent with the Settlement Agreement and the Order Granting Preliminary Approval, the Court retain jurisdiction during the three-year Settlement Period for purposes of implementing the Agreement, and reserve the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

Dated: July 30, 2019                              Respectfully submitted,

                                                  /s/ *Mark G. Boyko*
                                                  Mark G. Boyko, *pro hac vice*
                                                  Gregory Y. Porter, *pro hac vice*

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

Bailey & Glasser LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
mboyko@baileyglasser.com

Mark P. Kindall, Cal. Bar No. 138703
Robert A. Izard, *pro hac vice*
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@ikrlaw.com
mkindall@ikrlaw.com

Joseph A. Creitz, Cal. Bar No. 169552
Lisa S. Serebin, Cal Bar No. 146312
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Facsimile: (415) 513-4475
joe@creitzserebin.com
lisa@creitzserebin.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW

1

<u>**CERTIFICATE OF SERVICE**</u>

2      The undersigned hereby certifies that on this 30th day of July, 2019, a true and correct copy of

3   the foregoing was filed with the Court using the CM/ECF system and service upon all participants

4   in this case who are CM/ECF users will be accomplished by operation of that system.

5

6                    /s/  Mark G. Boyko

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT
4:16-CV-04265-CW