Mark P. Kindall, Cal. Bar No. 138703
mkindall@ikrlaw.com
Robert A. Izard, *pro hac vice*
rizard@ikrlaw.com
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292

Gregory Y. Porter, *pro hac vice*
gporter@baileyglasser.com
Mark G. Boyko, *pro hac vice*
mboyko@baileyglasser.com
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101

Joseph A. Creitz, Cal. Bar. No. 169552
joe@creitzserebin.com
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090

*Attorneys for the Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MARLON H. CRYER, individually and on behalf of a class of all others similarly situated, and on behalf of the Franklin Templeton 401(k) Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., the Franklin Templeton 401(k) Retirement Plan Investment Committee, and DOES 1-25,<br><br>Defendants. | **Lead Case No. 4:16-cv-04265-CW**<br>[Consolidated with Case No. 4:17-cv-06409-CW]<br><br>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND NAMED PLAINTIFF INCENTIVE AWARDS<br>Judge:   Hon. Claudia Wilken<br>Hearing: Sept. 24, 2019 at 2:30 p.m. |

PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, REIMBURSEMENT OF EXPENSES &
NAMED PLAINTIFF INCENTIVE AWARDS
4:16-cv-04265-CW

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 24, 2019, at 2:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of this Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Marlon Cryer and Nelly Fernandez, will and hereby does move under Federal Rule 23, for Court of their Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards.

Plaintiffs' Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the pleadings in this action, and such other materials and evidence as may be presented to the Court.

Dated: July 30, 2019                    Respectfully submitted,

                                        /S/ *Mark G. Boyko*

                                        Mark G. Boyko (*pro hac vice*)
                                        Gregory Y. Porter (*pro hac vice*)
                                        BAILEY & GLASSER LLP
                                        1055 Thomas Jefferson St. NW, Suite 540
                                        Washington, DC 20007
                                        Telephone: (202) 463-2101
                                        *mboyko@baileyglasser.com*
                                        *gporter@baileyglasser.com*

                                        Mark P. Kindall (138703)
                                        Robert A. Izard
                                        IZARD KINDALL & RAABE, LLP
                                        29 South Main St., Suite 305
                                        West Hartford, CT 06107
                                        Telephone: (860) 493-6295
                                        *mkindall@ikrlaw.com*
                                        *rizard@ikrlaw.com*

                                        Joseph A. Creitz (169552)
                                        Lisa S. Serebin (146312)
                                        CREITZ & SEREBIN, LLP
                                        100 Pine Street, Suite 1250
                                        San Francisco, CA 94111
                                        Telephone: (415) 466-3090
                                        *joe@creitzserebin.com*
                                        *lisa@creitzserebin.com*

# MEMORANDUM AND POINTS OF AUTHORITY

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 3
    A. The Requested Fee is Reasonable Under the Circumstances................................. 3
        1. The Court Should Award Attorneys' Fees Based on a Percentage of the Settlement................................................................................................... 3
        2. A Fee Equal to 28 Percent of the Cash Portion of the Settlement and Below 25 Percent of the Present Value of the Overall Class Benefit is Appropriate For this Extraordinary Recovery............................................ 4
        3. The Results Achieved .............................................................................. 5
        4. Litigation Risk.......................................................................................... 6
        5. Non-Monetary Relief ............................................................................... 7
        6. Percentage Rate Relative to Market Rate................................................. 7
        7. Contingent Nature of Representation and Opportunity Cost ................... 8
        8. Class Reaction.......................................................................................... 9
        9. Lodestar Cross-Check ............................................................................. 9
    B. The Court Should Award Reimbursement of Class Counsel's Costs. .................. 11
    C. The Court Should Approve Incentive Awards to the Class Representatives........ 11
III. CONCLUSION .................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................................4

*Alberto v. GMRI, Inc.*,
    No. CIV 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) .........................4

*In re Biolase, Inc. Sec. Litig.*,
    No. 13-1300, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ......................................................6

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..............................................................................................................3

*Bouman v. Block*,
    940 F. 2d 1211 (9th Cir. 1991) ...............................................................................................10

*Brotherston v. Putnam Investments*,
    No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017) ...................................................2

*Dorman v. Charles Schwab Corp.*,
    No. 17-cv-285 (N.D. Cal.) .....................................................................................................2

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ..........................................................................................................7

*Gordan v. Mass. Mutual Life Ins.*,
    No. 13-cv-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ..................................8, 9, 10

*Gudimetla v. Ambow Educ. Holding*,
    No. 12-5062, 2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ....................................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..............................................................................................................5

*Johnson v. Fujitsu Technology and Business of American, Inc.*,
    No. 16-cv-3698, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................................11

*Kanawi v. Bechtel Corp.*,
    2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ................................................................. *passim*

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..................................................................................................4

*Krueger v. Ameriprise Fin., Inc.*,
   No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ..................................................8

*Kruger v. Novant Health, Inc.*,
   No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ..................................9, 10, 12

*Lee v. JP Morgan Chase & Co*,
   No. 13-cv-511, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) .................................................8

*In re LJ Int'l Inc. Sec. Litig.*,
   No. 07-6076, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009).....................................................6

*Main v. American Airlines, Inc.*,
   No. 16-cv-473, Dkt. 138 (N.D. Tex. Feb. 21, 2018)...................................................................8

*Meiners v. Wells Fargo & Co.*,
   No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017).......................................................2

*Mogck v. Unum Life Ins. Co. of Am.*,
   289 F. Supp. 2d 1181 (S.D. Cal. 2003)......................................................................................9

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008)....................................................................................................9

*Munro v. Univ. of Southern Cal.*,
   896 F.3d 1088 (9th Cir. 2018)....................................................................................................7

*Nolte v. CIGNA*,
   2013 WL 12242015 (C.D. Ill. Oct. 15, 2013)............................................................................8

*In re Northrop Grumman ERISA Litig.*,
   No. 06-cv-6213 (C.D. Cal. Oct. 24, 2017)..................................................................10, 11, 12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................4, 6

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015).......................................................................................3, 5, 11, 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989).................................................................................................3, 4

*Price v. Eaton Vance Corp.*,
   18-cv-12098 (D. Mass. May 6, 2019) .......................................................................................5

*Radcliffe v. Experian Info. Solutions*,
   715 F.3d 1157 (9th Cir. 2013)..................................................................................................11

iii

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES & NAMED PLAINTIFF
INCENTIVE AWARDS
4:16-cv-04265-CW

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) .................................................................................................. 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 6, 11, 12

*Sims v. BB&T Corp.*,
    No. 15-cv-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ..................................................... 8

*Syed v. M-I LLC*,
    No. 14-cv-742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016) ....................................................... 4

*Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*,
    No. 15-cv-1614, 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) .................................................. 5

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................................. 11

*Velazquez v. Massachusetts Fin. Services Co.*,
    No. 17-cv-11249 (D. Mass) ................................................................................................. 5, 6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 4, 5, 8, 9

*Wade v. Minatta Transp. Co.*,
    No. C10-2796 BZ, 2012 WL 300397 (N.D. Cal. Feb. 1, 2012) ................................................. 5

*Waldbuesser v. Northrop Grumman Corp.*,
    2017 WL 9614818 .................................................................................................................. 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................................ 3, 8

*Wildman v. Am. Century Servs., LLC*,
    No. 16-737, 2019 WL 283382 (W.D. Mo. Jan. 23, 2019) ......................................................... 2

**Statutes**

29 U.S.C. § 1001, *et seq.* ............................................................................................... *passim*

29 U.S.C. § 1104(a) ............................................................................................................... 1

29 U.S.C. § 1106 .................................................................................................................... 1

**Other Authorities**

ALBA CONTE, 1 ATTORNEY FEE AWARDS §2:19 (3d. ed.) ............................................................ 11

MANUAL FOR COMPLEX LITIG. (Fourth) § 14.121 (2004) ............................................................ 4

# I.   INTRODUCTION

Plaintiffs brought this case alleging that Defendants' decisions to maintain underperforming proprietary investments in the 401(k) plan (the "Plan") offered to qualified employees of Franklin Resources, Inc. ("Franklin"), violated Defendants' duties of prudence and loyalty under Section 404(a) of ERISA, 29 U.S.C. § 1104(a), and constituted prohibited transaction under ERISA Section 406, 29 U.S.C. § 1106.[1] Because Class Counsel zealously and successfully litigated this case for three years, up to the eve of trial, they were able to negotiate one of the largest monetary settlements in absolute terms and *the largest ever* when measured on a per class member basis.

Under the proposed Settlement, approximately 8,600 class members will receive their portion of a collective $26.75 million settlement without the need to complete a claim form or take any other affirmative act. As an added benefit, many of these participants will receive their recovery directly as a contribution into their tax-deferred 401(k) accounts.[2] Defendants have also agreed to add a non-proprietary suite of target date funds: starting August 1, 2019, the Plan will offer a series of target date options managed by State Street, which charge fees less than one-fifth has high as the Franklin Target Date Funds. (Brown decl. ¶ 5). In addition, after this case was filed but prior to Settlement, Defendants removed the Franklin Money Market Fund which Plaintiffs had challenged and replaced it with a non-proprietary capital preservation fund that provides the Plan with over $600,000 per year in additional interest compared to the Franklin Money Market Fund. (Brown decl. ¶3). The capital preservation fund and target date fund changes offer a present value to the Plan of over $3 million over the next three years, assuming half of the target date fund participants move to the non-proprietary funds.  When these considerations are valued over the entire settlement period, the total monetary benefit to the class exceeds $35.4 million. Brown decl. ¶6.

---

[1] Consistent with this Court's Procedural Guidance for Class Action Settlements, the factual and procedural background set out in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement is incorporated herein by reference.

[2] As described in the Settlement Agreement, the Class will receive upfront monetary compensation in the form of a $13.85 million cash payment, plus an additional Plan benefit consisting of an increase in Franklin's existing matching contributions from 75% to 85% for a period of three years, a benefit that would, based on past contribution levels, add $10.9 million ($4.3 annually) to the Plan through higher payments by Franklin.

The proposed Settlement is an outstanding result for the Class, particularly because ERISA class actions challenging the inclusion of proprietary funds in an employers' 401(k) plans are rare, complex, uncertain, expensive, and risky. While this Court also has before it a case brought by participants in the Charles Schwab 401(k) plan alleging similar ERISA violations, (*Dorman v. Charles Schwab Corp.*, No. 17-cv-285 (N.D. Cal.)), nationwide, only nineteen other such cases have settled since the passage of ERISA in 1974. *See,* Exhibit A to Declaration of Gregory Porter. Only one of these, brought against Bechtel Corporation, was venued in the Northern District of California. *Kanawi v. Bechtel Corp.*, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) (Breyer, J.). *Id.* Only two have gone to trial; both resulted in defense verdicts. *Wildman v. Am. Century Servs., LLC*, No. 16-737, 2019 WL 283382 (W.D. Mo. Jan. 23, 2019); *Brotherston v. Putnam Investments,* No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017), *aff'd* with respect to fiduciary breach allegations but vacated and remanded with respect to alleged prohibited transactions, 907 F.3d 17 (1st Cir. 2018). At least one other case was dismissed. *Meiners v. Wells Fargo & Co.*, No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017), *aff'd,* 898 F.3d 820 (8th Cir. 2018).

Class Counsel have substantial experience in this narrow area of law, having collectively represented plan participants in over half of the proprietary fund 401(k) settlements ever reached. Ex. A to Porter Decl. The experience was essential to the successful prosecution and settlement of the case. In light of their experience, their three years of effort, the high degree of risk and uncertainty that these cases represent and, most importantly, the results that have been achieved, Class Counsel are requesting $7,490,000 in attorneys' fees, which represents 28% of the $26.75 million cash portion of the settlement. Moreover, the fee request represents only 21.1% of the monetary benefits when taking into account the present value of the plan reforms achieved through the litigation and this settlement, even without factoring in the value of any such reforms after the three-year settlement period. This fee request does not seek any monies for interest earned on the settlement fund or for additional work to be done in the future, including: (1) three years of monitoring Defendants' compliance with the settlement; (2) communication and facilitation of

1  contingency payments at the close of the three-year period; or (3) the risk, burden and expense of
2  contested arbitration over compliance issues.

3   Class Counsel's requested fee is less than the one-third fee that was agreed to by the Named
4  Plaintiffs in their contingency fee agreements with Class Counsel (Porter Decl. ¶ 19), less than
5  market rates in other similar cases, and less than the thirty percent contingent fee awarded by Judge
6  Breyer in *Kanawi v. Bechtel*, 2011 WL 782244 at *2. Even without considering any of the benefits
7  other than the $26.75 million monetary portion of the Settlement, the fee request is only slightly
8  above the 25 percent baseline for class litigation in the Ninth Circuit, and when the entire value of
9  the Settlement is considered, the requested fee is significantly lower than the 25 percent benchmark.
10 The requested fee is fair and reasonable regardless of whether benefits beyond the monetary portion
11 are considered, because (as discussed below), many of the factors that courts have determined
12 justify a percentage award above the benchmark are present here.

## II.   ARGUMENT

**A.   The Requested Fee is Reasonable Under the Circumstances.**

Awards in class actions are most often made in reference to the common fund doctrine, pursuant to which the Supreme Court has observed that "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The guiding principle for determining the amount of a fee award in a common-fund case is that the fee should be "reasonable under the circumstances." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("*WPPSS*") (citation omitted).

**1.   The Court Should Award Attorneys' Fees Based on a Percentage of the Settlement**

Courts in the Ninth Circuit may award attorneys' fees in common fund cases based on either the lodestar method or the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). However, most courts use the percentage-of-the-fund

3

PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, REIMBURSEMENT OF EXPENSES &
NAMED PLAINTIFF INCENTIVE AWARDS
4:16-CV-04265-CW

method.[3] This method is particularly appropriate "where, as here, 'the benefit to the class is easily quantified.'" *Syed v. M-I LLC*, No. 14-cv-742, 2016 WL 310135, at * 9 (E.D. Cal. Jan. 26, 2016) (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011)).

The Court should use the percentage-of-the-fund method here. Percentage approaches are the standard contingent-fee arrangements in non-class action cases. Thus, the percentage approach best emulates the real-world market value of attorney's services that are provided on a contingent basis, and properly align the interests of the attorney and the client in achieving the maximum recovery in shortest possible time. *See Kirchoff v. Flynn,* 786 F.2d 320, 325–26 and 328 (7th Cir. 1986). Moreover, the "lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation until sufficient hours have been expended." MANUAL FOR COMPLEX LITIG. (Fourth) § 14.121 (2004); *see also Vizcaino,* 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."); *Syed*, 2016 WL 310135, at * 9 (use of the percentage method avoids "'the often more time-consuming task of calculating the lodestar'") (quoting *Bluetooth,* 654 F.3d at 942).

**2.      A Fee Equal to 28 Percent of the Cash Portion of the Settlement and Below 25 Percent of the Present Value of the Overall Class Benefit is Appropriate For this Extraordinary Recovery**

In the Ninth Circuit, the "usual range" for a percentage award of attorneys' fees in a common fund case is 20–30 percent. *Vizcaino,* 290 F.3d at 1047. The midpoint of the range is the "benchmark" (*id.*), which can be adjusted upwards or downwards "to account for any unusual circumstances involved in [the] case." *Alberto v. GMRI, Inc.,* No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *11 (E.D. Cal. Nov. 12, 2008) (quoting *Paul, Johnson, Alston & Hunt v. Graulty,*

---

[3] *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (stating "use of the percentage method in common fund cases appears to be dominant" and its "advantages ... have been described thoroughly by other courts."); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) (approving use of percentage method); *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("[T]his court concludes that in class action common fund cases the better practice is to set a percentage fee.").

1  886 F.2d 268, 272 (9th Cir. 1989)); *see also Rodriguez v. Disner,* 688 F.3d 645, 653 (9th Cir. 2012);
2  *Online DVD-Rental Antitrust Litig.,* 779 F.3d at 949; *Wade v. Minatta Transp. Co.,* No. C10-2796
3  BZ, 2012 WL 300397, at *1 (N.D. Cal. Feb. 1, 2012).

Within the Ninth Circuit, courts look at the following factors when considering a proper percentage "for an award of attorneys' fees: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the continent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check." *Kanawi v. Bechtel Corp.*, 2011 WL 782244 at *1, citing *Vizcaino,* 290 F.3d at 1048–52; *see also In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 954–55 (9th Cir. 2015). Evaluation of these factors supports the requested fee in this case. Indeed, Judge Breyer in *Kanawi* assessed these same factors in determining "that an upward adjustment of the benchmark to 30% is warranted." *Id*.

### 3. The Results Achieved

One of the most important factors in determining the reasonableness of a fee is the result achieved for the class. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("[The] most critical factor is the degree of success obtained."); *Vizcaino,* 290 F.3d at 1048. Here, the combination of these benefits is just under one-third of the Class's potential damages. Dkt. 157 at ECF 16. This percentage, in and of itself, is a very good result for a proprietary fund 401(k) case. *See*, *e.g.*, *Urakchin v. Allianz Asset Mgmt. of Amer., L.P.*, No. 15-cv-1614, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (granting preliminary approval to settlement of proprietary fund 401k ERISA case that represented between 25.5% of plaintiffs' losses) and Docket Entries 185 and 186 (final approval order and judgment of that settlement); *Price v. Eaton Vance Corp.*, 18-cv-12098, Dkt. 32 (D. Mass. May 6, 2019) ($3.45 million settlement constituted 23% of the potential damages); *Velazquez v. Massachusetts Financial Services Co*., No. 17-cv-11249 (D. Mass) ($6,975,000 settlement constituted 29% of possible damages). This recovery is substantially higher than

percentage recoveries approved by other courts in this circuit,[4] and represents a good recovery for the Class.

On a per-individual basis, the settlement sets a new high for proprietary fund 401(k) cases. On a gross basis (before accounting for attorneys' fees and settlement expenses) the per participant recovery is $3,100. This is a record high among all proprietary fund 401(k) cases. Porter Decl. Ex. A. The average class member across all other proprietary fund 401(k) settlements has received a gross recovery of less than $200 — and this excludes the dismissed cases in which class members received nothing. Only five other settlements achieved gross per-participant recoveries above $500 and the highest after this settlement was under $2,300 per class member. *Velazquez v. Massachusetts Financial Services Co.*, 17-cv-11249, Dkt. 90 at ECF 7 and 10 (D. Mass) (Memorandum in Support of Preliminary Approval explaining that class of approximately 3,000 individuals will be eligible to participate in $6,875,000 common fund).

In addition, the Plan is already benefitting from a non-proprietary stable value fund for a low-risk capital preservation option. Starting next month, the Plan will benefit from a less expensive and non-proprietary target date fund alternative. These benefits are not included in the per participant recoveries above, representing an additionally successful result achieved for the Class.

### 4. Litigation Risk

Risk in ERISA proprietary fund litigation is extreme. This evidenced by the trial court losses, as well as the substantial risk of intermediate dispositive rulings. Indeed, in *Kanawi*, Judge Breyer granted Bechtel's motion for summary judgment on Plaintiffs' fiduciary breach claim while finding that:

---

[4] *See Rodriguez v. W. Publ. Corp.,* 563 F.3d 948, 964-65 (9th Cir. 2009) (approving a 10% recovery in an antitrust case); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("just over 9% of the maximum potential recovery" was "reasonable"); *In re Biolase, Inc. Sec. Litig.*, No. 13-1300, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (concluding 8% recovery was fair, reasonable, and adequate"); *Gudimetla v. Ambow Educ. Holding*, No. 12-5062, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving class action settlement where recovery was only 5.6% of estimated damages); *In re LJ Int'l Inc. Sec. Litig.*, No. 07-6076, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving class action settlement where recovery was only 4.5% of maximum possible recovery).

> Plaintiffs have not demonstrated that Defendants' conduct fell outside of their obligations to the Plan participants. It is easy to opine in retrospect that the Plan's managers should have made different decisions, but such 20/20 hindsight musings are not sufficient to maintain a cause of action alleging a breach of fiduciary duty.

*Kanawi*, No. 06-cv-5566, Dkt. 686 at 17. There, as here, "the Committee met regularly to discuss the Plan's investments and sought the advice of Callan Associates to ensure that it was making proper decisions." *Id*. Plaintiffs faced the risk of a similar finding at any point, including after trial.

In addition, Plaintiffs here faced risks associated with the severance and other agreements signed by the named plaintiffs, which Defendants alleged waived their right to pursue class litigation on behalf of the Plan. While this argument ultimately proved unsuccessful, the merits of this argument hung on cases pending before the Ninth Circuit and United State Supreme Court during the pendency of this litigation. *Munro v. Univ. of Southern Cal.*, 896 F.3d 1088 (9th Cir. 2018); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). These alternative basis for striking down Plan-wide relief rendered this litigation particularly risky, even among its peers.

### 5. Non-Monetary Relief

Plaintiffs brought this litigation alleging, among other things, that the Franklin Money Market Fund was imprudent and should have been replaced by a non-proprietary capital preservation option. After the litigation commenced, Defendants removed the Franklin Money Market Fund and replaced it with a non-proprietary stable value fund, which is providing the Plan with over $600,000 per year in additional interest compared to the Franklin Money Market Fund. (Brown decl. ¶ 3). As part of the settlement, Defendants have also agreed to add a non-proprietary suite of target date funds, which offers a potential fee-savings of over $1 million over the course of the next three years. (Brown decl. ¶¶ 5). The capital preservation fund and target date fund changes offer a present value to the Plan of over $3 million over the next three years, assuming half of the target date fund participants move to the non-proprietary funds. These plan benefits weigh in favor of awarding the requested fee.

### 6. Percentage Rate Relative to Market Rate

In *Kanawi*, Judge Breyer recognized that a twenty-five percent fee award "is below the market rate for similar cases" and that this factor "favors an increase in the benchmark rate."

*Kanawai* at *2. Since then, 5 settlements of proprietary fund 401(k) class actions have created common funds within $10 million of the settlement at issue ($16.75 million to $36.75 million). In four of those cases, the Court awarded one-third fees, while in the fifth the fee award was thirty percent. *Krueger v. Ameriprise Financial, Inc.*, No. 11-cv-2781, 2015 WL 4246879, at *5–6 (D. Minn. July 13, 2015) (one-third fee award in $27.5 million settlement); *Nolte v. CIGNA*, 2013 WL 12242015, at *2 (C.D. Ill. Oct. 15, 2013) (one-third fee award in $35 million settlement); *Sims v. BB&T Corp.*, No. 15-cv-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) (one-third fee award in $24 million settlement); *Gordan v. Mass. Mutual Life Ins.*, No. 13-cv-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) (awarding one-third fee in $30.9 million settlement); *Main v. American Airlines, Inc.*, No. 16-cv-473, Dkt. 138 (N.D. Tex. Feb. 21, 2018) (approving 30% fee in $22 million settlement). In addition, the Central District of California approved a one-third fee award in an ERISA fiduciary breach case outside of the proprietary fund context. *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818 (increasing 25 percent benchmark to award one-third fee in $16.75 million settlement of claims concerning fiduciary breach related to plan administration). Since the twenty-five percent benchmark remains below market rates for similar cases, this factor supports an increase here.

### 7.     Contingent Nature of Representation and Opportunity Cost

Another relevant consideration is that Class Counsel agreed to undertake this action against a prominent asset manager on a purely contingent basis, and all costs of litigating the matters, and the attendant financial risks, were borne by Class Counsel for more than three years. "Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work." *Lee v. JP Morgan Chase & Co*, No. 13-cv-511, 2015 WL 12711659, at *8 (C.D. Cal. Apr. 28, 2015) (*citing In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050). Moreover, "Class Counsel had to turn down opportunities to work on other cases to devote the appropriate amount of time, resources, and

energy necessary to handle this relatively complex case." *Kanawi*, 2011 WL 782244 at *2. "This factor supports an increase in the benchmark rate." *Id*.

### 8. Class Reaction

The Class has received their court-approved notices, but the deadline for objections has not passed. Currently, Class Counsel are not aware of any objections or other negative reaction from the Class. Porter Decl. ¶ 22.

### 9. Lodestar Cross-Check

A lodestar calculation "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Under the lodestar method, the Court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). In ERISA class action litigation, a national rate is appropriate because "ERISA cases involve a national standard, and attorneys practicing ERISA law in the Ninth Circuit tend to practice in different districts." *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003).

Class Counsel have spent nearly 6,000 hours litigating this case, with a lodestar of $3,019,025. Decl. of Porter at ¶¶ 10; Decl. of Izard at ¶ 8. Thus, the lodestar multiplier of Class Counsel's $7.49 million request will be approximately 2.48. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (upholding approval of 28% fee where lodestar cross-check resulted in a multiplier of 3.65). Courts in other 401(k) proprietary fund cases have also approved lodestar multipliers greater than 3. See *Gordan*, No. 13-30184, Dkt. 144 at 6 (3.66 multiplier was "imminently reasonable"); *Kruger*, No. 14-208, Dkt. 61 at 14–15 (M.D. N.C. Sept. 17, 2015) (3.69 multiplier was "within the range of reasonableness"). Class Counsel's ordinary hourly rates are provided for in the attached Declarations of Mr. Porter and Mr. Izard. The lodestar multiplier will be even less by the end of this litigation in light of Class Counsel's additional communications with Class Members, oversight

of the settlement administrator, cooperation with the Independent Fiduciary, and oversight of Franklin's compliance with the Settlement Agreement.

Class Counsel have been extraordinarily efficient. In *Kanawi*, class counsel spent over 21,000 attorney hours. *Kanawi v. Bechtel Corp.*, No. 06-cv-5566, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) (awarding 30% fee and $1,571,102.56 in costs).[5] In *In re Northrop Grumman ERISA Litig.*, class counsel spent over 23,000 hours. *In re Northrop Grumman ERISA Litig.*, No. 06-cv-6213, Dkt. 803 at 5 (C.D. Cal. Oct. 24, 2017) (awarding 33% fee and $1,159,114 in costs).

Class Counsel's hourly rates used to calculate the lodestar are less than the rates used by the few other firms who practice in this narrow area of law. As early as 2016, several courts across the country approved hourly rates for attorneys bringing class actions alleging fiduciary violation with respect to 401(k) plans that were far higher than the hourly rates claimed here three years later.[6] *Kruger*, No. 14-208, Doc. 61 at 12–13 (approving hourly rates of $998 for attorneys with at least 25 years of experience; $850 for attorneys with 15–24 years of experience; $612 for attorneys with 5–14 years of experience $460 for attorneys with 2–4 years of experience; and $309 for paralegals and clerks); *Gordan*, No. 13-30184, Doc. 120 at 29–30 (Br. 24–25) (same); *Spano*, Doc. 587, at 6–7 (same). If these 2016 rates were used here instead of the rates Class Counsel assert, the lodestar multiple would drop further, from 2.48 to 1.47. More recently, Magistrate Judge Cousins approved a fee petition in this district in an ERISA 401(k) fiduciary breach class settlement which the lodestar multiplier was 4.375 and the hourly rates were $600 to $875 per hour for attorneys with more than 10 years of experience, $325 to $575 per hour for attorneys with 10 years or less experience, and

---

[5] Judge Breyer awarded thirty percent of the *net* settlement after deducting named plaintiff awards, the cost of settlement administration, and the costs and expenses reimbursed to class counsel. Based on the $40,000 requested in total for named plaintiff awards, $50,000 estimated cost of administration, and $430,000 in requested expense reimbursement, the net amount here would be $26,230,000 and the requested fee is 28.56% of that amount.

[6] A proper lodestar calculation uses an attorney's rates at the time of the fee award, rather than rates at the time the case was initiated. "Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor." *W.P.P.S.*, 19 F.3d at 1305 (using historical rates "inadequately compensate[s] [a] firm for the delay in receiving its fees"); see also *Bouman v. Block*, 940 F. 2d 1211, 1235 (9th Cir. 1991) (affirming use of current hourly rate "to compensate for the delay in receiving payment").

1 $250 per hour for paralegals and clerks. *Johnson v. Fujitsu Technology and Business of American, Inc.*, No. 16-cv-3698, 2018 WL 2183253, *7 (N.D. Cal. May 11, 2018).

### B.     The Court Should Award Reimbursement of Class Counsel's Costs.

Class Counsel have incurred $473,882.01 in expenses in litigating this case for the past three years, and carried them for the duration of the case. Attorneys who have created a common fund for the benefit of the class are entitled to reimbursement of reasonable litigation expenses from that fund. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 at 483 (E.D. Cal. 2010); ALBA CONTE, 1 ATTORNEY FEE AWARDS §2:19 (3d. ed.). Expenses reimbursable from a common fund include expert fees, travel, long-distance and conference telephone, postage, delivery services, and computerized legal research. *Id*. These expenses are identified in the attached declarations of Mr. Porter and Mr. Izard. Itemized records are also available if the Court requests to review them.

Counsel brought this case without guarantee of reimbursement or recovery, and thus had a strong incentive to limit costs. They did so. The total costs in this matter, $473,882.01, are less than half of the total costs approved in similar litigation in California that has gone past summary judgment. *E.g., Kanawi*, 2011 WL 782244 at *2 (approving over $1.5 million in expenses); *In re Northrop Grumman ERISA Litig.*, Dkt. 803 at 5 (approving over $1.1 million in expenses). Each of these expenses were actually incurred and were necessary to the successful prosecution of the actions.[7]

### C.     The Court Should Approve Incentive Awards to the Class Representatives.

"Incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by undermining the adequacy of

---

[7] The request includes $5,000 in anticipated travel expenses to the fairness hearing.

the class representatives and class counsel"). Such awards recognize class representatives' "willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 959.

Here, Mr. Cryer and Ms. Fernandez have represented the Class through years of litigation and have taken the risks associated with having their names associated with this high-profile class case. The Plaintiffs braved arguments that they were in breach of their severance agreement with Franklin by virtue of their role in the case. They came forward to initiate their respective actions and remained in contact with Class Counsel throughout the litigation. They responded to document requests and interrogatories, reviewed and approved pleadings, assisted with discovery, and Mr. Cryer sat for deposition. Porter Decl. ¶ 20. After Mr. Cryer was denied leave to amend, Ms. Fernandez was integral to asserting prohibited transaction claims, which ultimately benefit the entire Class. Moreover, the amounts that Plaintiffs intend to request — $25,000 for Plaintiff Cryer, and $15,000 for Plaintiff Fernandez — are consistent with awards in other cases. *See*, *e.g.*, *Kruger v. Novant Health, Inc*., No. 1:14CV208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (awarding class representatives $25,000 each for their contributions); *In re Northrop Grumman ERISA Litig*., No. 06-cv-6213, Dkt. 803 at 16 (C.D. Cal. Oct. 24, 2017) (awarding class representatives $25,000 each from $16.75 million settlement concerning allegedly improper 401(k) fees and investments).

The total amount requested, $40,000, represents only 0.15% of the monetary settlement. The Ninth Circuit recently approved similar incentive awards. *Online DVD-Rental*, 779 F.3d at 948 (approving incentive awards that were "a mere .17% of the total settlement.").

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court approve a fee award of $7,490,000 and a cost award of $473,882.01 to Class Counsel, and incentive awards of $25,000 to Class Representative Cryer and $15,000 to Class Representative Fernandez.

Dated: July 30, 2019                                  Respectfully submitted,

                                                      /s/ *Mark G. Boyko*

Mark G. Boyko, *pro hac vice*
Gregory Y. Porter, *pro hac vice*
Bailey & Glasser LLP
1055 Thomas Jefferson Street, NW Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
mboyko@baileyglasser.com

Mark P. Kindall, Cal. Bar No. 138703
Robert A. Izard, *pro hac vice*
IZARD KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@ikrlaw.com
mkindall@ikrlaw.com

Joseph A. Creitz, Cal. Bar No. 169552
Lisa S. Serebin, Cal Bar No. 146312
CREITZ & SEREBIN LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 466-3090
Facsimile: (415) 513-4475
joe@creitzserebin.com
lisa@creitzserebin.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 30th day of July 2019, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system and service upon all participants in this case who are CM/ECF users will be accomplished by operation of that system.

/s/ Mark G. Boyko